**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION NO.:** |
| | * | **1:17-CV-00394-CG-C** |
| **v.** | * | |
| | * | |
| **THE UNIVERSITY OF SOUTH** | * | |
| **ALABAMA, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |

## MOTION TO DISMISS

Defendants University of South Alabama, Michael A. Mitchell, Andrea C. Agnew and Krista Harrell (collectively "Defendants") move to the dismiss Plaintiff John Doe's complaint pursuant to Rule 12(b)(1) and (6).  The defendants are immune from Doe's alleged claims and/or Doe has failed to state a claim against these defendants upon which relief can be granted.

## FACTUAL BACKGROUND

This Court provided an overview of Doe's factual allegations in its September 8, 2017 Order denying Plaintiff's motion for TRO. (Doc. 19.) For purposes of this motion, Defendants provide the following additional background from the allegations of the Complaint:[1]

Plaintiff John Doe sued the University of South Alabama and University officials Michael Mitchell, Andrea Agnew, and Krista Harrell for due process violations under the United States and Alabama Constitutions (Counts I and II), breach of contract (Count III), gender discrimination

---

[1] For purposes of this motion only, the factual allegations are accepted as true, however the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

under Title IX (Count IV), and negligence (Count V).   Mitchell is the Vice President of Student Affairs and Dean of Students, Agnew is the Assistant Dean of Students, and Harrell is the Associate Dean of Students and Title IX Coordinator. Doe's Title IX and state law counts are asserted only against the University.  Doe's due process claims for declaratory and injunctive relief are asserted against Mitchell, Agnew, and Harrell in their official capacities.  Doe seeks damages against those Defendants in their individual capacities for alleged due process violations pursuant to 42 U.S.C. § 1983.

## I.      Roe 1 and Roe 2 Proceedings.

Doe's lawsuit derives from three University disciplinary proceedings in which he was a party.  The first concerned allegations made by Jane Roe 1 and Jane Roe 2 against Doe for sexual misconduct. As alleged in the Complaint, Roe 1 and Roe 2 met with Harrell to provide statements of the incident, prompting a Title IX investigation. (Doc. 1, ¶ 79.) Doe was notified in October 2016 of a charge against him for violating the Code of Student Conduct, for engaging in sexual violence. (*Id*., ¶ 84.) A mutual no-contact order was entered between Roe 1 and Roe 2 and Doe. Kim Ortiz, the Coordinator of Student Conduct, was assigned the role of Student Conduct Administrator for the case. (*Id*., ¶ 97.) She and Agnew conducted the investigation of the charge, including interviewing witnesses and gathering text messages. (*Id*., ¶ 98.)

Doe claims that Agnew was biased because she conducted the investigation and prepared a timeline and findings of fact, judging Doe "Responsible" for sexual assault, which were presented to the University Disciplinary Committee (UDC) at the beginning of the hearing. (*Id*., ¶ 102.) Doe objected to the introduction of the findings, but Agnew's findings were submitted to the UDC. (*Id*., ¶¶ 103-104.) Doe further alleges that training conducted by Agnew shortly before the hearing was prejudicial and pre-determined Doe's guilt. (*Id*., ¶¶ 105-106.)

2

The hearing was held on November 15, 2016, with Ortiz presiding. (*Id.*, ¶ 109.) The Student Conduct Administrator chairs and conducts the hearing in a non-voting capacity, and the UDC consists of two to five students and, in a sexual violence case, at least two and no more than four University faculty or staff. (Doc. 1-2, pp.28, 58, 60.) The UDC hears and make recommendations regarding charges of violation of the Code of Student Conduct. (*Id.*, p.58.) All University officials and members of the UDC receive annual training on issues related to sexual assault, how to conduct an investigation, and the hearing process. (*Id.*) Since this was Ortiz's first hearing as Student Conduct Administrator, Agnew sat in to offer guidance, and, as alleged, directed Ortiz on how to rule on objections and questions asked during the hearing. (*Id.*) Doe requested that a witness testify on his behalf regarding the credibility of Roe 1, as this witness was someone who had been falsely accused by her of sexual misconduct. (*Id.*, ¶¶ 110-113.) This witness was not permitted to testify, but instead his written statement was reviewed by the UDC. (*Id.*, ¶ 117.) Other unsworn witness statements that were part of the investigative file were reviewed by the UDC. (*Id.*, ¶ 119.) Doe also claims that he was entitled to know the identity of an unnamed cadet who had consensual sex with Roe 1 and Roe 2 on the same night as the incident involving Doe. (*Id.*, ¶ 121.) Doe also complains that there were improper references by Roe 1 and Roe 2 to Jane Roe 3, the complainant in another disciplinary proceeding against Doe. (*Id.*, ¶¶ 123-125.) Agnew admonished Roe 1 and Roe 2 for mentioning Roe 3 and at one point stopped the hearing to instruct them not to do so again. (*Id.*, ¶¶ 123-124.)

Doe alleges that the UDC's private deliberations were tainted by Agnew's influence. (*Id.*, ¶ 126). He also complains that Roe 1 and Roe 2 were allowed to make a recommendation regarding the proper sanction before any determination of responsibility was made. (*Id.*, ¶ 128-131.) The UDC found Doe "Responsible" based on the preponderance of the evidence, on the basis that Roe

1 and Roe 2 were more likely than not incapacitated and unable to give consent. (*Id.*, ¶ 132-133.) Ortiz, in her role as Coordinator of Student Conduct, maintained the mutual no-contact order between Doe and Roe 1 and Roe 2, ordered Doe to complete 100 hours of community service, and terminated his housing contract. (Doc. 1-4, pp.4-5.)

