IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CIVIL ACTION NO.: 1:17-cv-00394-CG-C

JOHN DOE

Plaintiff,

v.

THE UNIVERSITY OF SOUTH ALABAMA, The University of South Alabama; Michael A.
Mitchell, individually and in his official capacity; Andrea C. Agnew, individually and in her
official capacity; Krista Harrell, individually and in her official capacity;
Defendants.

---

## PLAINTIFF'S BRIEF IN SUPPPORT OF PRELIMINARY INJUNCTION REQUEST

---

Matt Green, Esq. & Darrin Thompson, Esq.
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1
Mobile, AL 36602
Ph: (251) 434-8500
Facsimile: (251)434-8500
E-mail: mattgreenlaw@comcast.net


Attorneys for Plaintiff John Doe

# Table of Contents

I.  DUE PROCESS ...........................................................................................................3

    A.  A Charge Of Sexual Violence (Non-Academic Misconduct) ................................3

II.  FAIRNESS OF THE TRIBUNAL .............................................................................4

    A.  Tainted And Biased UDC Panel ..........................................................................4

    B.  Agnew's Recusal ...................................................................................................7

    C.  Agnew's Participation And "Facilitation" In UDC Deliberations...........................7

    D.  Agnew's Blended Roles .......................................................................................8

III.  USA DEFENDANTS DENIED DOE A RIGHT TO A MEANINGFUL APPEAL .......11

IV.  DOE DID NOT WAIVE HIS RIGHT TO A FAIR & IMPARTIAL HEARING..............11

V.  USA DENIED DOE A MEANINGFUL OPPORTUNITY BE HEARD & DEPRIVED
    UDC OF THE OPPORTUNITY TO FULFILL ITS SEARCH FOR THE TRUTH ............13

    A.  Conduct, Facts, Credibility In Dispute ................................................................15

    B.  Witness Statements .............................................................................................17

        1.  UDC 6 Testimony................................................................................................19

        2.  Andrea Agnew Testimony ...................................................................................21

        3.  UDC 3 Testimony................................................................................................21

        4.  UDC 5 Testimony................................................................................................22

VI.  USA's SIGNIFICANT DEPARTRUES FROM ITS OWN RULES, REGULATIONS, &
    PROCEDURES....................................................................................................22

    A.  USA breached its own Rules, Regulations, & Procedures by allowing unsworn witness
        statements without a showing the witnesses were "Unable" to attend ................23

    B.  USA breached its own Rules, Regulations, & Procedures by failing to afford DOE a
        thorough, fair, and impartial investigation, hearing, and appeal...........................24

    C.  Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(4)) in
        Removing Witness Statements from UDC Packet...............................................24

    D.  Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(6)) in
        failing to timely submit her investigation report and any appended information to UDC
        members .............................................................................................................25

    E.  Agnew's Participation and "Facilitation" in UDC Deliberations Violated USA's Student
        Code of Conduct.................................................................................................26

F.      The Appearance Of Impartiality .................................................................................26

**VII.**   THE RIGHT TO DUE PROCESS IS ABSOLUTE .................................................27

**VIII.**  USA IS NOT ENTITLED TO DEFERENCE .........................................................29

**IX.**    IRREPARABLE HARM ........................................................................................29

**X.**     HARM TO THIRD PARTIES AND PUBLIC INTEREST .......................................29

**XI.**    CONCLUSION ....................................................................................................30

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN DOE

    Plaintiff,

v.

THE UNIVERSITY OF SOUTH
ALABAMA, The University of South
Alabama; Michael A. Mitchell, individually
and in his official capacity;; Andrea C.
Agnew, individually and in her official
capacity; Krista Harrell, individually and in
her official capacity;

    Defendants.

CIVIL ACTION NO.: <u>1:17-cv-00394-CG-C</u>

---

PLAINTIFF'S BRIEF IN SUPPPORT OF PRELIMINARY INJUNCTION REQUEST[1]

---

Defendants disciplined Jon Doe for non-academic sexual misconduct in cases involving Roe 1, Roe 2 and Roe 3. The present preliminary injunction request focuses on the Roe 3 case. Ultimately the defendants held three different hearings to adjudicate John Doe, with each hearing compromised by the admission of other Title IX cases and conduct. In the Roe 1 and Roe 2 hearing, the Defendant Mitchell reduced the UDC sanction based on Agnew's conduct prejudicial to a fair hearing for Doe.[2] Doe requested Agnew recuse herself from the Roe 3 hearing because of her prior violation of USA's rules by providing the UDC panel her findings of fact and which witnesses she

---

[1] This is a support brief in support of Doe's earlier brief filed with the Court and after limited discovery has been conducted and the court heard and admitted evidence at the preliminary hearing on October 3, 2017. This brief expounds upon and the testimony and evidence presented to the Court at the preliminary injunction hearing.

[2] In the Roe 1 and 2 hearing, as alleged in both the complaint and amended complaint, Roe 1 mentioned Roe 3 multiple times before the UDC panel. Mitchell did not address this in his reduced sanction order. Instead he reduced the sanction based on Agnew's

found credible. Agnew did recuse herself. Additionally, Doe at the outset of the first Roe 3 hearing requested Mitchell preclude any mention of prior Title IX cases. Mitchell agreed promising Doe "All witnesses will be instructed that they should refrain from mentioning any prior Title IX hearings involving you. This will be done before they enter the hearing and outside of the presence of the UDC." (Exhibit 13 to Plaintiff's Amended Complaint). Roe 3 violated the instruction and referenced a prior Title IX issue of Doe during the hearing. Mitchell on appeal ordered a new hearing. "In the charge filed against you, I find that the introduction of prior allegations against you was significant enough to warrant that this charge be heard again during a new proceeding with a different committee." (Exhibit 16 to Plaintiff's Amended Complaint). Mitchell then noted Agnew would be back in the case presiding over the new hearing.(*Exhibit 16 to Plaintiff's Amended Complaint*) Doe objected to Agnew's re-involvement in the case, but Mitchell overruled him.

At all times leading up to the second Roe 3 hearing, Mitchell personally assured Doe and his adviser there would be no other Title IX cases or allegations allowed to be considered by the UDC. Agnew even inserted written instructions at the UDC hearing that no prior Title IX cases were to be discussed.

Yet the USA defendants allowed UDC 6 to serve on the very panel that found him Responsible for sexual violence in a prior Title IX hearing involving one of the same parties, and on the identical issues involving alcohol and consent.[3] Defendant Agnew with the approval, consultation, and participation of Defendant Mitchell ignored the recommended probation sanction of the UDC panel, and suspended plaintiff. Defendant Mitchell then heard the appeal and sustained Agnew's suspension.

---

[3] Roe 1 was a Title IX complainant against Doe in a hearing where UDC 6 found Doe responsible for engaging in sexual intercourse without her consent. Roe 1 also submitted a statement and offered evidence against Doe in the second Roe 3 hearing in which UDC 6 participated in finding Doe responsible again.

