**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN DOE | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: <u>1:17-CV-394-CG-C</u> |
| THE UNIVERSITY OF SOUTH ALABAMA, The University of South Alabama; Michael A. Mitchell, individually and in his official capacity; Andrea C. Agnew, individually and in her official capacity; Krista Harrell, individually and in her official capacity; | |
| Defendants. | |

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

### APPLICABLE LEGAL STANDARDS

When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[1] The court must also construe those factual allegations in the light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Conclusory allegations and legal conclusions are not entitled to a presumption of truth, however. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 678 (2009). In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual

---

[1] Doe has withdrawn any portion of an averment that alleges Defendants concealed UDC 6 served in a prior Title IX hearing against Doe or that he was unaware of UDC 6 service in the Roe 1/Roe 2 UDC panel.[¶215, 266]. However, Doe maintains that defendants concealed the UDC recommended sanction of probation and defendant's Mitchell's involvement in the sanction prior to the appeal in the second Roe 3 hearing.

allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Under Fed. R. Civ. P. 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion." *Solis–Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,563 (2007), "When there are well-pleaded factual allegations, a court should assume their veracity and then determine *whether they plausibly give rise to an entitlement to relief.*" *Id.* (emphasis added). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965). The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. *Sinaltrainal v. Coca–Cola Co.,* 2009 WL 2431463 (11th Cir. Aug. 11, 2009)

## I.   PLAINTIFF HAS ESTABLISHED A PLAUSIBLE DUE PROCESS CLAIM

Doe has established a plausible claim for procedural due process violations for lack of an impartial decision maker, lack of a fair and impartial tribunal, biases of defendants, violations of the university's own rules, guidelines and procedures, as well as a cumulative impact of conduct that constitute of due process violations.[¶328] While only limited discovery has been conducted, Doe has alleged conduct committed by defendants, particularly in the second Roe 3 hearing, which are sufficient to state a claim for relief that is plausible on its face.[2]

---

[2] Doe has conducted only a limited amount of discovery, and only as the second Roe 3 hearing. There were two other hearings subject whose facts are cited in the complaint as giving rise to

### A. Bias & Failure To Provide A Fair & Impartial Hearing & Neutral Arbiter In Both Roe 1/Roe 2 And Roe 3 Hearings

Defendants charged Doe with engaging in sexual misconduct with Roe 1, Roe 2, and Roe 3 based on theories that all three were unable to give consent based on alcohol consumption. This becomes a significant factor at the Roe 1/Roe 2 hearing where Doe and the UDC panel members arrived at the hearing to find signs and posters compelling UDC panel members to equate any alcohol consumption with obviating consent. The flyers were on official University of South Alabama letterhead and bore the imprimatur of USA's endorsement and victim advocacy. One of the flyers even had a website link to an official university page of the department of student affairs. UDC 1 and defendant Mitchell (V.P. of student affairs) both work in this department. [¶223]  The atmosphere and surroundings, banners, and flyers were displayed prominently incited the UDC panel to discipline Doe for sex on mere alcohol assumption alone. [¶103-¶104; Exhibit 7 to Amended Complaint]. These were the very issues the UDC panel decided in the case.[¶317]

This atmosphere of sexual assault advocacy operated so as to deprive Doe of a fair and impartial hearing and plausibly suggests university participation and approval.

In the second Roe 2 hearing, Defendant Agnew trained and supervised the UDC panel and represented herself as the ultimate authority on Title IX investigations [¶100]. Agnew's influence in the process was significant and critical to the finding of Responsibility in Roe 1/Roe 2 and the second Roe 3 hearings. [¶202 ] Agnew in the Roe 1 and Roe 2 hearing acted as an investigator, taking witness statements and compiling her own investigative report. Agnew then submitted her investigative report which included unsworn witness statements, her own written findings of fact, and determinations of witness credibility where she credited Roe 1 and Roe 2's version of facts more believable. [¶311, ¶133, Exhibit 10 to Amended Complaint] Doe objected prior to the hearing, but

---

various causes of action for due process violations, Title IX violations, negligence, breach of contract, and civil conspiracy.

Agnew denied Doe's request. [¶100] This was too much even for Defendant Mitchell, who ruled on the appeal:

> "Though Dr. Agnew's report of her investigation findings were intended to be informational for the committee, her assessment of witness credibility could have had some impact on the committee…" (¶133; *See Amended Complaint, John Doe Exhibit 10:Defendant Michael Mitchell Ruling on Doe Appeal in Case of Roe 1 and Roe 2 Case Number: 2016012301*

A fair and plausible inference is that Mitchell found such conduct to have unduly influenced and prejudiced the committee. A plausible inference is that Agnew prejudged the Roe 1/Roe 2 case and usurped duties and functions reserved for the UDC panel. Although, Agnew trained the UDC to accept her version of events, facts, timelines, and witness credibility as contained in the UDC investigative packet, Mitchell affirmed the finding of Responsibility in Roe 1/Roe 2. Mitchell reduced a single component of the sanction.[¶133; exhibit 10, amended complaint] [3] These facts suggest a plausible claim for bias.

During the Roe 1/ Roe 2 hearing, Doe attempted to question both Roe 1 and Roe 2 about the identity of another male (air force cadet) who had engaged in sexual relations earlier in the evening. The identity of the air force cadet witness was critical to Doe's defense that neither Roe 1 nor Roe 2 were incapacitated because of the temporal proximity of the event to Doe's encounter with Roe 1 and Roe 2. Kim Ortiz the Student Conduct Administrator allowed Doe to ask the question, but Agnew overruled her and disallowed the question. [¶117,324] This evidence was material and highly relevant evidence to corroborate Doe's testimony and to challenge Roe 1 and Roe 2's testimony on the issue of intoxication/incapacity. The failure to allow questioning in this regard suggests a plausible claim that violated due process and prevented Doe from having a fair hearing and a meaningful opportunity to be heard and tell his side of the story.

---

[3] Mitchell only removed the residential removal sanction from the UDC finding and left all other aspects of the sanction in place.