Doe appealed this decision to Mitchell. Mitchell upheld the finding of Responsible but modified the residential removal sanction, permitting Doe to maintain a campus residence but not in the area where the complainants resided. (Doc. 1-4, pp.7-8.) Mitchell found that though Agnew's findings were intended to be informational for the committee, her assessment of credibility could have had some impact, that the identity of the unnamed cadet with whom Roe 1 and Roe 2 had consensual sex was not required to be disclosed, that the witness statement offered by Doe provided sufficient information for why Doe wanted to call him as a witness, and that it was reasonable to limit a witness's presence at the hearing. (*Id.*) Mitchell further found that the severity of the sanction may have been impacted by the introduction of Roe 3 into the proceedings and finally that the information presented supported the complainants' claims that they were intoxicated beyond the point of being able to give consent, and that there had been a conversation shortly before the incident in which the complainants indicated their intent to Doe not to engage in any future sexual contact with him. (*Id.*) The University's Sexual Misconduct Policy's section on consent states that "[i]f a person is incapacitated by alcohol or drugs such that the person cannot understand the fact, nature, or extent of the sexual situation, there is no consent even if the person self-administered the alcohol or drugs." (Doc. 1-2, p.10.)

## II.    Roe 3 Proceedings.

Doe alleges that during the investigation of Roe 1 and Roe 2's complaint, Roe 1 or Roe 2 told a University official that Doe had previously raped Jane Roe 3. (Doc. 1, ¶ 81.) This initiated

4

an investigation of that incident, and Doe was informed of the complaint by Roe 3 in November 2016. (*Id.*, ¶¶ 82-84, 140-141.) Doe then initiated a complaint against Roe 3 for transmitting a sexually transmitted disease to him. (*Id.*, ¶ 160.) Harrell processed Doe's complaint against Roe 3. (*Id.*, ¶¶ 162-164.) Doe complains that USA did not ask Roe 3 for her medical records to test whether or not she knowingly transmitted an STD to Doe, and that he had no assistance in gathering evidence. (*Id.*, ¶ 166-168.) He further alleges that although he was appointed a Title IX advocate, she never reached out to him and did not attend the hearing. (*Id.*, ¶ 170-171.)[2] Doe also alleged that the University should have investigated a Title IX violation by Roe 3 against a witness who may have been exposed by Roe 3 to the same STD. (*Id.*, ¶¶ 172-173.)

In advance of the hearing on March 27, 2017 to address Roe 3's charge against Doe and Doe's charge against Roe 3, Doe requested information about what benefits, accommodations, and services Roe 3 was provided after she made her complaint. (*Id.*, ¶ 175.) This request was denied. (*Id.*, ¶ 177.) Doe also requested in advance of the hearing that the witnesses be instructed not to reference any prior Title IX proceedings involving Doe, which was granted by Mitchell. (*Id.*, ¶¶ 179-180; Doc. 1-4, p.16.) Doe also requested on the morning of the hearing that Agnew recuse herself from the hearing because he may call her as a witness and because of her alleged animus towards him. (*Id.*, ¶¶ 181-182.) Mitchell responded that although he did not find that any prior conduct by Agnew merited her removal from the proceeding, Agnew had recused herself, although

---

[2] The policy provides that at each stage, the complainant and respondent may be accompanied by a support person of their choice, to provide support and private counsel to the party. (Doc. 1-2, p.20.) Advocates are available to serve as support persons to complainants and respondents. (*Id.* ("A respondent wishing to utilize a Respondent Resource should make a request to the Title IX coordinator or designee.")) Doe's counsel of record in this case served as his support person at each stage of all proceedings.

she only would have been there to be a resource to the process. (Doc. 1-4, p.16.) (Doe did not call Agnew as a witness at the hearing.)

Ortiz presided over the hearing, like she presided over the Roe 1 and Roe 2 proceeding. During the hearing, Roe 3 mentioned details and allegations involving Roe 1 and Roe 2's complaint. (*Id*., ¶ 185.) Ortiz stopped the hearing, and she telephoned Mitchell who ordered the hearing to proceed and that he would consider the issue on appeal. (*Id*., ¶ 188.)

On March 28, 2017, the UDC found Doe "Responsible" in Roe 3's complaint for violating the Code of Student Conduct, 7E – Engaging in Sexual Violence. (Doc. 1-4, pp.19-20.) The UDC found Roe 3 "Not Responsible" for engaging in sexual violence in connection with Doe's complaint concerning the STD transmission. (Doc. 1, ¶ 194, Doc. 1-4, p.23.) Doe appealed both findings to Mitchell. (Doc. 1, ¶ 196.) Mitchell concluded in that appeal that the introduction of prior allegations against Doe during the hearing was significant enough to warrant that the charge against Doe be heard again during a new proceeding with a different committee. (*Id*. ¶ 197; Doc. 1-4, pp.27-28.) Mitchell upheld the finding that Roe 3 was "Not Responsible." (Doc. 1-4, pp.27-28.)