I.     DUE PROCESS

USA failed to afford John Doe due process of law in its determination to suspend him. USA students facing discipline must be afforded the opportunity to defend, enforce or protect their rights through presentation of their own evidence, confrontation of adverse witnesses, and oral argument. *Goldberg v. Kelly*, 397 U.S. 254 (1970).  In determining whether USA provided constitutionally adequate due process, the competing interests of the governmental institution and the individual must be balanced.[4]  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews,* 424 U.S. at 355 *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  Although "not co-extensive with the rights" of criminal or civil litigants, the hearing afforded a student should provide "an opportunity to present [his] side in considerable detail." *See Sarver v. Jackson*, 344 Fed.Appx.526, 527 (11th Cir. 2009) (quoting *Dixon v. Ala. State Bd. of Ed.,*294 F.2d 150,159 (5th Cir.1961) These matters have been addressed in Doe's initial Temporary Restraining Order and Preliminary Hearing brief to the Court.

A.     A CHARGE OF SEXUAL VIOLENCE (NON-ACADEMIC MISCONDUCT)

In university disciplinary cases involving more serious charges, like sexual misconduct, reviewing courts have afforded students more due process and a more exacting review than in cases of simple academic dishonesty. "The more serious the deprivation, the more demanding the process. And where the deprivation is based on disciplinary misconduct, rather than academic performance,

---

[4] The three factors set forth in *Mathews v. Eldridge*: "(1) the nature of the private interest affected -- that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *See Ingraham v. Wright*, 430 U.S. 651, 676 (1977). (applying *Mathews*). The amount of process due will vary according to the facts of each case and is evaluated largely within the framework laid out by the Supreme Court in *Mathews*.

'we conduct a more searching inquiry." *See  Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) citing *Flaim*, 418 F.3d at 634; *see also Nash v. Auburn Univ.,* 812 F.2d 655, 664  (11th Cir.1987).

**II.**     FAIRNESS OF THE TRIBUNAL

The Eleventh Circuit instructs that "[a]n impartial decision-maker is an essential guarantee of due process." *Nash v. Auburn Univ.,* 812 F.2d 655, 665 (11th Cir.1987). "An impartial decision-maker is an essential guarantee of due process.[5]  *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1463–1465, 43 L.Ed.2d 712 (1975). "[B]asic fairness and integrity of the fact-finding process are the guiding stars." *Boykins v. Fairfield Board of Education,* 492 F.2d at 701." *Nash v. Auburn Univ.,* 812 F.2d 655, 665 (11th Cir.1987).

Finally, "due process requires a 'neutral and detached judge in the first instance'". *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 617 (1993).

A.  TAINTED AND BIASED UDC PANEL

The UDC panel in the second Roe 3 hearing consisted of a six person panel, two University of South Alabama employees (UDC 1 and UDC 2) and four University of South Alabama students (identified hereinafter as UDC 3, UDC 4, UDC 5, UDC 6). All student UDC panel members, like ROE 3, were members of the SGA. UDC 6, as is evidenced in the attached witness key, is a prominent member of the SGA at the University of South Alabama. UDC 6's duties included

---

[5] While *Nash* is informative in the area of bias, it is not dispositive in this case and is informative as to due process rights in the context of *academic* discipline cases.  Courts have distinguished the analysis in each type of case. *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)  "The more serious the deprivation, the more demanding the process. And where the deprivation is based on disciplinary misconduct, rather than academic performance, 'we conduct a more searching inquiry.'" *Flaim*, 418 F.3d at 634. In *Nash* the student argued he was denied an impartial tribunal because the disciplinary board heard prejudicial testimony concerning the students' conduct at exams other than the one he was charged with academic misconduct on. Doe's case, unlike *Nash*, involves affirmative representations by the University that no prior Title IX cases would be presented to the UDC panel.

participation in selecting the other three student UDC panel members. In her SGA position, UDC 6 was responsible for protecting the rights of the students and upholding the judicial processes of SGA. Unknown to Doe and his advocate, UDC 6 had served previously on the UDC panel that found him Responsible for sexual violence in Roe 1 and Roe 2 (Case Number 2016012301). Agnew worked routinely with UDC 6 in prior Title IX cases. Defendant Agnew knew UDC 6 served on the Roe 1 and Roe 2 UDC panel that returned a finding of Responsible against Doe 3, and at no time ever notified Doe or his advocate. UDC 6 had personal knowledge and actual participation in Doe's prior Title IX case which also involved allegations of consent and alcohol, yet failed to disclose this to Doe or Doe's adviser. UDC 6 also had personal knowledge of Roe 1's allegations and found her to be credible in the Roe 1 and Roe 2 hearing, and relied upon Roe 1's witness against Doe in the second Roe 3 hearing. UDC 6 was also a close personal friend of Defendant Mitchell, and considered him her "mentor."

At the beginning of the hearing, both Doe and Roe 3 were given packets that contained the following instruction: "There should be no references to prior cases or hearings or hearing outcomes in today's proceedings."[6] Agnew despite instructing Doe and Roe 3 not to mention any prior Title IX cases or hearing outcomes the proceedings, knowingly and intentionally selected or allowed a UDC panel member who had both actual knowledge and actual participation in finding Doe Responsible of sexual violence.

Finally UDC 6 was in charge of procurement of the student UDC panel members [Prelim. Injunction Hrg. p.85, Ln.21- p.86, Ln.14] UDC 6 selected the other student UDC panel members, UDC 3, UDC 4, and UDC 5 to serve. Two of these panel members, UDC 3 and UDC 5 were personal friends with Roe 3.

---

[6] See Exhibit 24 of Plaintiff's Amended Complaint.

Agnew knew that UDC 6's service in this hearing was a clear conflict of interest and violated due process. Agnew testified at the preliminary injunction hearing that her role as the Student Conduct Administrator was to shield the UDC from outside prejudicial information.

> Q:     Well, the chair serves as a non-voting member of the university disciplinary committee. I view the role as ensuring the process is fair and equitable and that the members of the university disciplinary committee don't consider information that was not presented during the live testimony, or you know, bring in or introduce information that was not given to them in the folders presented. [Prelim. Inj.Hrg.,p.116, Lns.3-9]

Agnew acknowledged that Doe as a respondent had a right not to have prior Title IX cases brought up before the UDC panel. [Prelim. Inj.Hrg.,p.95, Lns.13-17]. It made no difference to Agnew that UDC 6 had served prior because of Agnew's personal relationship with UDC 6. Agnew testified [Prelim. Inj.Hrg.,p.73, Lns.23-25].

> A:     You know, [UDC 6] is a student who is quite exceptional. She's very objective. She didn't seem to have an issue with it…."[7]

It's curious as to how Agnew was able to judge UDC 6's impartiality if she never questioned UDC 6 about serving in the Doe's prior Title IX case.

> Q:     Once you saw [UDC 6] [moments before the hearing was held], did you pull her aside and say, listen, [UDC 6]; you've already served on a case involving [John Doe]? Did that--a conversation like that ever occur?

> A:     No. It did not.

> Q:     Did she raise that issue with you?

> A:     No she did not.

> [Prelim. Inj.Hrg.,p.74, Lns.7-12]

Agnew just assumed UDC 6 would be impartial based on Agnew's personal relationship with UDC 6. Perhaps the best evidence Agnew knew UDC 6 had a conflict of interest was her decision to exclude a police officer who was called to serve as a UDC member in the second Roe 3

---

[7] In the original transcript, Agnew referred to UDC 6 by her first name.

hearing. Agnew felt that since this police officer had served, not as a UDC panel member but merely in his capacity as a police officer, in the first Roe 3 hearing he had a conflict of interest that required his disqualification. Unfortunately for Doe, this same exacting standard was not employed in the matter of UDC 6. [Prelim.Inj.Hrg.,p.123, Lns.6-25; p.124, Lns.1-25]; *see also* Plaintiff's exhibit 36.