Agnew started out as the Student Conduct Administrator in the Roe 3 investigation. Doe objected and Agnew recused [¶*180-181; Amended Complaint, Exhibits 12,13*]. Ultimately, Mitchell ordered a new hearing in Roe 3 [¶196] after Roe 3 introduced evidence of prior allegations of Doe in the first Roe 3 hearing [¶196]. Mitchell thereafter approved Agnew to rejoin the case, despite her prior recusal. [*Amended Complaint, Exhibit 16*]

Dr. Agnew's purported level of experience was a pretextual reason as the facts in the amended complaint suggest. Her level of experience included presiding over the kangaroo court where both allowed Roe 1 and Roe 2 to run roughshod over the rules of the hearing. Roe 1 and Roe 2 referenced Roe 3 on at least 5 different occasions, even after being escorted from the room by Agnew and instructed not to [¶119-120]  In doing so, Doe's right to fair and impartial hearing was compromised.[¶121]

After her recusal and subsequent re-appointment in the second Roe 3 hearing, Agnew allowed UDC 6 to serve despite having actual knowledge prior to the hearing that UDC 6 had served on the Roe 1/Roe 2 panel. [¶210-226]

Finally, Doe avers that the personal relationships between Mitchell and at least three UDC panel members in the second Roe 3 hearing [¶320,321,322] deprived Doe of a fair and improper hearing and appeal. This is to be considered in conjunction with Mitchell's friendship with Student 10 (Roe 3's boyfriend who is a popular student athlete on campus [¶319]. Doe also avers UDC panel members [UDC 3 and UDC 5] had personal friendships with Roe 3, as opposed to professional friendships. [¶309].  When all these relationships are considered *in light of and in conjunction with, instead of apart from,* the other averments and exhibits to the amended complaint, they give rise to a plausible entitlement for relief. The cumulative impact of all these factors are relevant when the court passes upon the totality of circumstances Doe alleges in his amended complaint.[¶328]

## B.  Doe Denied Right To Question and Confront Witnesses

UDC panel members are trained to believe and trust what is in the UDC investigative packet [¶242, 283,295,331].[4] The UDC panel in Roe 3 considered all the witness statements in their finding of Responsibility, including those who did not appear. [¶249; Exhibit 22 Amended Complaint] Defendants cite multiple cases that they suggest such a practice is permissible. However defendants fail to note the distinction between a modified/indirect right to question witnesses, as opposed to denying the right altogether. Defendants denied the right altogether in the second Roe 3 hearing [¶18,227,242,329] and denied the right as to several witness statements in Roe 1 and Roe 2 [¶115].

USA's own rules grant a respondent like Doe the right to question all witnesses, *not just all witnesses who attend the hearing* like it now contends. "The right to question <u>all witnesses</u> at the disciplinary hearing." *See University of South Alabama Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking Policy, IX, B., f* (exhibit 3, amended complaint)

### C.  Modified/Indirect Cross-Examination vs. No Opportunity To Cross-Examine

In *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir.1987), an academic discipline case, the students were offered a limited or indirect form of cross-examination of witnesses, although the students failed to avail themselves of it. *Nash*, 812 F.2d at 664. In the second Roe 3 hearing, defendants dispensed with cross-examination altogether in offering and including unsworn statements from witnesses who did not appear and were not subject to any form of questioning or cross-examination.

The Sixth Circuit Court of Appeals faced a similar precedent in *Doe v. Cinncinati*. 872 F.3d 393 (6th Cir. 2017) when called upon to evaluate whether a student is entitled to some form of cross-examination as to his accuser. The Sixth Circuit in *Doe v. Cincinnati* was called upon to reconcile such a practice with its prior holding in *Doe v. Cummins*, 662 F. App'x 437 (6th Cir.2016)

---

[4] The danger to due process in this instance is manifest when the Court considers Mitchell found Agnew's statements of fact and determinations of witness credibility that were included in the UDC packets in Roe 1/Roe 2 hearing "could have had some impact on the committee."

(cited by Defendants) that held a "circumscribed form of cross-examination" is sufficient when a student's accuser appears for the hearing. The court in *Cummins* ruled that way for "fear of 'saddl[ing] school officials with the burden of overseeing ... cross-examination.'" *Cummins*, 662 Fed.Appx. at 448. The *Cummins* court however, like the *Nash* court, left open the possibility that a university's procedures may nonetheless violate due process as applied to a student whose accuser (as in *Doe v. Cincinnati*) fails to appear for the hearing.

Defendants in their motion to dismiss fail to note that "*Cummins* did not address whether a student facing suspension who is denied even this modified form of cross-examination suffers a violation of due process." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 404 (6th Cir. 2017), *Fn.3*. That issue was resolved in favor of the student accused in *Doe v. Univ. of Cincinnati*. Likewise, *Nash* held only that the students were not deprived of due process by their "inability to question the adverse witnesses *in the usual, adversarial manner*." *Nash.*, 812 F.2d at 664 (11th Cir.1987)(*emphasis added*). *Nash* did not foreclose the opportunity to challenge a process when the student accused of misconduct is denied the opportunity to question the adverse witnesses *at all*.[5] That brings the *Nash* holding in line with the *Cummins* holding in that in both cases the students accused had the opportunity to some indirect or limited form of cross-examination. In Plaintiff's case, just like the accused students in the *Cincinnati* and *Nokes* cases, all were deprived of any opportunity at all to cross-examine a witness. The distinction is crucial and one that prompted the Sixth Circuit to find in favor of the student asserting a due process violation. Sparing the UDC panel from having to navigate traditional cross-examination may justify the requirement for an indirect cross-examination of witnesses, but it does

---

[5] Even *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961),cited by the defendants noted "The nature of the hearing should vary depending upon the circumstances of the particular case." The dicta in Dixon cited by defendants does not stand for the hard and fast rule that no-cross examination in any university discipline case is appropriate. Such a reading is inconsistent with the flexibility requirement of due process.

not justify denying the opportunity to question an adverse witness altogether.

Finally, the case in *Nokes v. Miami University, et.al* , 2017 WL 3674910 (S.D. Ohio Aug.25, 2017) is directly on point. The present case is more egregious than *Nokes* in light of USA's policy to train UDC panel members to rely and trust witness statements if they are part of the university's investigative packet.