Doe alleges that Ortiz was removed from presiding over the second Roe 3 proceeding, and replaced with Agnew. (Doc. 1, ¶¶ 199, 201-202.) Doe objected to Agnew's involvement but was overruled. (*Id*., ¶¶ 203-204.) Before the hearing Doe requested information regarding accommodations to Roe 3, a list of witnesses who would be testifying in person, a more specific allegation of the charge against him, and to allow Doe's advocate to bring an associate to review the file. (*Id*., ¶ 207.) Those requests were denied. (*Id*., ¶ 208.)

The second Roe 3 hearing was conducted on August 15, 2017. (*Id*., ¶ 209.) Doe objected to the UDC's review of witness statements that were part of the investigation file, arguing that he

was unable to cross-examine those witnesses. (Doc. 1, ¶¶ 210-221.) The University's Sexual Misconduct Policy and Complaint Resolution Procedures requires the Investigating Officer to transmit the investigation report and any appended information, including witness statements collected during the investigation, to the UDC before the hearing. (Doc. 1-4, p.33.)

The UDC found Doe "Responsible" for sexual violence because Roe 3 did not provide consent to engage in sexual activity, as consent is defined in the Sexual Misconduct Policy. (Doc. 1, ¶ 224, Doc. 1-4, pp.30-31.) Agnew notified Doe of the decision and the sanctions, including suspension until the Summer 2018 term and placement on conduct probation for the remainder of his academic career. (Doc. 1-4, pp.30-31.) Agnew maintained the mutual no-contact order between Doe and Roe 3. (*Id.*)

Doe appealed the decision to Mitchell, who upheld the finding and sanctions without modification. (Doc. 1-4, pp.33-34.) Mitchell concluded that the witness statements were required under the policy to be provided to the UDC, and that the complainant and respondent had the opportunity to review them. (*Id.*) He further found that Agnew did not engage in any wrongdoing, and that the entire UDC from the first Roe 3 hearing, including Ortiz, had to be replaced for the rehearing. (*Id.*) He stated that the University was not required to disclose the accommodations provided to the complainant, and that this issue was not relevant. (*Id.*) He also noted that scheduling problems with the hearing were because of Doe's restrictions in his schedule, which Doe did not loosen until late July. (*Id.*) Mitchell also found no support for Doe's other due process concerns, including that Doe's claim against Roe 3 should have remained at issue. (*Id.*)

<u>**ARGUMENT**</u>

I.      **DOE'S DUE PROCESS CLAIMS ARE DUE TO BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

Doe alleges in Count I that Mitchell, Agnew, and Harrell in their official capacities violated his state and federal due process rights. (Doc. 1, pp.46-48.) He seeks a declaration that the outcome and findings of "Responsible" from the two hearings be reversed, that he be immediately restored into the ROTC program, that his disciplinary record be expunged, that the record of the suspension and discipline be removed from his file, that any records be permanently destroyed, and that USA's rules be found unconstitutional as applied. (Doc. 1, ¶ 239.) Although Doe does not detail in Count I how his rights were violated, he provides detail in Count II, which is his § 1983 due process claim. (*Id.*, pp.48-55.)

Doe claims that two UDC members in Roe 3's second hearing are Facebook friends with Roe 3 and therefore were biased. (*Id.*, ¶ 256.) He alleges other Facebook relationships between Mitchell and Roe 3's boyfriend, and between Mitchell and some UDC panel members. Doe also generally alleges that Mitchell had a "prior relationship with at least three of the panel members in Doe's second hearing with Roe 3. (Id., ¶¶ 264-268.) Doe also alleges that Agnew prejudged Doe's guilt and deprived Doe of an impartial decision-maker, and that her multiple roles in the proceedings created a conflict of interest. (*Id.*, ¶¶ 257-259, 261.)

Doe alleges that he was denied the opportunity to cross examine witnesses who provided statements that were reviewed by the UDC, and that he was denied the opportunity to be apprised of the accommodations afforded Roe 1, Roe 2, and Roe 3. (*Id.*, ¶¶ 275-276.) Doe further alleges that he should have been allowed to present a witness at the Roe 1 and Roe 2 hearing rather than only being permitted to provide the UDC with the witness's written statement, that he was entitled to the identity of unnamed cadet with whom Roe 1 and Roe 2 had consensual sex, that Roe 1 and

8

Roe 2 should not have been permitted to reference Roe 3 during their hearing, and that banners were inappropriately visible outside the hearing room. (*Id.*, ¶¶ 260, 262-263, 270.) Doe alleges that he did not have notice of his violation in regards to Roe 3's hearing (*Id.*, ¶ 269), even though he alleged that he had notice of the violation of engaging in sexual violence and was aware of the consent policy in the Sexual Misconduct Policy. (*Id.*, ¶ 271, n.39.) He also alleges that the preponderance of the evidence standard with a simple majority vote is insufficient. (*Id.*, ¶ 271.)

In the school-disciplinary context, an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) and opportunity to present his side of the story before an unbiased decisionmaker. *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 565-66 (6th Cir. 2011) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). "Due process requires that [plaintiff] ha[s] the right to respond, but [his] rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (citing *Goss*, 419 U.S. at 583); *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016) ("Although a university student must be afforded a meaningful opportunity to present his side, a full-scale adversarial proceeding is not required. The focus, rather, should be on whether the student had an opportunity to 'respond, explain, and defend,' and not on whether the hearing mirrored a criminal trial.") (citations and quotations omitted).