**B.  Agnew's Recusal**

Defendant Agnew conduct in the Roe 1 and 2 hearing was improper. Her misconduct in the case resulted in Dr. Mitchell reducing the sanction.[8] Because of this, Doe sought and obtained Agnew's recusal from the Roe 3 hearing.[9] A recusal in the ordinary sense of the word presupposes a prospective application and its finality in application as to the case. The parties, issues, and facts of the Roe 3 hearing were the same as the case Agnew originally recused.

**C.  Agnew's Participation And "Facilitation" In UDC Deliberations**

Since Doe was charged with sexual misconduct, USA required a formal hearing before the UDC panel. This panel under the rules was to be chaired by Agnew, but she was not to deliberate or facilitate or pose questions to the UDC panel. *See Student Code of Conduct, 8.0 Disciplinary Procedures, Participating as a Respondent*: "Option 2 is a formal hearing before the UDC and is chaired by a non-voting, <u>non-deliberating</u> Student Conduct Administrator."

USA's Student Code of Conduct Rule 8.0 A.6. provides that "After the hearing, the UDC shall meet <u>in private</u> to determine whether the evidence/information presented or received by the UDC during the hearing proved that it is more likely than not that the respondent violated one or more sections of the Code." (*Emphasis added*) Agnew violated this rule by communicating with and discussing the cases after each of Doe's hearings with the UDC panels.

---

[8] See Exhibit 10 to Plaintiff's Amended Complaint.
[9] See Exhibit 13 to Plaintiff's Amended Complaint.

Agnew improperly usurped a UDC function by "facilitating" in the deliberations. Agnew's actively participated in the deliberations. She even testified at the preliminary injunction she believes the rules allow her to [Prelim.Inj.Hrg.p.115, Lns.21-25 and p.116, Lns.1-9] She took notes as reflected in her UDC worksheets which reflect her opinion and observations of UDC members on evidentiary matters, questions of fact, intoxication, and witness credibility. [Exhibit 21 to Plaintiff's amended complaint filed under seal]  She polled UDC panel members in a "gut check."[Agnew Preliminary Injunction hearing testimony, page 112, Lns.8-10; UDC 6 testimony, page 29, Ln.20] Agnew handwrote the UDC recommended sanction. She acted every bit the part of a UDC foreperson. In doing so, Agnew violated the University of South Alabama's own rules by participating in the UDC deliberations. Agnew testified at the preliminary injunction hearing that she believed the rules allowed her "to sit in and be a part of the deliberations." [Prelim.Injy.Hrg.p.115, Lns.21-25 and p.116, Lns.1-9]

### D.  Agnew's Blended Roles

Agnew in her role as the chairwoman and non-voting, non-deliberating Student Conduct Administrator exercised enormous influence over the selection of the UDC panel, the record, the evidence gathered, evidence presented, and ultimately in the decision to disregard sanction recommendations of the UDC panel. The intermingled and inherently conflicting duties of Defendant Agnew violated Doe's due process rights to defend against quasi-criminal charges of sexual assault. Agnew herself admitted as much when she recused herself from the first hearing of Roe 3. [Exhibit 15 filed contemporaneously with complaint] Agnew's position placed her in the multiple, and inherently conflicting, roles of *advocating* for the female students, *investigating* the events, *prosecuting* Doe, and *facilitating in the deliberations* of the UDC panel. She acted as a judge in ruling on objections at the hearing. It was Agnew who *trained* and *advised* the disciplinary hearing panel that found Doe responsible.

**B.     Evidence of Bias: Concealment & Consciousness of Guilt**

Doe had no knowledge that the UDC panel recommended probation until this court ordered the Defendants to provide discovery only as to the Roe 3 case. Doe had no knowledge that UDC 6 had served on the Roe 1 and Roe 2 UDC panel that found him responsible until UDC 6 admitted so at the preliminary injunction hearing. Doe had no knowledge that the day after the UDC hearing Mitchell consulted with Agnew and approved Agnew's decision to ignore the UDC panel recommendation and issue her own sanction. The USA defendants concealed this information from Doe and his adviser. It is this concealment and intentional cover up that evidences the bias, the lack of an impartial fact finder, the lack of a fair and meaningful opportunity to be heard, both at the hearing and on the appeal to Mitchell.

Perhaps the most powerful evidence of bias and consciousness of guilt among the defendants was the cover-up, the concealment of three matters of critical importance to Doe and his due process claim. First Agnew and UDC 6 concealed the fact from Doe of UDC 6's prior involvement despite repeated assurances by both Agnew and Mitchell they would shield the UDC from this prejudicial information. The whole reason Mitchell ordered a new Roe 3 hearing was because of the introduction of prior Title IX allegations against him in the first Roe 3 UDC hearing.[10]

Agnew specifically instructed both Doe and Roe 3 not to mention the prior allegation. Yet Agnew selected and/or failed to remove UDC 6 with knowledge that UDC 6 found Doe responsible for sexual violence involving the same issues (consent and alcohol). Additionally, UDC 6

---

[10] On May 2, 2017, Defendant Mitchell reversed the finding of Responsible in Case number 2016016401 (Roe 3's Title IX complaint against Doe) and ordered a new hearing.[Exhibit 16 to Doe; amended complaint] In his ruling reversing the finding of *Responsible* Mitchell noted: "**In the charge filed against you, I find that the introduction of prior allegations against you was significant enough to warrant that this charge be heard again during a new proceeding with a different committee.**"

had already found Roe 1 credible in Doe's first Title IX hearing involving Roe 1 and Roe 2. However, Agnew allowed Roe 1 to submit a statement against Doe in the Roe 3 hearing, which UDC 6 was allowed to consider.

Secondly, Agnew and Mitchell both concealed from Doe the fact that the UDC panel in Roe 3 recommended a sanction of probation.[11] Dissatisfied with this recommendation, Agnew, again straying beyond the confines of her delegated authority in the UDC proceedings, posed a hypothetical to bolster her position to Mitchell for a harsher sanction. Never mind that UDC 6 had prior knowledge of and participation in Doe's prior disciplinary hearing and still recommend probation, Agnew had made up her mind that Doe had to face a harsher sanction. Agnew described her hypothetical several times at the Preliminary Injunction Hearing:

> "[I]f this individual that you just saw -- if they were to commit or be charged with a similar code of conduct violation, what would your finding be?" (Prelim.Inj.Hrg, p. 103, Lns.16-19)

> "In the event that we were to see this individual again in the future, you know, what would the outcome be for you?" (Agnew Prelim.Inj.Hrg, p. 93, Lns.21-23

> "If this person were to come before the university disciplinary committee -- if you were hearing similar charges, how would you find this person in the future?" Agnew Preliminary Injunction hearing testimony, page 103, Lns.2-7. (October 3, 2017)

There were no other pending Title IX charges against Doe. And Agnew proposed a hypothetical that presumed Doe would reoffend if the panel did not recommend a higher sanction. Agnew testified the timing of the hypothetical was after the UDC panel had rendered its decision and sanction, but that is really irrelevant. Agnew used the UDC response to justify her disregarding the official sanction of the UDC, and to justify her position to Defendant Mitchell who authorized and ratified Agnew's official decision to issue her own sanction of suspension.