### D.  UDC deprived of Opportunity to Question Witnesses

Defendants assert and presume the safeguards Doe seeks are only of benefit to him. The UDC and ultimately the fact finding role of such a tribunal is aided in its search for the truth. When a tribunal is left between choosing between an accuser and his accused, and those are the only two persons who appear in person to answer UDC panel member questions, the right for the UDC panel members to question the witnesses who provide statements is critical. If a university's procedures are insufficient to make "issues of credibility and truthfulness ... clear to the decision makers," that institution risks removing the wrong students, while overlooking those it should be removing. *See Furey v. Temple Univ.*, 884 F.Supp.2d 223, 252 (E.D. Pa. 2012). The value of at least some form of questioning or cross-examination is invaluable to any tribunal in its search for the truth. The language in *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 402 (6th Cir. 2017) warns of the danger inherent in dispensing with cross-examination altogether. "The ability to cross-examine is most critical when the issue is the credibility of the accuser." *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 605 (D. Mass. 2016). Cross-examination takes aim at credibility like no other procedural device. *Craig*, 497 U.S. at 846, 110 S.Ct. 3157; *Watkins*, 449 U.S. at 349, 101 S.Ct. 654. A cross-examiner may "delve into the witness' story to test the witness' perceptions and memory." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Cross-examination may "reveal[ ] possible biases, prejudices, or ulterior motives" that color the witness's testimony. *Davis*, 415 U.S. at 316, 94 S.Ct. 1105. Cross-examination is "the greatest legal engine ever invented for the discovery of truth, "

because it would allow  the fact finder "to observe the demeanor of the witness in making his statement, thus aiding the [fact finder] in assessing his credibility." *Craig*, 497 U.S. at 846, 110 S.Ct. 3157 (quoting in part *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)

Defendants assert that no amount of cross examination or indirect questioning of the witnesses would have made a difference. This is exactly the sort of rigid approach to due process courts have rejected and that is entirely speculative. "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir.1987).

### E.  Accommodations Afforded Roes

Doe asserts that the failure of defendants to disclose what accommodations, services, and benefits they afforded each of the Does after filing their Title IX complaints. [¶174-176,205,335] *See Doe v. Ohio State University*, 219 F.Supp.3d 645 (2016) where court rejected school's attempt to refuse to disclose accommodations based on FERPA where the right to cross examine the accuser on this issue that could have provided accused student with critical impeachment evidence and appropriate in light of "the flexibility of the Due Process Clause." Doe asserts that the defendants have withheld this critical information both from Doe and the UDC panel. Defendants assert such evidence was both irrelevant and protected by FERPA. Due Process mandates a disclosure in this instance because Doe is entitled to present his side of the story.

### F.  Cumulative Impact of University Violating Its Own Rules Violates Due Process

Doe avers the defendants violated their own rules in the disciplinary process. The cumulative impact of these rule violations favor a plausible inference of defendants depriving Doe of due process. *See Doe v. The Rector & Visitors of George Mason Univ.*, 149 F.Supp.3d 602, 621 E.D. Va. 2016) (concluding that although certain procedural irregularities or failures to follow the university's own procedure would not, standing alone, rise to the level of a constitutional violation, the "accumulation of

mistakes" "resulted in a violation of procedural due process") (citation omitted). "[S]ignificant departures from stated procedures of government and even isolated assurance by government officers which have induced reasonable and detrimental reliance may, if sufficiently unfair and prejudicial, constitute procedural due process violations." *Jones v. Bd. of Governors of Univ. of North Carolina*, 704 F.2d 713, 717 (4th Cir. 1983) citing *United States v. Caceres*, 440 U.S. 741, 752-53, n.15 (1979); s*ee also Furey v. Temple Univ.*, 884 F.Supp.2d 223, 259 (E.D.Pa.2012) (finding, based on a totality of errors that included deviations from the university's code, that a university disciplinary process fell short of what due process required); *Doe v. Alger, 228 F.Supp.3d 713 (2016)*; *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student). In this case, defendants breached their rules in the following ways.

1.    USA breached its own rules, regulations, & procedures by allowing unsworn witness statements without a showing the witnesses were "Unable" to attend   [¶17,18,110-111,113,115,227,235,241,243,283,329, 334,344,410(d)]

2.    USA covenanted it would "Conduct a thorough, fair, and impartial investigation that provides the parties and equal opportunity to present information and equivalent procedural safeguards," which it failed to do in Roe 3's hearing as alleged above. *USA Sexual Misconduct Policy & Complaint Resolution Procedures, VII.C.; see also USA Student Code of Conduct, IX.B.* promising *"*The right to a prompt, fair and impartial process from the initial investigation through the final result." *See also Sexual Misconduct Policy & Complaint Resolution Procedures, I. C. Promptness, Fairness and Impartiality* [¶16, 18(a)(iii),122( fn.25),357]

3.    Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(4)) in Removing Witness Statements from UDC Packet [¶245] and participating in the deliberations of the UDC. [¶21,122,248,302-303]

4.      Agnew Violated USA Sexual Misconduct Complaint Resolution Procedures IV(D)(6)) in failing to timely submit her investigation report and any appended information to UDC members [¶238]

5.      Agnew's Participation and "Facilitation" in UDC Deliberations Violated USA's Student Code of Conduct [¶122,248,303]

### G.  Cumulative Impact Of Defendants' Conduct Violated Due Process

The Defendants have improperly attempted to break the process offered into different pieces, ignoring that the Court must consider the USA process as a whole. This 'checklist' approach is contrary to the Supreme Court's teachings. In *Mitchell v.W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895 (1974), for example, the Supreme Court reviewed pretrial attachment statutes. The Court emphasized that the "requirements of due process of law are not technical," and that a court must consider a scheme "as a whole." 416 U.S. at 610. *See also Shaumyan v. O'Neill*, 716 F. Supp. 65, 73 (D. Conn. 1989) (noting that "Mitchell would seem to stand for the proposition that  mandatory checklists of procedural safeguards are inappropriate."). Similarly, in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854 (1975), the Court evaluated state pretrial detention procedures. The Court explained that procedures may vary from state to state, so that they must be viewed "as a whole" to determine if constitutional requirements had been met. 420 U.S. at 124.

### II.     QUALIFIED IMMUNITY INAPPROPRIATE AT THIS STAGE

### A.  Defendants Acted Beyond Scope of Discretionary Authority in Disciplining Doe in Roe 3

"To invoke qualified immunity, the official first must establish that he was acting within the scope of his discretionary authority." *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008). The defendants must establish they were acting within the scope of their discretionary authority before the burden shifts to Plaintiff to show his constitutional rights were violated and that they were clearly established. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013) In the Roe 3 case, the

policing of off campus private sexual relations between adults before school was even in session that in no way implicated any university educational program or university sponsored activity, is not within the Defendants' discretionary authority. Such conduct is outside the scope of their duties and jurisdiction.[¶345-346] *See Childers v. Florida Gulf Coast University Board of Trustees*, 2017 WL 1196575 *6 (M.D. Florida, March 31, 2017) qualified immunity denied at 12(b) stage where disciplining student for private Facebook post not within defendants' discretionary authority. Agnew, Mitchell, and Harrell were not acting within the scope of their discretionary authority in disciplining Doe in the Roe 3 case. Off campus sexual relations between adult students in a private residence that is no way related to a University of South Alabama education program or activity is simply not covered by Title IX. The United States Supreme Court has held that Title IX requires some stronger nexus to the university to trigger Title IX jurisdiction. *See Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 645 (1999); Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681, *et. seq.* "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...."[6] The statute defines "program or activity" to include "all of the operations of ... a college, university, or other postsecondary institution, or a public system of higher education..."[7] Thus, to be covered by Title IX, the discrimination must occur "under" the university's "operations."[8]