Doe had notice of the violation against him, that he was accused of committing sexual violence against Roe 3 and that she did not give consent. He also had the opportunity to review the investigation file for all of the proceedings, including any evidence presented to the UDC. He was able to present a witness statement on an issue that was collateral to the Roe 1 and Roe 2 proceeding. The process that is due under *Goss* does not dictate a standard of evidence to be

applied in a university disciplinary proceeding. And Plaintiff can point to no Supreme Court or Eleventh Circuit precedent demonstrating that a standard more stringent than preponderance of the evidence is required to ensure due process.

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Edu.*, 526 U.S. 629, 648 (1999). "A university is not a court of law, and it is neither practical nor desirable it be one." *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (citation omitted). And any alleged failure of the defendants to follow university procedures does not, *ipso facto*, allege a violation of procedural due process. *ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009).

The former Fifth Circuit articulated a standard for such proceedings in an appeal from the Middle District of Alabama:

> For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and hearing required by due process prior to expulsion from a state college or university. They should, we think [sic] comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching

upon the interests of the college. In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. <u>He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf.</u> If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection. <u>If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled.</u>

*Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150, 158–59 (5th Cir. 1961) (emphasis added)[3]; *Nash*, 812 F.2d at 660; *Hammock ex rel. Hammock v. Keys*, 93 F. Supp. 2d 1222, 1228 (S.D. Ala. 2000); *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 543-44 (W.D. La. 2016).

> **A.   Plaintiff Was Not Denied the Opportunity to Cross Examine Witnesses in an Unconstitutional Manner, Nor Prejudiced by the Inclusion of Statements of Witnesses Who Did Not Attend the Hearing.**

Plaintiff claims that he was denied the right to cross-examine individuals who provided statements to the Investigating Officer. As set forth above, the inclusion of the witness statements in the investigation file was consistent with University policy. Doe had the opportunity to request the witnesses' presence at the hearing. The University does not have subpoena power to require a witness's attendance. Doe does not allege that he was denied the opportunity to cross-examine Roe 1, Roe 2, or Roe 3. Doe also could have rebutted any witness statements with his own testimony.

It is well-established in this Circuit and frequently cited nationally that in the school disciplinary context, courts "have not required the cross-examination of witnesses and a full adversary proceeding." *Nash*, 812 F.2d at 664. The court in *Nash* stated that "rights in the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1208 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit issued before the close of business on September 30, 1981.

academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or those of defendants in a criminal trial." *Id*.

In a recent Sixth Circuit case, *Doe v. Cummins*, the appellants claimed they were denied effective cross-examination because they were allowed to submit only written questions to the panel, the panel did not ask all of the questions they submitted, and they were not allowed to submit follow-up questions. One of the appellants was even unable to cross-examine the complainant in any form. However the Sixth Circuit did not find any violation, stating that "[a]ny marginal benefit that would accrue to the fact-finding process by allowing follow-up questions in appellants' ARC hearings is vastly outweighed by the burden on [the university]." *Cummins*, 662 F. App'x at 448, citing *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 926 (6th Cir. 1988) ("To saddle [school officials] with the burden of overseeing the process of cross-examination (and the innumerable objections that are raised to the form and content of cross-examination) is to require of them that which they are ill-equipped to perform."). *Cummins* further relied on the *Nash v. Auburn University* decision that this form of cross-examination has been found constitutionally sufficient under the *Matthews* standard. *Id*., *citing Nash*, 812 F.2d at 664 (holding there "was no denial of appellants' constitutional rights to due process by their inability to question the adverse witnesses in the usual, adversarial manner."); *see also L.Q.A. By and Through Arrington v. Eberhart*, 920 F. Supp. 1208 (M.D. Ala. 1996) (hearing panel's consideration of statements of unavailable witnesses did not violate procedural due process) (citing *Nash*); *Craig v. Selma City School Board*, 801 F. Supp. 585, 593 (S.D. Ala. 1992) ("the Eleventh Circuit has made clear that a student has no constitutional right to cross-examine witnesses at an expulsion hearing"); *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 701 (5th Cir. 1974) (principle's testimony of reading statements made by teachers in the record did not violate due process); *Koeppel v. Romano*, No. 6:15-cv-1800-ORL-

40KRS, 2017 WL 2226681, at *5-6 (M.D. Fla. May 11, 2017) (no due process violation when the board relied on *ex parte* communications with witnesses); *Doe v. Western New England Univ.*, 228 F. Supp. 3d 154, 184 (D. Mass. 2017) (University's denial of ability of plaintiff to cross-examine witnesses failed; panel members had discretion to hear evidence that they deemed to be "reliable and relevant").

Therefore, the precedent of this Circuit clearly demonstrates that Doe's complaint regarding the witness statements does not rise to the level of a due process claim.

**B.    Any "Accommodations" to the Roes Could Not Be Disclosed and Are Irrelevant.**

Doe alleges he should have been provided details concerning accommodations the complainants received after their Title IX proceedings commenced.  University policy and federal regulation requires victims to be provided with accommodations and that those accommodations be maintained as confidential. 34 C.F.R. § 668.46(b)(11)(iii) & (v).  Compliance with those regulations, therefore, is not evidence of bias or a lack of due process.  *Cummins*, 662 F. App'x at 450 (citing 34 C.F.R. § 668.46(b)(11) (dismissing claim)).  Moreover, accommodations are not relevant to the UDC's inquiry regarding whether Doe violated the Code of Student Conduct. Therefore, Doe cannot maintain a due process claim on this basis.