---

[11] Defendant Mitchell's affidavit with this Court in response to Doe's Temporary Restraining Order fails to mention the UDC recommendation or that his participation in increasing the sanction. Mitchell's affidavit also fails to disclose UDC 6's involvement in Doe's cases.

Third, both Agnew and Mitchell concealed from Doe and his adviser that both participated in the decision to increase the sanction. Doe acknowledges Agnew had the authority to overturn the sanction and Mitchell had the authority to sustain it, but both the conduct and concealment of these facts deprived Doe of the opportunity to raise this issue on appeal and to request Mitchell recuse on the appeal. All evidence bias and deprived Doe of an essential ground for an appeal before a neutral and impartial arbiter.

## III.   USA DEFENDANTS DENIED DOE A RIGHT TO A MEANINGFUL APPEAL

When allowing UDC 6 to serve and render a decision against Doe in the second Roe 3 hearing did not achieve her desired sanction against Doe, Defendant Agnew took the matter to Defendant Mitchell who ratified her proposed sanction increase. Thereafter both Agnew and Mitchell actively concealed these facts from Doe and his adviser. Defendant Mitchell by participating with Agnew in the decision to disregard the UDC's recommended sanction prior to the appeal, and by his failure to disclose this, deprived Doe of an impartial hearing on his appeal, as Doe was deprived of the opportunity to raise the UDC recommendation of punishment on appeal, or to raise Defendant's Mitchell conflict of interest on appeal and to ask for an impartial decision maker on his appeal.

Defendant Agnew's concealment of these operative facts evidences her bias against Doe and operated so as to deprive Doe of a fair and impartial hearing and meaningful appeal. Defendant Mitchell's concealment of these operative facts and his decision to assign Doe's appeal to himself without recusing evidences his bias against Doe and operated so as to deprive Doe of a fair and impartial hearing and fair and impartial and meaningful appeal.

## IV.   DOE DID NOT WAIVE HIS RIGHT TO A FAIR & IMPARTIAL HEARING

Doe testified at the preliminary hearing that he recognized UDC 6 from being involved in the process [Prelim.Inj. Hrg., p.219, Lns.16-25]. Whether he knew of her prior service as a UDC panel

11

member in Roe 1 and Roe 2 is questionable. Regardless, the "right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . .because of the importance to organized society that procedural due process be observed. *Carey v. Piphus*, 435 U.S. 247, 265-266 (1978). Ignorance of his right to procedural due process does not constitute a waiver. Furthermore, the right to a fair and impartial hearing is not a right personal to Doe. It's a cornerstone of legitimacy of any system of justice where a government actor seeks to deprive a citizen of his constitutional right to due process. The right to a fair and impartial factfinder is a promise the defendants assure every student in its Student Code of Conduct and its other rules and regulations.

Agnew knew of UDC 6's prior service prior to the commencement of the hearing and still allowed her to serve on the panel. [Prelim.Inj.Hrg., p.72, Ln.25- p.73, Lns.1-21] Would Doe's objection have changed Agnew's mind? Did Doe even know he had the right to object to UDC 6? USA takes the position similar to that only Doe benefits from a fair and impartial factfinder which is misplaced. It is the University's responsibility to provide Doe a fair and impartial hearing free from any conflict of interest. Additionally, both Agnew and Mitchell specifically assured Doe and his counsel no prior Title IX matters would be heard by the UDC panel.

Finally, it is important to remember that Doe is a student who was in effect on his own at the hearing. This was his third UDC panel Doe had to appear in front of. Although he had an attorney adviser, the adviser had to sit mute before the UDC panel and could not participate. Only Doe could address the UDC panel; only Doe could question Agnew; only Doe could speak on his behalf. Doe is just a college student, with no formal legal training.

**V.  USA DENIED DOE A MEANINGFUL OPPORTUNITY BE HEARD & DEPRIVED THE UDC OF THE OPPORTUNITY TO FULFILL ITS SEARCH FOR THE TRUTH**

In denying Doe the opportunity to question the witnesses whose statements were offered against him, the defendants prejudiced not only Doe. USA argues and assumes that cross-examination is of benefit only to Doe. This opportunity is every bit as important to the UDC in fulfilling its role in the process as it is to Doe. "In truth the opportunity to question a witness and observe her demeanor while being questioned can be just as important to the trier of fact as it is to the accused." *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017). Reaching the truth through fair procedures is an interest Doe and USA have in common. "The Due Process Clause will not shield [a student] from suspension properly imposed, but it disserves both his interest and the interest of the State if the suspension is in fact unwarranted." *Goss*, 419 U.S. at 579. "If a university's procedures are insufficient to make 'issues of credibility and truthfulness…clear to the decision makers,' that institution risks removing the wrong students, while overlooking those it should be removing.'" *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017) citing *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 252 (E.D.Pa.2012)

USA defendants assert in this case that no amount of cross-examination of any witness who provided a statement against Doe would be helpful or meaningful to the process at all. In this case the UDC panel would have been able to observe the demeanor and tone of the witnesses if they were subject to examination by either Doe or the UDC panel members. "Cross examination has always been considered a most effective way to ascertain truth." *Watkins v. Sowders*, 449 U.S. 341,349 (1981)(footnote omitted); see also Maryland v. Craig, 497 U.S. 836, 846 (1990)(cross examination "ensur[es] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings.") This is exactly the type of inflexible approach to due process that the United States Supreme Court

rejected in *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902. "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Nash v. Auburn Univ.,* 812 F.2d 655, 660 (11th Cir.1987). "The standards of procedural due process are not wooden absolutes. The sufficiency of procedures employed in any particular situation must be judged in the light of the parties, the subject matter and the circumstances involved." *Keough v. Tate County Board of Education,* 748 F.2d 1077, 1081–82 (5th Cir.1984)

As this Court noted in its initial order on plaintiff's TRO, the Sixth Circuit Court of Appeals in *Flaim v. Med. Coll. of Ohio,* 418 F.3d. 629, 636 (6th Cir. 2005) noted that "[s]ome circumstances may require the opportunity to cross-examine witnesses, thought this right may exist only in the most serious of cases."[12] Shortly after this Court entered its opinion in Doe's TRO request, the Sixth Circuit issued a critical ruling in *Doe v. Univ. of Cincinnati,* 872 F.3d 393 (6th Cir. 2017) that expounded upon its holding *Flaim* that a more serious allegation of sexual violence when the facts turn upon the credibility of witnesses due process requires more not less scrutiny, and the university should have required cross-examination of the complainant who failed to appear at the disciplinary hearing:

> Accused students must have the right to cross-examine adverse witnesses 'in the most serious of cases." *Flaim,* 418 F.3d at 636. We alluded to what 'the most serious of cases' might entail in *Flaim.* If a case 'resolve[s] itself into a problem of credibility, cross-examination of witnesses might ... be[ ] essential to a fair hearing.' *Id.* at 641 (quoting *Winnick,* 460 F.2d at 549). We ultimately did not reach that answer, however. It was not essential to Sean Michael Flaim's hearing, because Flaim admitted to the misconduct that prompted the Medical College of Ohio to expel him—his felony drug conviction. *Id.* That 'rather unique' fact justified the College's decision to deny his request to cross-examine his arresting officer during Flaim's expulsion hearing. *Id.* at 641, 643.