Neither does the University's own rules necessarily trigger jurisdiction over the conduct alleged in Roe 3. *Student Code of Conduct. 7. Jurisdiction (exhibit 2, amended complaint)* jurisdiction attaches for conduct it deems "has an effect on or is detrimental to the University community and/or pursuit

---

[6] 20 U.S.C. 1681(a) (emphasis added).
[7] 20 U.S.C. 1687.
[8] *Id.; see also* 34 C.F.R. § 106.31 (a) (" ... education program or activity operated by a [federal funding] recipient" (emphasis added)).

of University objectives."  USA also asserts jurisdiction over student misconduct in its *USA Sexual Misconduct Policy, II. Scope and Jurisdiction.*[*exhibit 1, amended complaint*] ; see *University of South Alabama Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking Policy, I. Statement of Policy.* (*Exhibit 3, amended complaint*):

> University jurisdiction and discipline attaches to conduct which occurs on University premises, or at University related or sponsored activities, whether on or off of University premises, or which adversely affects the University community and the pursuit of the objectives of the University. (Emphasis added)

See *University of South Alabama Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking Policy, IX, B: Complainant/Victim/Respondent Rights* (exhibit 3, amended complaint):

> The University of South Alabama recognizes the following rights to each Complainant and Respondent involving allegations of sexual violence while on University premises, or at University related or sponsored activities whether on or off University premises…(emphasis added)

Doe does not dispute defendants have jurisdiction in some instances for off campus conduct. The act of disciplining Doe for conduct alleged in the Roe 3 case is not within the discretionary authority of the defendants except perhaps in certain limited circumstances where the Doe's conduct is proven to adversely affect the university community or its pursuit of university objectives. However in Roe 3, the defendants disciplined Doe for conduct that occurred off campus, before school started, that did not implicate any Title IX or university educational program or activity. [¶345-346,139,141; exhibit 11 to amended complaint;] Doe denied that he engaged in the proscribed conduct,  and denies that his alleged conduct had any effect on or was detrimental to the University community and/or pursuit of University objectives. All of the university's policies require a jurisdictional hook predicated upon implication of some university educational program and activity, or a university related or sponsored activity. As such, defendants were without discretion to discipline Doe in the Roe 3 case. Plaintiff alleges a plausible inference of construction which if taken

as true, deprives defendants of qualified immunity. Qualified immunity should not be invoked in the first instance in this case on a motion to dismiss, and discovery concerning the job descriptions, duties, and responsibilities of the individual Defendants is needed before the Court can adequately consider and evaluate the question. Even assuming Defendants were acting within their discretionary authority in Roe 3, defendants are still not entitled to qualified immunity for reasons stated below.

**B. Defendants Violated Doe's Constitutional Right To Due Process**

Plaintiff must demonstrate, taking all the facts in the light most favorable to him: (1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were "clearly established ... in light of the specific context of the case, not as a broad general proposition[.]" *Gaines v. Wardynski*, 871 F.3d 1203, 1208. (2017) *(authorities cited omitted).* As discussed above Doe's due process rights were violated.

**C. Fair Warning**

Plaintiff has made viable procedural due process claims with sufficient factual averments to establish his constitutional rights were violated. The final inquiry plaintiff must satisfy is to establish that "the law clearly established the relevant conduct as a constitutional violation at the time [the government official[s]] engaged in the challenged acts." *Gaines v. Wardynski*, 871 F.3d 1203, 1208. (2017). The rationale behind the rule is to hold the government actor responsible only for conduct or acts he had *fair warning* violated a clearly established constitutional right.  In *Gaines v. Wardynski*, 871 F.3d 1203,1208-1209 (2017), the Eleventh Circuit held there are three methods to show that the government official had fair warning:

> *First*, the plaintiffs may show that a materially similar case has already been decided. *Second*, the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally*, the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as

interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court]. (supporting citations omitted)

"The second and third methods are generally known as 'obvious clarity' cases." *Gaines v. Wardynski*, 871 F.3d 1203, 1208-1209 (2017) citing *Vinyard v. Wilson*, 311 F.3d 1340, 1350-1351 (11th Cir. 2002)

### D. Obvious Clarity

Doe asserts that defendants had fair notice under obvious clarity. First Doe can point to a broader, clearly established principle that should control the novel facts of this situation. Additionally, Doe avers conduct that so obviously violates the constitution that case law is unnecessary. It has long been clearly established that an impartial decision-maker is an essential guarantee of due process. *Withrow v. Larkin,* 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1463–1465, 43 L.Ed.2d 712 (1975). The Eleventh Circuit instructs that "[a]n impartial decision-maker is an essential guarantee of due process." *Nash v. Auburn Univ.,* 812 F.2d 655, 665 (11th Cir.1987).[9] "[B]asic fairness and integrity of the fact-finding process are the guiding stars." *Boykins v. Fairfield Board of Education,* 492 F.2d 697, 701 (5th Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975).A student has a right to procedural due process in serious school disciplinary proceedings, like suspensions. *Goss v. Lopez,* 419 U.S. 565, 576 (1975).

The right to a fair and impartial hearing and tribunal was clearly established and recognized at law and also by the Defendants Mitchell and Agnew themselves. No prior bad act evidence was to be heard or considered by any UDC panel member in the second Roe 3 hearing. [¶300,301] Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions

---

[9] In *Nash*, the students were offered a limited or indirect form of cross-examination of witnesses, although the students failed to avail themselves of it. Nash, 812 F.2d at 664. In the case at bar, defendants dispensed with cross- examination altogether as to the witness statements, particularly with respect to the second Roe 3 hearing.

would violate the plaintiff's federal rights. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citations and quotation marks omitted).