**C.    Doe's Title IX Claim Against Roe 3 That Was Previously Adjudicated Was Irrelevant to the Second Hearing.**

Doe also claims that he should have been permitted to cross-examine Roe 3 about his allegation that she transmitted a sexually transmitted disease to him. (Doc. 6, p.12.) This allegation was the subject of its own Title IX investigation. The hearing on this complaint was conducted simultaneously with the first hearing involving Roe 3. Roe 3 was found "Not Responsible" and Mitchell affirmed this finding. Doe does not allege he asked Roe 3 about this accusation at the

hearing (because he did not), but it was irrelevant to the subject of the second hearing (consent) and such evidence could be properly excluded. *Doe v. Western New England Univ.*, 228 F. Supp. 3d at 184 (University's denial of ability of plaintiff to cross-examine witnesses failed; panel members had discretion to hear evidence that they deemed to be relevant). Moreover, as set forth above, the Eleventh Circuit in *Nash* found that the inability to question adverse witnesses in the "usual, adversarial manner" was not a denial of due process. *Nash*, 812 F.2d at 664.

**D.     Doe's Allegations of Bias Fail to State a Due Process Claim.**

It is "well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Doe v. Cummins*, 662 F. App'x at 449. "Any alleged prejudice . . . cannot be based in speculation or inference." *Nash*, 812 F.2d at 665; *Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *13 (D. Mass. Aug. 26, 2013) ("alleged prejudice of university hearing bodies must be based upon more than mere speculation and tenuous inferences") (citation omitted).

*1.     Agnew's participation did not offend due process.*

Dual roles alone do not demonstrate bias, absent other evidence. *See, e.g., Doe v. Trustees of Boston Coll.*, 2016 WL 5799297, at *16 (D. Mass. Oct. 4, 2016); *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988) (concluding that a college administrator's various roles did not prove bias or unfairness); *Doe v. Miami Univ.*, 2017 WL 1154086, at *14 (S.D. Ohio Mar. 28, 2017) (rejecting claim of bias when same administrator served as investigator, prosecutor, and judge) (citing *C.B. v. Driscoll*, 82 F.3d 383, 387 n.3 (11th Cir. 1996) ("In the school context, it is both impossible and undesirable for administrators involved in incidents of misbehavior always to be precluded from acting as decisionmaker")).  Without further allegations that Agnew was biased, Doe fails to state a claim.

14

2.      *Facebook friendships alone do not establish bias.*

Doe's bare allegations of friendship through Facebook do not rise to the level of bias for a due process claim. Importantly, "[i]n the intimate setting of a college or university, prior contact between the participants is likely, and does not *per se* indicate bias or partiality." *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 15 (1st Cir. 1988). Without any allegations beyond Facebook connections, Doe cannot state a due process violation.[4] *Nash*, 812 F.2d at 665.

## II.   DOE'S § 1983 INDIVIDUAL CAPACITY DUE PROCESS CLAIM (COUNT II) IS DUE TO BE DISMISSED ON THE BASIS OF QUALIFIED IMMUNITY.

In addition to the due process claims against Mitchell, Agnew, and Harrell in their official capacity, Doe seeks damages against them in their individual capacity for alleged due process violations (Count II). But these defendants are entitled to qualified immunity, and the individual capacity due process claim against them should be dismissed. It is not clearly established, especially in the Eleventh Circuit, that what Doe alleges is a constitutional violation. Courts routinely dismiss claims against university officials in their individual capacity for damages in such a situation. *See, e.g. Doe v. Univ. of Colo., Boulder through Bd. of Regents of Univ. of Colo.*, __ F. Supp. 3d __, 2017 WL 2311209 (D. Colo. May 26, 2017).

"Qualified immunity shields governmental officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) (internal quotations and citations omitted). "If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to

---

[4] Mitchell has testified that all of his Facebook connections in question are professional as part of his University position; they are not close personal friends. (Doc. 16-1, pp.5-6.)

allege a violation of a clearly established constitutional or statutory right." *Id.* The defendants must have acted within the scope of discretionary authority when performing the challenged conduct, which, in this case, is alleged.  (Doc. 1, ¶ 5 ("administrators, supervisors and employees who were agents of the Defendant . . . were acting within the course and scope of their employment").)

Under the second step, the plaintiff must establish that the state of law when the challenged events occurred was such that the defendants had "fair warning that his alleged treatment of the plaintiff was unconstitutional." *Williams*, 477 F.3d at 1300. "[F]or a federal right to be clearly established, its parameters 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a difference case ..... [D]istrict court decisions – unlike those from the courts of appeals – do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity." *Camreta v. Greene*, 563 U.S. 692, 714 n.7 (2011). When the binding precedent does not provide "clear notice" of a violation, and especially when there is a discrepancy in precedent, plaintiff cannot defeat the defense of qualified immunity. *See Lane v. Franks*, 134 S. Ct. 2369, 2382-83 (2014).

In *Doe v. University of Colorado*, the district court recently examined cases from various courts regarding procedural deprivations, and found that although plaintiff showed that courts around the country have found procedural due process violations in such disciplinary proceedings, he failed to show that it was clearly established.  *Doe v. Univ. of Colo.,* 2017 WL 2311209, at *16-18.  The court cited Sixth Circuit and Ninth Circuit cases that found that similar due process concerns did not violate clearly established law.  *Id*. at *18 (citing *Austin v. Univ. of Or.*, 205 F.