---

[12] The court in *Flaim* noted that cross-examination would have been a fruitless exercise" because the plaintiff student admitted the "critical fact[s]" against him—the trier of fact was still able to question the plaintiff's arresting officer, and the plaintiff was still "able to listen to and observe" the officer's testimony.

But the circumstances of the present case pose the credibility contest we contemplated in *Flaim*: John Doe maintains that their sex was consensual; Jane Roe claims that it was not.

Admittedly, in *Doe v. Cincinnati*, the complainant failed to appear while in Doe's cases multiple witnesses failed to appear whose statements were offered against him, the principles the Court enunciated still apply. When the stakes are this high in a serious charge like sexual misconduct, and credibility of the parties in issue, and the facts are in dispute the Court noted:

> Sparing the ARC panel [akin to USA's UDC panel] from having to navigate traditional cross-examination justifies the requirement for written preapproved questions, <u>but it does not justify denying the opportunity to question an adverse witness altogether</u>. *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)

*Nash* too recognized the opportunity to question witnesses would be more important depending on the nature of the charge:

> "We do not suggest that the opportunity to question witnesses would not have been valuable in this case. Such a process would be more important in a disciplinary action such as the present case than, for example, in the case of a student's dismissal for deficient academic performance, where the proof is found in fact objectively discerned and not on inference from personal observations." *Nash*, 812 F.2d at 664

## A. CONDUCT, FACTS, CREDIBILITY IN DISPUTE

In this case the USA defendants submitted unchallenged and un-notarized written statements of witnesses against Doe at the Roe 3 hearing. Even assuming this Court concludes this is not in violation of any USA rule, procedure, or regulation, it does not satisfy constitutional scrutiny. The fact that witness statements were merely part of the investigative report is not dispositive of Doe's due process claim. Doe maintains his innocence in this case. The material facts of what transpired hotly contested and disputed. The value of cross-examination in such circumstances become increasingly important, as the case in Roe 3 hinged upon the credibility of the accuser Roe 3.

This was a case involving an allegation of sexual violence, one of the most serious of non-academic misconduct charges.  The hearing turned on a single issue: whether Roe 3 consented to sexual intercourse with Doe. The UDC panel in this case only heard from two witnesses who could address this issue, Doe and Roe 3. The differences between Roe 3's version of events and Doe's version of events was significant. The issue of consent was hotly contested between the parties as is evident from the UDC hearing transcript. Roe 3 said she was too intoxicated to consent, whereas Doe denied that she was not. Further Doe contended that the next morning when intoxication was not even an issue Roe 3 consented to engage in sexual intercourse with Doe willingly and knowingly. Roe 3 waited some ninety-one days after the event to revoke her consent and bring forth her Title IX complaint against Doe. Notably, none of the absent witnesses actually witnessed Doe and Roe 3 engaging in sexual intercourse. Admittedly many of the absent witnesses supported Roe 3 that she did not have the capacity to consent. However, the crux of this dispute over consent is not for this Court to determine in the due process calculus. In cases like this, when the UDC hearing on a serious misconduct charge like sexual assault hinges on the question of credibility, as in the UDC hearing in this case, the focus of this Court's inquiry should be on the importance of a fair tribunal. See *Furey v. Temple Univ.*, 884 F.Supp.2d 223, 254 (E.D.Pa. 2012): "The substance of this dispute is not for this Court to determine. But when a hearing on serious charges turns on issues of credibility, as this Hearing did, the importance of a fair tribunal, where the testimony of all of the witnesses is examined for truthfulness, is heightened."

Even Defendant Mitchell, at one time in Roe 1 and Roe 2 appeal, recognized the importance of credibility in the due process calculus in reducing the sanction. On December 14, 2016, Dean Mitchell ruled:

"Though Dr. Agnew's report of her investigation findings were intended to be informational for the committee, her assessment of <u>witness credibility</u> could have had some impact on the committee... [13]

## B. WITNESS STATEMENTS

The issue is not whether "there were only a few minor references to the witness statements in the file" as Defendants argue in their initial response to Doe's TRO and Preliminary Injunction request. Nor is it dispositive to the court's examination of due process that the witness statements were merely part of the university's investigative report. The issue is if the UDC relied upon the witness statements in rendering their decision to discipline Doe.

John Doe was never provided any opportunity to confront the three witnesses who supplied statements relied upon by the panel. He could not compel the witnesses to attend.[14] There is no doubt the panel relied on these statements and that John Doe's inability to cross-examine the persons who provided these statements had an impact on the hearing process. UDC panel members asked specific questions from the witness statements during the hearing and relied on them in their deliberations.

USA takes the position that it was the duty and burden of Doe to call these witnesses to testify at the UDC hearing. As established at the hearing, Doe was under a *No Contact* order from the defendants with respect to witness Roe 1, and had been threatened by another witness, Student 2

---

[13] See Exhibit 10 to Plaintiff's Amended Complaint.

[14] Hearsay evidence is generally admissible in informal administrative proceedings. *See Richardson v. Perales*, 402 U.S. 389, 407-08, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, while some hearsay evidence can be admissible at administrative hearings, it is improper for a hearing to rely on hearsay evidence and not provide any opportunity for an accused student to compel the attendance of the declarants so that, if desired, the veracity of the hearsay statements can be attacked. *Cf. United States v. Inadi*, 475 U.S. 387, 398 (1986) (suggesting that a defendant is protected from prejudicial hearsay when the defense may subpoena an available declarant); *Ortiz v. Eichler*, 616 F.Supp. 1066, 1068 (D.Del.1985) (an administrative hearing could admit hearsay as long as the party could compel the attendance of the witnesses "because claimants would then have the power to compel confrontation with, and cross-examination of, hearsay declarants"); *Basco v. Machin*, 514 F.3d 1177, 1182-83 (11th Cir. 2008)(administrative decision relying solely on hearsay could violate due process guarantees when the plaintiffs could not subpoena the declarants).

(Preliminary Injunction Hrg, p.193, Lns.17-22). USA argues Doe could have gone through the university to have Roe 3 summoned to appear, but Doe attempted that with a prior witness (Student 11). Regardless, it is the University of South Alabama's duty and to do so and one they covenanted with Doe to provide.

Doe specifically requested USA advise him who would be testifying at the hearing, but USA did not. The absence of these witnesses increased the University's obligation to ensure that it provide a fair hearing.  See *Furey v. Temple Univ.*, 884 F.Supp.2d at 255 (E.D.Pa. 2012):

> The absence of the witnesses also affected the fundamental reliability and fairness in the Hearing and appeal. The absence of these witnesses increased the University's obligation to ensure that it provided a fair hearing and a fair appeal, where credibility could be properly judged.

It is the University's obligation to provide a fair hearing and a fair appeal.  In this instance, USA should have excluded the statements of witnesses who did not appear. In *Nokes v. Miami University, et.al.*, Civil Action No.1:17-cv-482 (S.D. Ohio Western Division August 25, 2017) the court addressed this very issue of witness statements. The court granted the student's preliminary injunction enjoining his suspension and finding sufficient likelihood of student success on the merits. The University deprived a student of the right to confront adverse witnesses through cross-examination where the complainant submitted three witness statements and those witnesses who did not appear at the hearing." [15]  Is the prejudice any different for due process concerns whether the statements were submitted by the complainant or the university in this instance?