Doe alleges that defendants did not act in good faith. [*Exhibit 12, amended complaint* requesting removal of Agnew from Roe 3 because of her "animus and malice exhibited against [Doe]]. Agnew instructed Doe during the Roe 3 hearing that he could not mention Roe 3's sexual assault of him [the sexually transmitted disease issue], and put a specific warning that in the parties UDC packet that the UDC would not be allowed to consider prior acts of misconduct.[¶238,239,300; exhibit 24, amended complaint] Mitchell set aside the first Roe 3 hearing because the UDC panel heard alleged prior bad acts of Doe. On May 2, 2017, Defendant Mitchell reversed the finding of Responsible in Case number 2016016401 (¶196; Roe 3's Title IX complaint against Doe) and ordered a new hearing. [Exhibit 16 to Doe's Amended complaint] Agnew was carbon copied on the appeal letter and was made aware of the ruling and Mitchell's instruction. Defendants Agnew and Mitchell both acknowledged that the new UDC panel should be shielded from prior allegations against Doe, yet allowed UDC 6 to serve. [¶219,299,300] Agnew had actual knowledge of UDC 6 and her previous service *prior to* the second Roe 3 hearing.[ ¶300] Agnew gave both Roe 3 and Doe written instructions that "**There should be no references to prior cases or hearings or hearing outcomes in today's proceeding** [¶238,300]. Under these circumstances it is plausible to conclude and infer that Agnew had not only fair warning that her conduct violated a constitutional right of Doe to a fair and impartial tribunal free from prior bad acts, but actual knowledge.

Under these circumstances, it is plausible to conclude that Agnew harbored actual bias against Doe. Since Agnew had actual knowledge of Mitchell's no prior bad act ruling and promised Doe a UDC panel shielded from alleged prior bad acts, every reasonable official *in this situation* would know that the challenged conduct would violate Doe's due process rights to fair hearing and a fair and impartial tribunal. 'The relevant, dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*' *Saucier v. Katz,* 533 U.S. 194, 202 (2001) (emphasis added) Mitchell's directive should have been followed and Agnew had no discretion to deviate from it. It is plausible to infer from these facts that Agnew acted willfully, maliciously, fraudulently, or in bad faith and therefore she was not involved in engaging in an exercise of discretion.

Additionally in Roe 1/Roe 2 case, Agnew had no authority to submit her own findings of fact and witness credibility determinations, as these were functions specifically reserved to the UDC panel members. Agnew violated the University of South Alabama's own rules, as recognized by Mitchell on the Roe 1/Roe 2 appeal. "[A] State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations ....' " *Giambrone v. Douglas,* 874 So.2d 1046, 1052 (Ala. 2003) (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000)). These averments when considered with Agnew's recusal, suggest a plausible claim of bias and a plausible claim that defendants deprived him of a fair and impartial hearing in both the Roe 1/Roe 2 hearing and the Roe 3 hearing. Certainly at this point in the case, Agnew and Mitchell are not entitled to immunity as a matter of law. The complaint contains factual allegations that support an individual claim against both.

Despite the UDC panel recommendation of probation as punishment in the second Roe 3 hearing, Agnew and Mitchell met in private the next day and agreed to increase the sanction to suspension. Neither informed Doe or his adviser. Then Mitchell sat in judgment of the appeal of the decision he pre-approved with Agnew. Agnew and Mitchell concealed this from both Doe and his adviser so as to deprive Doe of the right to request a meaningful appeal not pre-judged. ("[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights."); *Dixon v. Ala. State Bd. of Educ.,* 294 F.2d 150, 158 (5th Cir.1961). Under these circumstances, every reasonable

official in that situation would know that the challenged conduct would violate Doe's right to fair and impartial arbiter and tribunal.

The amended complaint and exhibits plausibly allege that defendants themselves set the rules for a fair and impartial hearing and tribunal, and under these particularized facts, support the inference that Defendants were aware of violating the very ground rules they put in place. Stated alternatively, defendants cannot claim ignorance of the requirement of due process they themselves promised Doe. As such qualified immunity should not be invoked in the first instance in this case on a motion to dismiss, and discovery concerning the job descriptions, duties, and responsibilities of the individual Defendants is needed. Whether the Defendants' conduct violated a constitutional right is an issue better addressed on a complete record after the parties have had an opportunity to complete discovery and to submit the issue to the Court on a complete factual record. This is true especially in light of the defendants' conduct uncovered by Doe in just the second Roe 3 hearing. Defendant Agnew's conduct in Roe 1/Roe 2, subsequent recusal, and conduct in the Roe 3 proceedings is sufficient to raise the constitutional eyebrow of the Court to allow Doe to fully develop the record in this regard. *Childers v. Florida Gulf Coast University Board of Trustees*, 2017 WL 1196575 (M.D. Florida, March 31, 2017).[10] A district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the validity of that defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012);  *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir.1987). A district court may elect the defer-and-discover approach "when the defendant's immunity claim turns at

---

[10] *Childers v. Florida Gulf Coast University Board of Trustees*, 2017 WL 1196575 *6 (M.D. Florida, March 31, 2017)

> Upon review, the allegations of the Amended Complaint, taken as true and construed in the light most favorable to Plaintiff, sufficiently allege that the act of monitoring the private Facebook page at issue is not within the individual Defendants' discretionary authority except, perhaps, in limited circumstances where "a student used Facebook for a purpose that posed a threat to the welfare of faculty, students, or patients in the FGCU–DPT program.

least partially on a factual question" that must be answered before a ruling can issue. *Lion Boulos*, 834 F.2d at 507. *Doe v. Ohio State University*, 219 F.Supp.3d 645 (2016) "the Court will not make a final ruling on the issue of qualified immunity until after limited discovery."

## III.   ELEVENTH AMENDMENT AND STATE SOVEREIGN IMMUNITIES

Defendants assert Eleventh Amendment and State sovereign immunities as to Counts III and V in so far as they assert claims against Defendant University of South Alabama. In Footnote 10 of their motion to dismiss, defendants assert state immunity and/or state-agent immunity as to state due process claims Doe makes against named defendants in their individual capacities.

### A.   Breach Of Contract & Negligence Claims As Against Defendant University Of South Alabama

Doe concedes that Defendant University of South Alabama is immune from Doe's breach of contract (Count III) claim and Negligence (Count V) claim. However, such breach of contract count and negligence count are not barred as against the individual defendants in their individual capacities. Doe additionally asserts a claim against defendants for violating the due process clause of the Alabama Constitution (¶ 275,282,449 prayer for relief).