Supp. 3d 1213, 1223 (D. Or. 2016) (discussing the split of authority); *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 605-06 (S.D. Ohio 2016)).

As for the Supreme Court and the Eleventh Circuit, what is binding is precedent established in cases such as *Dixon* and *Nash*, discussed in Section I, *supra*, that courts "have not required the cross-examination of witnesses and a full adversary proceeding." *Nash*, 812 F.2d at 664. The court in *Nash* stated that "rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." *Id.* The Supreme Court has stated only that in the school-disciplinary context, an accused student must at least receive the following: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) and opportunity to present his side of the story before an unbiased decisionmaker. *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Doe was provided such process, and therefore it cannot be clearly established that the individual defendants violated Doe's rights. For these reasons, the individual defendants are entitled to qualified immunity from money damages in their individual capacities and the due process claim against them should be dismissed.

## III. THE UNIVERSITY IS IMMUNE FROM DOE'S BREACH OF CONTRACT (COUNT III) AND NEGLIGENCE (COUNT V) CLAIMS.

Doe alleges that USA covenants with each student via the student handbook ("The Lowdown") to abide by and enforce the provisions of the USA Student Code of Conduct. (Doc. 1, p.56, ¶ 278.) Doe alleges that USA breached its "contract" or "covenant" in several respects, and he seeks injunctive relief and money damages against the University for such breach. (*Id.*, pp.56-59.) Doe also alleges that the University owed a duty of care to Doe that was breached and for which he seeks monetary damages. (*Id.*, pp.70-72.) These claims must be dismissed on the basis of Eleventh Amendment and state sovereign immunities.

The University of South Alabama is a public university created by an act of the Alabama State Legislature. (Doc. 1, p.3, ¶ 4.); *see also See Ex parte Univ. of S. Ala.*, 183 So. 3d 915, 919 (Ala. 2015); Ala. Code § 16-55-1 *et seq*. As an instrumentality of the state, the University enjoys Eleventh Amendment immunity. *Beasley v. Ala. St. Univ.*, 3 F. Supp. 2d 1304, 1307 (M.D. Ala. 1998). "Thus, as a general proposition, the eleventh amendment bars all of [plaintiff]'s claims against [USA], regardless of the relief []he seeks." *Id.*, *citing Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment . . . . This jurisdictional bar applies regardless of the nature of the relief sought.")

Moreover, under Article I, Section 14 of the Alabama Constitution, "the state and its agencies have absolute immunity from suit in any court." *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). "Section 14 specifically prohibits the State from being made a party defendant in any suit at law or in equity." *Robinson v. Gadsden St. Cmty. Coll.*, 2016 WL 1212532, at *6 (N.D. Ala. Mar. 29, 2016) (internal quotations and citation omitted). This immunity may not be waived. *Ala. St. Univ. v. Danley*, 212 So. 3d 112, 122 (Ala. 2016).

## IV.  DOE'S TITLE IX CLAIM AGAINST USA IS DUE TO BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (1988). This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in

the workplace and in universities. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).[5] Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to "bar[ ] the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* at 715.

"[I]n order to establish a gender discrimination claim under Title IX, a plaintiff must allege that the defendant discriminated against him because of sex, the discrimination was intentional, and the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Doe v. Univ. of S. Fla. Bd. of Trustees*, 2015 WL 3453753, at *4 (M.D. Fla. May 29, 2015) (dismissing Title IX claim because male plaintiff failed to identify a female comparator in a similar position who was treated more favorably). When a student challenges the outcome of a school disciplinary proceeding under Title IX, courts have followed the framework developed in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994). In *Yusuf*, the Second Circuit recognized two categories of potential Title IX claims for gender bias arising from a student disciplinary proceeding: erroneous outcome and selective enforcement. *Doe v. Regents of the Univ. of Ca.*, 2016 WL 5515711, at *4 (C.D. Cal. July 25, 2016). Courts have also recognized a "deliberate indifference" claim, which Doe has alleged. *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009).

### A.    Doe Does Not State An "Erroneous Outcome" Title IX Claim.

Doe alleges generally that Harrell engaged in bias against him when he made his complaint against Roe 3 because he was a male student, and in favor of females who allege sexual assault. (Doc. 1, ¶ 303-304.) Doe further alleges that Harrell's assignment to process his complaint was troublesome because of her involvement with Roe 1, Roe 2 and Roe 3, and that she had already

---

[5] Courts in this circuit have used *Yusuf* as the framework for analyzing challenges to university disciplinary proceedings under Title IX. *See, e.g. Doe v. Lynn Univ., Inc.*, 235 F. Supp. 3d 1336, 1338-39 (S.D. Fla. 2017).

entered a no contact order against him. (*Id.*, ¶¶ 305-306.) He further claims that the proceedings against him involving all three complainants were flawed by the participation of Defendant Agnew and by the Facebook associations of Defendant Mitchell, UDC members, and Roe 3.

Many of these allegations are undermined by Doe's other allegations. According to Doe, Harrell agreed to process Doe's Title IX complaint against Roe 3. (*Id.*, p.37.) Agnew, not Harrell, investigated this complaint. (*Id.* p.38.) Doe's complaint against Roe 3 proceeded to a UDC hearing where it was determined that Roe 3 was "Not Responsible," which was affirmed by Mitchell following his review of medical records. (*Id.*, p.41; Doc. 1-4, p.28.) Moreover, with respect to Doe's claims about Harrell and Agnew, Doe cannot show bias on the basis of gender simply by alleging a decisionmaker was involved in multiple roles. *Doe v. Univ. of St. Thomas*, 240 F. Supp. at 991.