The witness statements offered against Doe that were part of the university packet given to the UDC were relied upon by the UDC in adjudicating Doe responsible. From the testimony at the preliminary injunction hearing, it was clear the UDC panel relied upon the witness statements Doe objected to at the hearing. In *Nokes*, the presiding panel member stated on the record that they needed to take all the witness statements as true, even though they did not appear to testify.

---

[15] A copy of the *Nokes* case was attached as an exhibit to Plaintiff's TRO Motion with the Court.

In Doe's case, UDC 6 testified at the Preliminary Injunction Hearing that Agnew trained each UDC panel member to rely on the materials in the UDC packet, including witness statements.[Prelim.Inj.Hrg. testimony of UDC 6, p.17, Lns.3-13]This UDC packet is the gold standard for the UDC. USA and Agnew specifically taught that if it is in the packet, you must believe it and go by it. UDC panel members are taught "to go off the packet and the testimony during the hearing" [Prelim.Inj.Hrg. testimony of UDC 6, p.50, Lns.1-12] When the testimony at the hearing is in conflict, the UDC investigative packet with witness statements becomes even more important for the UDC.

Additionally the UDC worksheets which each UDC panel member filled out at the hearing and during deliberations (Plaintiff Exhibit 10: UDC Analysis of Evidence and Findings Worksheets offered into evidence at the Preliminary Injunction Hrg) evidence a reliance on the witness statements. Specific testimony at the Preliminary Injunction Hearing by UDC panel members emphasized just how important these witness statements were in rendering their decision.

1.    **UDC 6 TESTIMONY**

When asked if they take everything into account, UDC 6 confirmed it would include witness statements that were given in the UDC file. When asked if they were taught to rely on statements, she replied they were taught to rely only on things in the packet. [Prelim.Inj.Hrg. testimony of UDC 6, p.17, Lns.3-13] When asked, UDC 6 confirmed that she reviewed the witness statements and all items in the packet before the hearing begins. [Prelim.Inj.Hrg. testimony of UDC 6, p.17, Ln. 24-p.18, Ln.6]

UDC 6 confirmed that before the hearing started the UDC panel members received the investigative packet, which contained witness statements, that she reviewed them, and that the other members had the packet so they also reviewed the statements.. [Prelim.Inj.Hrg. testimony of UDC 6, p.19, Ln. 21- p.20, Ln.11]

UDC 6 confirmed the UDC panel talked about the witness statements during deliberations, that they didn't really give any new information and they believed the folks they gave the statements were being sincere. No panel member raised the issue or was concerned about not being able to ask questions about the statements. [Prelim.Inj.Hrg. testimony of UDC 6, p.31, Ln. 17- p.32 Ln.5] This makes sense, as the UDC panel had been trained by Agnew to rely on the contents of the UDC investigative packet as true. Simply put the UDC accepted the witness statements as true.

Since UDC 6 testified that the UDC panel members believed the witness statements to be true and sincere, as they were taught by Agnew, the inability to cross-examine those witnesses was critical in the evaluating Doe's due process claim and brings this case within the Nokes case.

UDC 6 when asked if she thought the statements were true, she responded that she found them to be adequate without the witnesses being there, she believed the statements were sincere, and she believed them. When asked if she thought there would be value in being able to question a witness about statements, she responded that the university policy didn't say they had to have them. When asked if she thoughts the statements were credible, she responded, "I felt like they were true. So--." [Prelim.Inj.Hrg. testimony of UDC 6, p.32, Ln. 19- p.33 Ln.18]

UDC 6 testified that Agnew during deliberations instructed the UDC panel that University policy did not require witnesses to be present, so the UDC panel apparently disregarded Doe's objection to the witness statements and considered them. [Prelim.Inj.Hrg. testimony of UDC 6, p.36, Ln. 19- p.37 Ln.12]

UDC 6 also discussed the admission of Roe 1's statement for consideration by the UDC. Doe objected at the hearing to this statement being allowed in because he could not cross examine Roe 1. When asked, UDC 6 confirmed that Roe 1's statement was one used in this hearing that found Mr. Kolb responsible and was part of the packet. [Prelim.Inj.Hrg. testimony of UDC 6, p.54, Ln. 22- p.55 Ln.2]

2.      **ANDREA AGNEW TESTIMONY**

Dr. Agnew was asked at the preliminary injunction hearing if any witness who she submitted written statements for appeared at the Roe 3 hearing. She responded that the witness statement are part of the investigative report and the witness statements she collected were included in the UDC packet. [Prelim.Inj.Hrg. testimony of Agnew, p.77, Lns17- 22] Again, the UDC investigative report is critical in the UDC hearing. If it's in the report, it's to be accepted as truth. This fact becomes critical, when in cases like Doe, there is conflicting testimony between the accused and the accuser.

3.      **UDC 3 TESTIMONY**

UDC 3 confirmed that he considered the witness statements during deliberations and believed them to be true and accurate. UDC 3 testified he found the statements to be credible [Prelim.Inj.Hrg. testimony of UDC 3, p.265, Ln.21- p.266, Ln.4] UDC 3 confirmed that there were witness statements from people that did not appear at the hearing and the panel didn't feel it was very important for the witnesses to be there since the statements were read. [Prelim.Inj.Hrg. testimony of UDC 3, p.266, Lns.10- 20] UDC 3 acknowledged that there was some discussion by the UDC panel about the witness statements being considered when they were not there to be questioned by the UDC panel. However, UDC 3 said the UDC panel "didn't feel like they [the witnesses] needed to be present in order for them to—in order for their testimony, which was on paper for us to read—we didn't feel like it was very important." Prelim.Inj.Hrg. testimony of UDC 3, p.266, Lns.17-20] UDC 3 found the witness statement in the packet credible. [Prelim.Inj.Hrg. testimony of UDC 3, p.266, Lns.2-4] Clearly, the UDC had no need to question the witnesses who were not present, because the UDC was taught to believe the statements as true because they were part of the investigative packet. [Prelim.Inj.Hrg. testimony of UDC 3, p.270, Lns.16-20]

From UDC 3's perspective the witness statements were critical in resolving the case in favor of Roe 3. When UDC 3 was asked at the preliminary injunction hearing if this was a he-said she-said

issue he responded, "Not really." Instead he said the UDC kind of based it [their decision] off of witness statements. UDC 3 was asked if the statements tipped the balance in favor of finding Doe responsible and responded, "Not necessarily," and said it was a long time ago and not really one thing stood out. [Prelim.Inj.Hrg. testimony of UDC 3, p.268, Ln.22-p.269, Ln.6] Any doubt about the significance the witness statements played in UDC decision was cleared up when UDC 3 testified that the UDC heavily relied on the witness statements. [Prelim.Inj.Hrg. testimony of UDC 3, p.270, Lns.21-p.23]

4.      UDC 5 TESTIMONY

UDC 5 confirmed that he too considered witness statements of the witnesses who did not appear. UDC 5 testified the UDC panel considered the statements. [Prelim.Inj.Hrg. testimony of UDC 5, p.274, Lns.8-17] UDC 5 found the statements helpful and that he relied on them in rendering his decision. [Prelim.Inj.Hrg. testimony of UDC 5, p.275, Lns.8-12]

VI.     USA's SIGNIFICANT DEPARTRUES FROM ITS OWN RULES, REGULATIONS, & PROCEDURES

The cumulative impact of these due process violations favor the court issuing the injunction. *See Doe v. The Rector & Visitors of George Mason Univ.*, 149 F.Supp.3d 602, 621 E.D. Va. 2016) (concluding that although certain procedural irregularities or failures to follow the university's own procedure would not, standing alone, rise to the level of a constitutional violation, the "accumulation of mistakes" "resulted in a violation of procedural due process") (citation omitted). The United States Supreme Court has recognized that "significant departures from stated procedures of government and even isolated assurance by government officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations." *Jones v. Bd. of Governors of Univ. of North Carolina*, 704 F.2d 713, 717 (4th Cir. 1983) citing *United States v. Caceres*, 440 U.S. 741, 752-53, n.15 (1979).