### B.   Breach Of Contract Claim Against Individual Defendants Not Defeated By Immunity Defenses

As to the breach of contract claim, Doe asserts claims against *all* defendants ("USA defendants"), not just the University of South Alabama [¶354,355,357-360]. To the extent Doe asserts claims against individual defendants, the breach of contract count survives §14 immunity and state-agent immunity pursuant to the sixth "exception" to State immunity. *See. Ex parte Moulton*, 116 So.3d 1119 (2013) and *Ex parte University of South Alabama*, 183 So.3d 915 (2015) cited by defendants in their motion to dismiss. *See also Ex parte Alabama Department of Finance,* 991 So.2d 1254, 1256–57 (Ala.2008) noting exceptions to §14 sovereign immunity to government officials:

> "[C]ertain actions are not barred by § 14. There are six general categories of actions
> that do not come within the prohibition of § 14: …(6) actions for injunction or

damages brought against State officials in their representative capacity <u>and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law.</u> (*Emphasis added*)

Additionally, Doe's breach of contract claims against the individual defendants are not defeated by State-agent immunity as set forth in *Ex parte Cranman,* 792 So.2d 392 (Ala.2000), and adopted by the Alabama Supreme Court in *Ex parte Butts,* 775 So.2d 173 (Ala.2000). Defendants in a conclusory fashion in footnote 10 assert state-agent immunity. However, this does not relieve them of their burden in establishing they are entitled to it in the first instance. "A State agent asserting State-agent immunity 'bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.' *Ex parte Estate of Reynolds,* 946 So.2d 450, 452 (Ala.2006). Under *Ex parte Cranman* defendants must avail themselves of state immunity by pleading or proving at least one of the five *Cranman* factors.

At this stage of the proceeding, defendants have not met their burden. Even assuming they did, Defendants are still not entitled to immunity in this instance where Doe has adequately alleged the state actors have acted in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. To the extent Defendants in their official and individual capacities assert state-agent immunity it should be noted that a State agent *shall not* be immune from civil liability in his or her personal capacity

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts *willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.*

*Ex Parte Cranman,* 792 So.2d at 405 (emphasis supplied). *See also Wallace v. Board of Education of Montgomery Co.,* 280 Ala. 635, 197 So.2d 428 (1967) Plaintiff's breach of contract count and averments sufficiently plead facts if taken as true fall within the state immunity exception.

### C. Negligence Claim Against Individual Defendants Not Defeated By Immunity Defenses

As to the negligence claims, Doe asserts claims against *all* defendants ("USA defendants"), not just the University of South Alabama [¶424-427]. To the extent Doe asserts negligence claims against individual defendants, this count survives §14 immunity and state-agent immunity as well based on the same reasoning. *Ex parte Alabama Department of Finance,* 991 So.2d 1254, 1256–57 (Ala.2008); *Ex Parte Cranman,* 792 So.2d at 405 (emphasis supplied). *See also Wallace v. Board of Education of Montgomery Co.,* 280 Ala. 635, 197 So.2d 428 (1967)

### D. Alabama Due Process Count Against Individual Defendants Not Defeated By Immunity Defenses

Defendants assert in footnote 10 that state immunity and/or state-agent immunity defeats Doe's due process claims under the Alabama constitution and *Ex parte Moulton*, 116 So.3d 1119, 1142-43 (Ala. 2013).[11] Doe asserts a due process claim pursuant to Article I, §13 of the Alabama Constitution of 1901 (¶ 275,282, 351, 449 prayer for relief). To the extent Doe asserts negligence claims against individual defendants, this count survives §14 immunity and state-agent immunity as well based on the same reasoning. *Ex parte Alabama Department of Finance,* 991 So.2d 1254, 1256–57 (Ala.2008); *Ex Parte Cranman,* 792 So.2d at 405 (emphasis supplied). *See also Wallace v. Board of Education of Montgomery Co.,* 280 Ala. 635, 197 So.2d 428 (1967)

## IV.   DOE STATES PLAUSIBLE TITLE IX CLAIMS

### A. Selective Enforcement

A claim for Title IX selective enforcement "asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate proceeding was affected by

---

[11] The *Moulton* decision was decided at the summary judgment stage, not at the 12(b) stage as defendants urge the court to decide now. Additionally *Moulton* did not implicate the exception to §14 immunity for individual actors, but reaffirmed the exception applicable to actions against state officials.

student's gender." *Yusuf v. Vassar College*, 35 F.3d 709,715 (1994). In *Yusuf*, decided before *Twombly* and *Iqbal*, the court found that the plaintiff's alleged deficiencies in his disciplinary proceeding coupled with his allegation "that males accused of sexual harassment at Vassar are 'historically and systematically' found guilty regardless of the evidence, or lack thereof, to be sufficient. *Yusuf*, 35 F.3d at 716. Doe cites specific facts which if taken true *plausibly give rise to an entitlement to relief* under Title IX that defendants' decision to initiate and discipline Doe was affected by Doe's gender. [¶410 (a)-(h)]   Roe 1 and Roe 2 were treated by defendants more favorably than Doe was based on impermissible gender bias. Specifically, in the case of Roe 1 /Roe 2 , defendants disciplined Doe for Title IX sexual violence charges by finding that both Roe 1 and Roe 2 were incapacitated to give Doe consent. Conversely, defendants failed to take any action against either Roe 1 or Roe 2 for their sexual relations with each other during the same incident. ("If only the male participant is disciplined in the same acts-the implication of gender bias is clear." *See Doe v. Case W. Reserve Univ.*, WL 3840418, at *15 (N.D. Ohio Sept. 1, 2017). Defendants allege in footnote 13 of their motion to dismiss that "it is not plausible that the University was acting on the basis of gender by not taking action against Roe 1 and Roe 2 for their sexual encounter with each other, since both claimed to be incapacitated." However defendants miss the point here. If the university seeks to discipline Doe for engaging in sexual relations with Roe 1 and Roe 2 because both Roe 1 and Roe 2 were incapacitated, and Roe 1 engaged in sexual relations with Roe 2 who was incapacitated, and Roe 2 engaged in sexual relations with Roe 1 who was incapacitated, all three violate the University's sexual misconduct policy because the consent given by each was not valid. Doe alleges that because he was a male, and Roe 1 and Roe 2 were females, the defendants sanctioned Doe only. The university may dispute this, but it raises a plausible inference, when considered in light of all the other alleged conduct of defendants as detailed in the amended complaint and exhibits [¶17,18,409 and averments with respect to the 2011 Dear Colleague Letter] that defendants treated Doe differently because of

gender bias. The defendants cite no rule that an alleged perpetrator's intoxication is a defense to a charge of sexual misconduct so as to justify this disparate treatment. The fact that the university alleges a different inference exists from the one Doe asserts, does not disprove the fact that Doe alleges a plausible inference. At this stage of the proceedings, Doe is entitled to the benefit of this inference.