Through all of his allegations, Doe fails to allege or plausibly demonstrate that the asserted problems are attributable to his gender. *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (dismissing claim because plaintiffs did not allege that the outcome of the University's disciplinary proceeding was erroneous because of a sexual bias). Doe does not allege that the University's actions against him were motivated by sexual bias or that the University's disciplinary hearing process constitutes a "pattern of decision-making" whereby the University's disciplinary procedures governing sexual assault claims is "discriminatorily applied or motivated by a chauvinistic view of the sexes." *Mallory v. Ohio Univ.,* 76 F. App'x. 634, 639-40 (6th Cir. 2003), *citing Yusuf v. Vassar College,* 35 F.3d 709, 715 (2d Cir. 1994) (noting "one case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision making,' referred to in *Yusuf* as a basis for finding bias."). In such cases where no such allegations are made, courts have dismissed the plaintiff's Title IX claims.

For example, in *Doe v. Case Western Reserve University*, 2015 WL 5522001 (N.D. Ohio Sept. 16, 2015), the district court dismissed plaintiff's Title IX erroneous outcome claim because the plaintiff relied on conclusory statements in an effort to establish a plausible claim that the university was motivated by sexual bias in arriving at an erroneous finding in its disciplinary proceedings against plaintiff. *Id*. at *5. Plaintiff stated that the university's preferential treatment of Jane Roe over plaintiff was "undeniably" linked to her female gender and against plaintiff's male gender, and pointed to procedural defects as evidence of discriminatory bias. The court stated that "[w]hile these pleadings may call into question the outcome of the proceedings, they are not factual allegations supporting the conclusion that the procedural flaws and hostility towards Plaintiff were motivated by sexual bias." *Id*. Importantly, there were no factual allegations to support the conclusion that there was discrimination based on sex, which the court said could have included "*inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id*. at *6, quoting *Yusef*, 35 F.3d at 715.  Critically, the court said that "a single case by an individual who was displeased by the result of a disciplinary proceeding cannot constitute a pattern of decision-making." *Case Western*, 2015 WL 5522001, at *6.

Similarly here, there are no factual allegations to support gender-based discrimination, such as statements by Agnew, Harrell, Mitchell, or others to show the influence of gender. Doe includes only conclusory statements, like in *Case Western*, that preferential treatment was linked to gender, without any factual basis. Therefore, Plaintiff's Title IX erroneous outcome claim should be dismissed.

**B.      Doe Does Not State a "Selective Enforcement" Title IX Claim.**

To support a claim of selective enforcement, Doe must demonstrate that a female student was in circumstances sufficiently similar to plaintiff's and was treated more favorably by the University. *Doe v. Univ. of the South*, 687 F. Supp. 2d at 756-57; *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003) (dismissing Title IX claim under a *Yusef* analysis for failure to state a selective enforcement claim where academically-expelled female student sought to compare more favorable treatment of males who have been dismissed due to misconduct). More specifically, he must allege that regardless of his guilt or innocence, the severity of punishment was affected by his gender. *Yusuf*, 35 F.3d at 715; *Doe v. Regents of the Univ. of Ca.*, 2016 WL 5515711, at *5.

Doe alleges general problems with University policies and practices, and specific problems related to his disciplinary proceedings.  He alleges a "general atmosphere" where women are treated as "survivors," that training including victims' advocates was inappropriate, that USA failed "in certain instances" to conduct full and fair investigations, that the UDC panel failed to afford effective cross-examination of "female" accusers, that USA failed to "require" the presence of "key witnesses" and to inform hearing panels that students are "innocent until proven guilty," and finally that USA "created and fostered an atmosphere of hate, ridicule, and oppression for males."  (Doc. 1, ¶ 334.)  Doe further alleges "gender bias" in investigations and adjudications, but without specific examples, that conclusions were made contrary to the weight of the evidence, that administrators failed to take corrective measures, that he was assumed to be guilty because he was male, and that allegations should have been pursued against an unnamed cadet for an incident between him, Roe 1 and Roe 2 (which Doe alleged was "consensual" in paragraph 38).  Most of these allegations are not tied to the gender of the complainant or respondent, and they fail to state

a claim for selective enforcement. As for his allegations of an "atmosphere," there is no substance to these allegations that would plausibly suggest discrimination against *male* respondents, as opposed to respondents as a whole.

Doe's specific allegations include his claim that Roe 1 and Roe 2 should have been subject to disciplinary proceedings for sexual misconduct against each other,[6] that the wrong standard for consent was applied, that information was allowed in the first proceeding involving Roe 3 that was improper, that unsworn witness statements were allowed to be reviewed by the UDC, that Doe should have been able to present a student witness regarding a matter outside of the proceedings between Doe, Roe 1 and Roe 2, that the identity of an unnamed student should have been disclosed, that Roe 3's advocate acted inappropriately at the first hearing, and that he was subject to harassment as a result of Roe 1 and Roe 2's complaint. (*Id.*, ¶ 335.) Other than his claim regarding Roe 1 and Roe 2's alleged sexual misconduct between each other, none of these factual allegations allege any discrimination on the basis of gender.