Additionally, when a university does not abide by or respect its own rules, regulations, and procedures in disciplinary hearings this Court may consider it along with additional errors in deciding that the disciplinary hearing in its totality failed to comply with due process. See *Doe v. Rector and Visitors of George Mason University*, 149 F.Supp.3d 602, 621 (2016):

> Although these procedural irregularities, standing alone, would not rise to the level of a constitutional violation, "the accumulation of mistakes" on this record, including "failures to comply" with internal policies, clearly "resulted in a violation of procedural due process."

*See also Furey v. Temple Univ.*, 884 F.Supp.2d 223, 259 (E.D.Pa.2012) (finding, based on a totality of errors that included deviations from the university's code, that a university disciplinary process fell short of what due process required). See *Doe v. Alger, 228 F.Supp.3d 713 (2016)*; *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student).

### A. USA breached its own Rules, Regulations, & Procedures by allowing unsworn witness statements without a showing the witnesses were "Unable" to attend

USA failed to follow its own rules by allowing the unsworn witness statements to be admitted and read by the UDC without finding that the witnesses were "unable" to attend the second hearing in the case of Roe 3. See The Student Code of Conduct, Rule 8.0, A. Formal Hearing Procedures, 2.

> The hearing shall be conducted by the Student Conduct Administrator, be informal in nature, and legal rules of evidence shall not apply. The hearing shall be closed to everyone except the Student Conduct Administrator, members of the UDC, the respondent, and the complainant and/or victim and advisors to the respondent and the complainant and/or victim. Witnesses will be present only during their own testimony. The complainant/victim and the respondent, have the right to:
>
> > 2) Present evidence by witness <u>or by affidavit if a witness is unable to attend the hearing</u>. It is the responsibility of the respondent and the complainant/victim to notify their witnesses of the date, time and place of the hearing. If witnesses fail to appear, the hearing shall be held in their absence. (*emphasis added*)

**B. USA breached its own Rules, Regulations, & Procedures by failing to afford DOE a thorough, fair, and impartial investigation, hearing, and appeal.**

USA covenanted it would "Conduct a thorough, fair, and impartial investigation that provides the parties and equal opportunity to present information and equivalent procedural safeguards," which it failed to do in Roe 3's hearing as alleged above. *USA Sexual Misconduct Policy & Complaint Resolution Procedures, VII.C.; see also USA Student Code of Conduct, IX.B.* promising "The right to a prompt, fair and impartial process from the initial investigation through the final result." *See also Sexual Misconduct Policy & Complaint Resolution Procedures, I. C. Promptness, Fairness and Impartiality:*

> These procedures provide for prompt, fair, and impartial investigations and resolutions. All University employees involved in the investigation and resolution process shall discharge their obligations under these Complaint Resolution Procedures fairly and impartially. If an involved University employee determines that he or she cannot apply these procedures fairly and impartially because of the identity of a complainant, respondent, or witness, or due to any other conflict of interest, another suitable individual will be designated by the Title IX Coordinator to fill the role.

Additionally, USA covenanted it would "Avoid conflicts of interest that could call into question the integrity of the process," which it failed to do in ROE 3's hearing as alleged above. *USA Sexual Misconduct Policy & Complaint Resolution Procedures, VII.C.* [Defendant's Exhibit 2 at Preliminary Injunction Hearing]

**C. Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(4)) in Removing Witness Statements from UDC Packet**

Before the UDC hearing commenced, Agnew removed two witness statements from consideration by the UDC panel and failed to notify Doe that she intended to do so. While Doe requested she remove all the statements of witnesses who would not be testifying, Agnew refused. She kept those statements in the investigative report that were most helpful in finding Doe

responsible. Agnew removed Student 2's statement from the UDC packet and failed to notify Doe before the hearing that she intended to do so. Student 2's statement contained exculpatory information for Doe. The statement of Student 2 that Agnew excluded quoted Student 2 as saying, it looked like "Roe 1 and Student 4 wanted to hook up that night, and Roe 3 and John Doe wanted to hook up that night." (Plaintiff Exhibit 2 from Preliminary Injunction Hrg) This was a critical component and cornerstone of Doe's defense- that Roe 3 consented to sexual relations with Doe. In removing these witness statements from the UDC packet for consideration, violated Sexual Misconduct Complaint Resolution Procedures IV (D)(4)) [Defendant's Exhibit 2 at Preliminary Injunction Hearing]. The Investigating Officer's written investigation report is intended to have all witness statements appended as well as other information collected during the investigation. (See Sexual Misconduct Complaint Resolution Procedures IV (D)(4)).Additionally, Defendant Mitchell acknowledged in his affidavit that  (Mitchell Aff.¶ 13: "the investigation file is intended to have all the witness statements appended as well as other information collected during the investigation.")

### D. Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(6)) in failing to timely submit her investigation report and any appended information to UDC members

Sexual Misconduct Complaint Resolution Procedures IV (D)(4)) requires the investigating Officer to submit the investigative report to the UDC no less than three (3) business days before the hearing.

> "Not less than three (3) business days before the UDC hearing, the Investigating Officer shall transmit the investigation report and any appended information to the UDC members, the complainant, and the respondent…"

Agnew did not transmit the investigation report to the UDC panel members until the day of the hearing, just 45 minutes before the hearing commenced. [UDC 6 testimony at prelim.injunction hrg. p.18, Lns.7-15]If Agnew would have complied with the rules the conflicts of interest between

the student UDC panel members and Roe 3 could have been avoided, and UDC 6's conflict could have been addressed.

### E.  Agnew's Participation and "Facilitation" in UDC Deliberations Violated USA's Student Code of Conduct

Since Doe was charged with sexual misconduct, USA required a formal hearing before the UDC panel. This panel under the rules was to be chaired by Agnew, but she was not to deliberate or facilitate or pose questions to the UDC panel. *See Student Code of Conduct, 8.0 Disciplinary Procedures, Participating as a Respondent*: "Option 2 is a formal hearing before the UDC and is chaired by a non-voting, non-deliberating Student Conduct Administrator."