In the first Roe 3 hearing, Roe 3's Title IX complaint against Doe and Doe's Title IX complaint against Roe 3 were heard simultaneously. The cross complaints were tried before the same UDC panel and same student conduct administrator. Because of Roe 3's referencing prior conduct, Mitchell ordered a new hearing, but only as to Roe 3's claim against Doe. [¶196, amended complaint and Exhibit 16 to amended complaint] Despite finding that Doe's rights were violated by the admission of prior allegations, Mitchell affirmed the same UDC panel's finding that Roe 3 was not responsible for transmitting a sexually transmitted disease to Doe. A plausible inference suggests from these facts that the whole proceeding was tainted and should have been heard over in its entirety. If Doe was prejudiced by the admission of alleged prior acts, the UDC panel was necessarily impermissibly swayed as to all of Doe's conduct, testimony, and credibility. Again Doe and Roe 3's cross Title IX complaints were based on the same event. If Mitchell found the admission of the prior allegations against Doe prejudicial and significant enough to warrant a new hearing, Doe was entitled to have his Title IX complaint against Roe 3 heard before the same new UDC panel. Defendants made sure Doe's claim against Roe 3 would go away because he was a male accused of sexual misconduct. More importantly, under the defendants own rules, "The victim has the right to have sexual history excluded from consideration during the complaint/grievance process." University of South Alabama Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking Policy, IX, B. f (exhibit 3, amended complaint). Doe was a Title IX complainant/victim and under the rules his prior sexual history should have been excluded.

Defendants simply ignored this and allowed the finding of Not Responsible to stand. Again this fact gives rise to a plausible inference that Doe and Roe 3 were treated differently by defendants because of gender. Doe had a right to have his Title IX complaint reheard by a new UDC panel just as Roe 3 did.

The defendants treated Doe differently in his capacity as a Title IX respondent because of his gender in another important aspect. While excluding the sexual history of the female Title IX complainants from the UDC panels, the defendants allowed the UDC panels in Roe 1/Roe 2 and the first Roe 3 hearing hearings to consider Doe's prior sexual history. If one considers UDC 6's participation in second Roe 3 hearing who had knowledge of Doe's sexual relationship with Roe 1 and Roe 2, Defendants allowed all three UDC panels to consider Doe's prior sexual history.

### B. Deliberate Indifference

The deliberate indifference standard applies "where plaintiff seeks to hold an institution liable for sexual harassment and requires the plaintiff to demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." Mallory v. Ohio University, 76 F. App.'x 634 (6th Cir. 2003).

The defendants were deliberately indifferent to Doe's reports of threats against his safety and physical well-being after he participated in the Title IX investigations. Doe was the subject of several threats as a result of being wrongfully accused of sexual misconduct. Doe reported the threats to defendants. [¶84,88] Several male friends of Roe 1 and Roe 2 threatened Doe after they became aware of the allegations. [¶84,88]  Roe 1 posted on social media they had been raped [¶88, exhibit 6, amended complaint]. Roe 1 herself violated the university's No Contact Order with Doe by coming into his private dorm room [¶372]. Doe reported this but Defendants failed to take any meaningful action to protect Doe. [¶86] Thereafter friends of both Roe 1 and Roe 2 threatened to

"set him on fire", and have someone else "set him on fire", and to "deadpool his ass." One person even posted, "I've got cash for plane tickets in my back pocket, say the word." [¶88-91; exhibit 6 to amended complaint] Doe reported this to university officials who failed to take any meaningful remedial action to protect him.[¶372]. This conduct alleges a viable claim for violations of USA's own policy. *USA Sexual Misconduct Policy, IV.F. Retaliation* [*exhibit 1, amended complaint*]  During the course of the Roe 1 an Roe 2 investigation, Doe provided statements and cooperated in providing information to the University of South Alabama.[¶92] As a result of Doe's participation in the process, the defendants owed a duty to protect Doe from retaliation, yet they were deliberately indifferent to Doe's request for help. *USA Sexual Misconduct Policy, IV.F. Retaliation* [*exhibit 1, amended complaint*]; *USA Sexual Misconduct Policy* ,VIII. Interim Protective Measures; *See also University of South Alabama Sexual Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking Policy, III. Non Retaliation (exhibit 3, amended complaint).* Doe had a right to have protective orders, like the No-Contact order in place with Roe 1, enforced. *USA Sexual Misconduct Policy, IX.B.h.* [*exhibit 1, amended complaint*] Because of Roe 1 and Roe 2's flagrant disregard of the University's own rules, Doe was especially vulnerable to threats and harm especially after defendants were indifferent after Doe complained to them. [¶119-121].

Also defendants appointed Doe a Title IX advocate to assist him in his Title IX complaint against Roe 3. [¶166] Defendants assert in their motion to dismiss, footnote 2, that Doe's attorney/adviser was served as his support person in all proceedings. Defendants failed to mention that the university actually appointed a Title IX support with the University person who never reached out to Doe, assisted him, and failed to even show up for Doe's Title IX hearing with Roe 3. Doe's adviser is not trained nor authorized by defendants to be a Title IX advocate. Defendants train Title IX advocates.

### C. Erroneous Outcome

In order to state an erroneous-outcome claim, a plaintiff must plead: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) a particularized ... causal connection between the flawed outcome and gender bias. *Doe v. Cummins*, 662 Fed.Appx. 437, 452 (6th Cir. 2016), citing Yusuf, *supra*, 35 F.3d 709, 715. "In order to satisfy the first element of the test, Plaintiff must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding.... However, the pleading burden in this regard is not heavy. For example, a complaint may allege particular <u>evidentiary weaknesses</u> behind the finding of an offense such <u>as a motive to lie</u> on the part of a complainant or witnesses, <u>particularized strengths of the defense</u>, or <u>other reason to doubt the veracity of the charge</u>. A complaint may also allege <u>particular procedural flaws affecting the proof</u>." *Doe v. Case W. Reserve Univ.*, WL 3840418, at *15 (N.D. Ohio Sept. 1, 2017). (*emphasis added*)

## 1. Roe 1 Falsely Accused another Student of Sexual Assault

Roe 1 falsely accused Student 11 of sexual assault in a prior Title IX complaint. [¶70-72;95-96;106-109; *see also statement of Student 11 exhibit 8, amended complaint* detailing Roe 1's filing a false police report against him and providing false testimony before the UDC panel that "nearly ruined my life."] Doe attempted to call Student 11 to testify at the Roe 1/Roe 2 hearing and was refused. The UDC panel could have questioned Student 11, and observed his demeanor, and he would have been a valuable resource in evaluating Roe 1's credibility. Instead defendants denied Doe this opportunity. Without this testimony, there is sufficient reason to doubt the veracity of Roe 1's version of events, the charge, and the legitimacy of the results. This was certainly a procedural flaw that affected the proof in the case, that so strongly hinged on the credibility of the parties as to consent. When considered in light of Roe 1 prior inconsistent statements [¶76, 205(c)] the evidence was critical in showing Roe 1's motive to lie and in showing the conduct was keeping in line with prior consensual sex between the three.