Doe has also not alleged that his punishment was disproportionate for a charge of sexual assault or that a similarly situated student of the opposite gender was treated more leniently. *Doe v. Regents of the Univ. of Ca.*, 2016 WL 5515711, at *5 (dismissing claim). He makes no allegation that a similarly situated female student, accused of sexual misconduct, twice even, has been treated more leniently. Second, such allegations do not plausibly indicate discrimination on the basis of gender. His allegations of discrimination are nothing more than conclusory, which is not sufficient. Numerous courts have held that "even if a university treated a female student more

---

[6] It is not plausible that the University was acting on the basis of gender by not taking action against Roe 1 and Roe 2 for their sexual encounter with each other, since they both claimed to be incapacitated. And there are no facts pleaded to support Doe's allegation that the University's supposed inaction was because Roe 1 and Roe 2 are female.

favorably than the plaintiff, during the disciplinary process, the mere fact that plaintiff is male and the alleged victim is female does not suggest that the disparate treatment was because of plaintiff's sex." *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017) (quoting *Salau v. Denton*, 139 F. Supp. 3d 989, 999 (W.D. Mo. 2015)); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1225-26 (D. Or. 2016). "Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015).

### C.    Doe Does Not State A "Deliberate Indifference" Title IX Claim.

Doe alleges that USA failed to take any meaningful action against students who threatened him, and to which he was entitled as a "victim" because of his complaint against Roe 3.[7] (*Id.* ¶ 307.) He further alleges that he was denied a fair and impartial hearing for his complaint against Roe 3, that he was treated differently in being provided benefits and services, that he was harassed, and that defendants fails to enact, disseminate, or implement procedures to discover, prohibit, or remedy the discrimination and harassment Doe suffered. (*Id.*, pp.61-62.)

Under the "deliberate indifference" standard, Plaintiff has the burden to "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory,* 76 Fed. Appx. at 638. "The deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Patterson v. Hudson Area Schs.,* 551 F.3d 438, 446 (6th Cir. 2009) (internal quotations and citation omitted). "[A] Plaintiff may demonstrate a defendant's deliberate

---

[7] The harassment he alleges he suffered in social media posts and other actions was not related to his complaint against Doe 3, but related to the complaint made against him by Roe 1 and Roe 2. (Doc. 1, ¶¶ 92-94.)

indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* (internal citations omitted). Thus, under this standard,

> The recipient is not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." The deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." The standard does not mean that recipients must expel every student accused of misconduct. Victims do not have a right to particular remedial demands. Furthermore, courts should not second guess the disciplinary decisions that school administrators make.

*Vance v. Spencer Cty. Pub. Sch. Dist.,* 231 F.3d 253, 260 (6th Cir. 2000) (internal citations omitted).

In this case, Doe's allegations "do not contain the critical component of any Title IX claim necessary to make a finding under the deliberate indifference standard, namely that the University's alleged actions constituted sexual harassment." *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 757–58 (E.D. Tenn. 2009). "The Complaint fails to allege any facts to support a finding that the University's actions were at all motivated by John Doe's gender or sex or constituted gender harassment or sexual harassment." *Id.*, *citing Doe v. Derby Board of Ed.,* 451 F. Supp. 2d 438, 445 (D. Conn. 2006).

### D.    Doe's Reliance on Federal Policy or "Pressure" is Insufficient to State a Title IX Claim.

Doe's generalized reference to the Dear Colleague Letter is insufficient to show gender bias. *Cummins*, 662 F. App'x at 453 (noting reference to the Department of Education's "Dear Colleague Letter" as evidence of federal pressure was "conclusory" and did not create a plausible claim). Doe fails to allege any targeted stress USA has faced from government institutions or the public at large for the University's handling of previous sexual misconduct complaints on campus,

such that it would cause USA to favor the accusing female over the accused male because of the accused male's gender. *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d at 992-993. Therefore, his allegations of pressure on USA to prosecute male students of sexual assault are insufficient to show gender bias. *Id.*, at 993 (dismissing claim).

As wisely put by the Central District of California, "The Court also recognizes the difficulty a plaintiff faces in such cases to plausibly plead gender bias absent gender based statements or actions made by disciplinary officials, or indications that female students accused of sexual assault are treated differently than male students accused of sexual assault. Nonetheless, the Court is constrained by the Supreme Court's holdings in *Iqbal* and *Twombly*. Difficult as it may be to allege sufficient *factual* matter permitting a plausible inference of gender bias, conclusory legal allegations will not suffice." *Doe v. Regents of the Univ. of Ca.*, 2016 WL 5515711, at *5. Conclusory legal allegations are all that Doe asserts here, and his Title IX claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Doe's Complaint is due to be dismissed in its entirety.

Respectfully submitted,

 */s/ Windy C. Bitzer*
WINDY C. BITZER (BITZW7315)
CHRISTINE HARDING HART (HARTC5687)
*Attorneys for Defendants University of South
Alabama, Michael A. Mitchell, Andrea C. Agnew,
and Krista Harrell*

OF COUNSEL:

HAND ARENDALL LLC
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511
wbitzer@handarendall.com
chart@handarendall.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on September 20, 2017, the foregoing document was filed with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following:

     Matt Green, Esq.
     The Law Office of Matt Green, LLC
     The Pollock-Altmayer House
     501 Government Street, Suite 1
     Mobile, Alabama 36602
     mattgreenlaw@comcast.net

*/s/ Windy C. Bitzer* _____

3266128_1