USA's Student Code of Conduct Rule 8.0 A.6. provides that "After the hearing, the UDC shall meet <u>in private</u> to determine whether the evidence/information presented or received by the UDC during the hearing proved that it is more likely than not that the respondent violated one or more sections of the Code." (*Emphasis added*)

### F.  The Appearance of Impartiality

Agnew's blended roles, her recusal from the very case she decided to become re-involved in, her knowledge of UDC 6's prior participation, and Agnew's decision to disregard the UDC recommended sanction all confirm Doe's concern raised at the outset of the Roe 3 investigation that Agnew could not be fair and impartial. Any doubt as to Agnew and Mitchell's impartiality and fairness, is resolved when the Court considers the defendants concealed these facts from Doe. *Doe v. Rector and Visitors of George Mason University*, 149 F.Supp.3d 602, 619 (2016) at Note 19:

> Although not dispositive here, it is worth noting that the appearance of impartiality is one of the many facets of procedural fairness. That is, even in the absence of actual bias, the appearance of bias or partiality erodes public trust in the integrity of government institutions. In this respect, the mere fact that Ericson would assign himself an appeal of a case in which he had extensive pre-hearing involvement is troubling, if not independently problematic as a constitutional matter.

In these circumstances considering the facts, USA defendants denied Doe the right to a meaningful hearing and appeal.

## VII.    THE RIGHT TO DUE PROCESS IS ABSOLUTE

USA defendants argue and suggested in their questioning of witnesses that Doe must show prejudice, i.e. that the defendants conduct even if improper must be outcome determinative. Such a position is not in holding with United States Supreme Court precedent. USA defendants and the panel members suggest that even if they violated rules or skirted due process by allowing the unsworn witness statements to be considered by the UDC panel would not have mattered. USA defendants and even some of the panel members suggested that even if it was improper for UDC 6 to participate in the second Roe 3 hearing, it does not matter, as the decision to find Doe responsible was unanimous. USA and defendants Agnew and Mitchell suggest that even if UDC 6 served on a prior Title IX panel against Doe she could still sit impartially and render an unbiased verdict. USA defendants even suggest that Doe waived his right to impartial factfinder by not recognizing UDC 6. Even if you take away the UDC 6 vote, all that was needed to find Doe responsible was a mere majority, and in this instance the vote would have been 5-0. No matter how convenient such propositions may appear on their face, they are irrelevant for purposes of due process, because the right to procedural due process is "absolute."

In *Carey v. Piphus*, 435 U.S. 247 (1978), the Court considered a suspension of students without due process; no finding was made as to whether the students would have been suspended if they had received adequate procedural due process.  The Court rejected the argument that the court should consider whether the suspensions would ultimately have been imposed:

> Even if [the students'] suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. . . . . the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . because of the importance to organized society that procedural due process be

27

observed.[16]

Additionally the Court noted that the right to procedural due process is absolute:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see *Boddie v. Connecticut*, 401 U.S. 371, 375, 91 S.Ct. 780, 784, 28 L.Ed.2d 113 (1971); *Anti-Fascist Committee v. McGrath*, 341 U.S., at 171-172, 71 S.Ct., at 648-649 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.[ FN omitted] We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.[17]

The Supreme Court later, in *Zinermon v. Burch*, 494 U.S. 113, 126 (1990), removed any doubt the *Carey* decision meant that a reviewing court is not to examine the merits of the underlying claim in order to find a due process violation: "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."  The *Zinermon* Court explained that *Carey* explicitly rejected the argument that Plaintiffs must show prejudice in order to establish a procedural due process violation.

> The Court in *Carey* explained that a deprivation of procedural due process is actionable . . . *without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards.* (Emphasis supplied). *Zinermon*, 494 U.S. at 126 n. 11 (1990)

The Court in *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) noted "the constitutional violation actionable under § 1983 is complete when the wrongful action is taken."The Court in *Carey v. Piphus* explained that a deprivation of procedural due process is actionable under          § 1983 without regard to whether the same deprivation would have taken place even in the presence of proper procedural safeguards. 435 U.S., at 266, 98 S.Ct., at 1053 (even if the deprivation was in fact justified,

---

[16] *Carey v. Piphus*, 435 U.S. 247, 265-266 (1978)
[17] *Id.* at  266-267 (1978)

so the plaintiffs did not suffer any "other actual injury" caused by the lack of due process, "the fact remains that they were deprived of their right to procedural due process").

## VIII.    USA IS NOT ENTITLED TO DEFERENCE

USA concealed the operative facts from Doe and his adviser and failed to act in good faith. Doe adopts his previously asserted brief and authorities previously cited in this regard.

## IX.    IRREPARABLE HARM

Doe adopts his previously asserted brief and authorities previously cited in this regard as well as the attached testimony of Doe at the hearing. Defendant Mitchell acknowledged if the suspension were allowed to stand, there would be gap on Doe's transcript. [Prelim.Inj. Hrg. Mitchell, p.229, Lns.6-10] Additionally Doe has been suspended from the ROTC program, stripped of his rank, and will be denied the opportunity to obtain his commission in the Army. [Prelim.Inj. Hrg. Doe, p.162, Lns.8-25; p.162, Lns.1-7] Finally, USA has argued in its motion to dismiss that the named defendants are entitled to qualified immunity and if so, no other adequate remedy at law would exist but the request injunctive and declaratory judgment relief. Doe will suffer irreparable harm if this Court does not grant the request for a preliminary injunction.

## X.    HARM TO THIRD PARTIES AND PUBLIC INTEREST

Doe adopts his previously asserted brief and authorities previously cited in this regard as well as the attached testimony of Doe at the hearing.  In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility for Reg. Transp.*, 698 F.3d 885, 896 (6th Cir. 2012).  Moreover, an injunction is also in the public interest.

## XI.   CONCLUSION

Pursuant to Fed. R. Civil P. 65, this Court should grant, a Preliminary Injunction prohibiting USA from imposing any disciplinary sanctions against John Doe. Defendant USA violated the most fundamental aspects of due process of law. Plaintiff requests that this Court order USA to allow Plaintiff to earn his degree, and reinstate him immediately, order USA to place him immediately back into the ROTC program. Plaintiff further requests that this Court declare that Defendant's rules and policies and actions, as applied herein, were unconstitutional or in violation of the contractual equivalent of due process, i.e. good faith and fair dealing and fundamental fairness. Plaintiff requests the Court to enjoin the Defendants from releasing John Doe's identity and it's the results of any of the hearings made the basis of this action.

Respectfully submitted,

/s/ Matt Green(GRE095 A)
_____
Matt Green, Esq. (GRE095 A)

OF COUNSEL:
Matt Green, Esq. (GRE095 A)
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1
Mobile, AL 36602
Ph: (251) 434-8500
Facsimile: (251)434-8500
E-mail: mattgreenlaw@comcast.net

CERTIFICATE OF SERVICE

I hereby certify that I have on this 17th day of October 2017, electronically filed the foregoing with the Clerk of the court using the CM/ECF system and will serve the defendants by their in house counsel who has agreed to accept service on behalf of all  named defendants with the documents he intends to file under seal.

Windy Bitzer                                        Christine Hart
Hand Arendall, L.L.C.                               Hand Arendall, L.L.C.
P.O. Box 123                                        P.O. Box 123
Mobile, AL 36601                                    Mobile, AL 36601
(334)432-5511                                       (334)432-5511
Fax:251.694.6375                                    Fax:251.694.6375
E-mail:wbitzer@handarendall.com                     E-mail:wbitzer@handarendall.com