**2. Roe 1, Roe 2, and Roe 3 all had motives to fabricate their stories alleging Doe sexual assaulted them.**

There were significant delays in reporting by all the Roes [¶97] None of the Roes, nor for that matter any of the defendants, ever reported criminal wrongdoing to any law enforcement agency [¶69,156]. Both Roe 1 and Roe 3 were members of sororities and had a strong incentive to fabricate a sexual assault lest word get out of their conduct alleged in the complaint to friends, boyfriends, and sorority sisters. Once it became generally known among the friends of each that Roe 1, Roe 2 and Doe had a prior history of consensual threesomes the motive to fabricate became only stronger. [¶61-63] Roe 1 and Roe 2 had motives to fabricate their stories to conceal their acts of infidelity from their respective boyfriends. [¶63-64] Such an inference is bolstered by the fact that when Doe arrived at Roe 1's dorm room and noticed Roe 2 had a hickey visible on her neck from her sexual liaison earlier in the evening with the air force cadet. Roe 2 was concerned her boyfriend would see it, and attempted to conceal it. [¶40].  Roe 1 and Roe 2 had also engaged in a mutual threesome the same night with an air force cadet. [¶74] Neither Roe 1 nor Roe 2 ever sought medical treatment after the alleged assault [¶67-68]. Defendant Agnew refused to allow Doe discover the identity of the air force cadet[¶117]. Such a witness was critical in rebutting the allegation that Roe 1 and Roe 2 were incapacitated and could not consent. [¶324] Doe could have prevented such information to Defendant Mitchell on the appeal, and as important the UDC could have considered this testimony. The delayed reporting and temporal proximity of their Title IX complaint with Doe's disclosing the threesome to friends all support this inference.[¶61-65]

Doe asserts that he has reason to believe all three Roe's were afforded some type of accommodation or accommodations by the University of South Alabama. [¶17,174,335] Defendants in their motion to dismiss do not deny such accommodations were made, only that they could not disclose them pursuant to federal law, and additionally that such accommodations are irrelevant. Apart from the fact of the university offering a strong incentives for each of the Does to file Title

IX complaints, this argument has been rejected in *Doe v. Ohio State University*, 219 F.Supp.3d 645 (2016) ; *see also Doe v. Case W. Reserve Univ.*, WL 3840418, at *5 (N.D. Ohio Sept. 1, 2017). "Plaintiff alleges that Jane Doe had a reason to lie–she allegedly needed the Title IX accommodation to withdraw from a class that she was failing without having the F applied to her gpa" along with additional facts "sufficient to cast some doubt on the accuracy of the outcome of the disciplinary proceedings." At this state of the proceeding, Doe should be allowed to explore this ground, especially in light of the Defendants' conduct in the second Roe 3 hearing.   Plaintiff   need   plead only enough facts to show that his allegation that the flawed outcome of his disciplinary proceeding was motivated by gender bias is "plausible." Doe has done more than merely recite conclusions that the complained-of conduct was discriminatory. The amended complaint alleged events that, if proven, would support an inference of discrimination. Doe avers specific instances of defendant treating the sexual history of a male like Doe different than a female like Roe 3. [¶389, 410(c)] Doe gives multiple specific factual averments in support of his Title IX complaints, clearly more so than the student in *Doe v. University of South Florida Bd. of Trustees*, Not Reported in F.Supp.3d (2015); 2015 WL 3453753, at *4 (M.D.Fla. May 29, 2015)

## V.   DOE's CONSPIRACY COUNT

Doe states a conspiracy claim against two employees of the same entity, but the intracorporate conspiracy doctrine does not apply in this case. *American Pioneer Life Ins. Co. v. Sandlin,* 470 So.2d 657 (Ala.1985); *see also Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297,306 (1986) citing *American Pioneer Life Ins. Co. v. Sandlin*, 470 So.2d 657 (Ala.1985): "Furthermore, we have recognized that a corporation may be liable for damage to a third person resulting from a conspiracy where two or more of its agents participated in the conspiracy." Additionally as alleged, defendants Mitchell and Agnew were not acting within their discretion when disciplining Doe for conduct it had no jurisdiction over in Roe 3. Also, a fair reading of the averments of the complaint in its entirety

alleges a third party outsider, not an employee of the University of South Alabama, UDC 6 was involved in the conspiracy.[¶445,217,218, 219, 220,299,300,301,321,385]. A fair reading of the entire amended complaint when read as a whole alleges the conspiracy was not one exclusively between university employees, as UDC 6's conduct attests.  Doe also listed fictitious party defendants in its amended complaint. While the court dismissed these fictitious party defendants, it did note that pursuant to Rule 15 Doe does have the right to add substitute additional parties after upon discovery and amend pleading once the discovery process begins. Doe has also alleged conduct of the defendant that some courts have found be an exception to the intracorporate liability doctrine. This exception encompasses employees who "engage in a series of discriminatory acts as opposed to a single action" over a significant period of time in the employment setting. *Dickerson v. Alachua Cnty. Comm'n,* 200 F.3d 761, 767–68 (11th Cir.2000) Doe has averred conduct that encompassed a year long disciplinary process and acts of defendants during this time that were discriminatory. Finally the individual defendants are not entitled to immunity for the same reasons they are not entitled to immunity as asserted in the qualified immunity discussion above and in the breach of contract/negligence.

Respectfully submitted,

/s/ Matt Green(GRE095 A)
_____
Matt Green, Esq. (GRE095 A)

OF COUNSEL:
Matt Green, Esq. (GRE095 A)
The Law Office of Matt Green, LLC
*The Pollock-Altmayer House*
501 Government Street, Suite 1
Mobile, AL 36602
Ph: (251) 434-8500
Facsimile: (251)408-3265
E-mail: mattgreenlaw@comcast.net

CERTIFICATE OF SERVICE

I hereby certify that I have on this 8th day of November 2017, electronically filed the foregoing with the Clerk of the court using the CM/ECF system and will serve the defendants by their in house counsel who has agreed to accept service on behalf of all  named defendants with the documents he intends to file under seal.

Windy Bitzer                              Christine Hart
Hand Arendall, L.L.C.                     Hand Arendall, L.L.C.
P.O. Box 123                              P.O. Box 123
Mobile, AL 36601                          Mobile, AL 36601
(334)432-5511                             (334)432-5511
Fax:251.694.6375                          Fax:251.694.6375
E-mail:wbitzer@handarendall.com           E-mail:wbitzer@handarendall.com