**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN DOE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 17-0394-CG-C** |
| ) | |
| ) | |
| **THE UNIVERSITY OF SOUTH** ) | |
| **ALABAMA;** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the court on Defendants' motion to dismiss the

Amended Complaint (Doc. 49), Plaintiff's opposition thereto (Doc. 55), and

Defendants' reply (Doc. 56). For reasons explained below, the Court finds that the

motion should be granted in part and denied in part.

### I. Plaintiff's Claims

This case arises from disciplinary actions that were initiated against Plaintiff

John Doe, at The University of South Alabama ("the University").  Plaintiff filed an

Amended Complaint on October 11, 2017 and attached several exhibits, which

include copies of letters and emails between the parties, documents that contain the

University's policies and procedures, and documents that were used during the

disciplinary proceedings. (Doc. 43).  The Amended Complaint alleges that Plaintiff

was enrolled as a student at the University for the fall semester of 2016, the spring

semester of 2017, and the fall semester of 2017. (Doc. 43, ¶ 3(a)).  Plaintiff is the

recipient of an Army ROTC scholarship through which he received full tuition

scholarship and fees, as well as a monthly subsidence check and money for books. (Doc. 43, ¶ 3(a)). The Defendants named in the Amended Complaint are the University, Michael A. Mitchell who is the Vice President for Student Affairs and Dean of Students and Deputy Title IX Coordinator for Students, Andrea C. Agnew who is the Assistant Dean of Students, and Krista Harrell who is the Associate Dean of Students and Title IX Coordinator. (Doc. 43, ¶¶ 4-8). The Amended Complaint alleges that the University is a public university that at all material times "acted through its administrators, supervisors and employees who were agents of the [University] and were acting within the course and scope of their employment in their official capacity." (Doc. 43, ¶¶ 4-5).

The Amended Complaint states that in October 2016, Plaintiff was notified that he had "been listed as the responsible person in a violation of the Code of Student Conduct," for engaging in sexual violence towards two individuals (hereafter referred to as Roe 1 and Roe 2). (Doc. 43-2, p. 89). The "sexual violence" he allegedly engaged in was defined or listed in the notice as "[a]ny physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent." (Doc. 43-2, p. 89).

Defendant Agnew conducted an investigation and made specific findings of fact in writing and conclusions in favor of Roe 1 and Roe 2 and presented her findings and conclusions to the UDC prior to any testimony at the hearing. (Doc. 43, ¶ 98). Plaintiff objected and requested that her findings at least include additional highly relevant other factors, but Agnew refused. (Doc. 43, ¶ 99). Agnew had

2

trained and supervised the UDC panel and was allegedly of great influence on them. (Doc. 43, ¶¶ 100-102, 202, 207). A hearing on Roe 1 and Roe 2's allegations was held on November 15, 2016. (Doc. 43, ¶ 103). Banners and flyers, hung by Title IX advocates, were in the common area outside the hearing room that included statements such as "Using alcohol to get sex is sexual assault" and "My cup is not my consent." (Doc. 43, ¶ 104). Kimberly Ortiz presided over the hearing and since it was her first time Agnew sat in for guidance. (Doc. 43, ¶ 105). Plaintiff called Student 11 (who reportedly had also been wrongfully accused of a Title IX sexual assault by Roe 1 (Doc. 43, ¶ 95)) to testify but Defendants did not allow him to testify. (Doc. 43, ¶ 106-107). Student 11 would have testified about Roe 1's credibility and the credibility of one of Roe 1's witnesses. (Doc. 43, ¶ 108, 109). Student 11's written unsworn statement was allowed to be presented to the UDC. (Doc. 43, ¶ 113). Defendants allowed as evidence against Plaintiff the unsworn written statements of Student 5 and others. (Doc. 43, ¶¶ 111, 115). No witness was put under oath. (Doc. 43, ¶ 114). Roe 1 and Roe 2 were specifically instructed not to mention a third female student (hereafter referred to as "Roe 3"), but both repeatedly violated this instruction despite admonitions, and Defendants allowed the hearing to continue. (Doc. 43, ¶¶ 119, 120). Agnew presided over and participated in the UDC deliberations and coached the UDC members outside Plaintiff's presence. No recording was made of these interactions. (Doc. 43 ¶¶ 118, 122, 123).

After the hearing, Plaintiff was notified that the UDC had found Plaintiff "responsible" for the violation and as a result a mutual "No Contact Order" was entered between Plaintiff and Roe 1 and Roe 2. Additionally, Plaintiff was placed on conduct probation for the remainder of his academic career and was to complete 100 hours of community service. Plaintiff's housing contract was terminated, and he could not live in or visit University Housing and a few other listed campus facilities for the rest of his academic career. Also, Plaintiff was to complete an educational module on prevention of sexual violence. (Doc. 43-4, p. 4).

Plaintiff appealed the decision. Defendant Michael A. Mitchell, Vice President for Student Affairs and Dean of Students and Deputy Title IX Coordinator for Students, upheld the decision but modified the sanction imposed and allowed Plaintiff to maintain campus residence. (Doc. 43-4, pp. 7-8). Mitchell found that "[t]hough Dr. Agnew's report of her investigation findings were intended to be informational for the committee, her assessment of witness credibility could have had some impact on the committee." (Doc. 43-4, p. 7). Mitchell also found that the statement by Student 11 provided sufficient information and that it was reasonable to limit his presence because of his history with one of the complainants. (Doc. 43-4, p. 7). Lastly, Mitchell found that the information "does support the complainant's claims that they were intoxicated beyond the point of being able to consent to sex and that there had been a conversation shortly before the event in which the complainants indicated their intent to not engage in future sexual contact with you." (Doc. 43-4, p. 8).

Plaintiff was notified on November 8, 2016 that he was the subject of a Title
IX complaint by Roe 3. (Doc. 43, ¶ 137).  A letter from the University, dated
November 16, 2016, states that Roe 3 had reported to the Title IX Office that
Plaintiff had engaged in sexual misconduct off campus, alleging that she was too
incapacitated to provide consent for sex. (Doc. 43-4, p. 10-11).  The notice stated
that an impartial investigation of the allegation would be conducted. (Doc. 43-4, p.
10).  Plaintiff then filed a sexual assault Title IX complaint against Roe 3 alleging
that Roe 3 had transmitted a sexually transmitted disease to him. (Doc. 43, ¶ 159).
The University did not assist Plaintiff in gathering evidence and made no attempt
to get Roe 3's medical records or otherwise seriously investigate Plaintiff's Title IX
complaint against Roe 3. (Doc. 43, ¶¶ 165, 166).  Agnew was assigned to investigate
Plaintiff's complaint. (Doc. 43, ¶ 168).  A University advocate was appointed for
Plaintiff, but the advocate did not reach out to Plaintiff and did not appear at the
hearing. (Doc. 43, ¶¶ 169, 170).  Plaintiff requested that he be provided with all
interim measures, including benefits, accommodations and services that were
provided to Roe 3, but his request was denied. (Doc. 43, ¶¶ 174, 176). Plaintiff
requested that all witnesses be instructed to not mention any prior Title IX
hearings Plaintiff had been involved in and Mitchell agreed to do so. (Doc. 43, ¶¶
178, 179).  Plaintiff also requested that the Assistant Dean of Students, Defendant
Andrea C. Agnew, recuse herself because Plaintiff had named her as a potential
witness, because she had exhibited animus and malice against Plaintiff in the prior
hearing, and because she had personally participated in the investigation. (Doc. 43-

4, p. 17).  In response, Defendant Mitchell stated that though he "did not find any prior conduct by Dr. Agnew merits her removal from this proceeding, Dr. Agnew has recused herself from today's proceeding." (Doc. 43-4, p. 16).

The two cross-complaints were heard by the same UDC panel on March 27, 2017. (Doc. 43, ¶¶ 173, 182).  One of the UDC panel members, UDC 7, was Facebook friends with Defendant Mitchell, but did not disclose that fact. (Doc. 43, ¶ 183, Doc. 43-4, pp. 36-40).  At the hearing, Roe 3 mentioned details and allegations involving the prior complaints and/or hearings despite having been instructed not to and the hearing was stopped and Roe 3 was escorted outside. (Doc. 43, ¶¶ 184, 185). Plaintiff requested the panel be dismissed and the case be dismissed, but the hearing was allowed to proceed. (Doc. 43, ¶ 186, 189).  During the hearing, Roe 3's Title IX advocate directly addressed Plaintiff in a hostile manner in front of the UDC panel and the defendants did not address the breach of the rules. (Doc. 43, ¶¶ 190, 191).

Plaintiff was found "responsible" by the UDC of violating the code of Student Conduct for engaging in "sexual violence." (Doc. 43-4, pp. 19-20).  Roe 3 was found "not responsible." (Doc. 43-4, pp. 23-24). Plaintiff appealed the decisions. (Doc. 43, ¶ 195).  Defendant Mitchell upheld the finding that Roe 3 was "not responsible" but found that the charge against Plaintiff should be heard again during a new proceeding with a different committee. (Doc. 43-4, pp. 27-28).  Defendant Mitchell stated that "the introduction of prior allegations against you was significant enough to warrant that this charge be heard again." (Doc. 43-4, p. 27).  Defendant Mitchell

6

stated that Defendant Agnew would preside over the new hearing because her "level of experience presiding over Title IX hearings will provide additional assurance that all required policies and procedures will be followed."  Defendant Mitchell further stated that he had "not found any indication that [Agnew] has any conflict of interest in such participation, as her role throughout these proceedings has been as a neutral investigator and facilitator." (Doc. 43-4, p. 27).  Plaintiff objected to Agnew's continued involvement. (Doc. 43, ¶ 203).  Plaintiff requested that the University provide him (1) a list of the benefits and accommodations provided to Roe 3, (2) a list of witnesses who would not be testifying in person but would provide an unsworn statement, (3) a more specific allegation of the charge, and (4) that his advocate be allowed to bring an associate to review the investigative file prior to the hearing since he was not permitted to have a copy of the file. (Doc. 43, ¶ 205). These requests were denied. (Doc. 43, ¶ 206).

A new UDC panel heard the case on August 15, 2017 and concluded that Plaintiff was "responsible." (Doc. 43-4, pp. 30-31).  The UDC panel consisted of two University employees and four University students (identified hereinafter as UDC 3, UDC 4, UDC 5, and UDC 6) (Doc. 43, ¶ 208). All student UDC panel members were members of the University SGA and UDC 6 was the Chief Justice of the Judicial Branch of the SGA. (Doc. 43, ¶¶ 211, 212).  UDC 6 participated in selecting the other three student UDC panel members. (Doc. 43, ¶ 213). UDC 6 had served on the panel that found Plaintiff responsible of the charges by Roe 1 and Roe 2. (Doc. 43, ¶ 215). UDC 6 also was "a close personal friend" of Defendant Mitchell. (Doc. 43,

¶ 220).  UDC 1 was also a personal friend of Mitchell and they worked together in the department of student affairs and had attended a retreat together. (Doc. 43, ¶ 223).

Prior to the hearing, the UDC panel members were provided with a folder of unsworn testimonial witness statements to review. (Doc. 43, ¶¶ 227, 228). Plaintiff objected to the statements. (Doc. 43, ¶¶ 231 – 235).  Plaintiff requested to know which witnesses were deemed "unable" to attend and Agnew reported that only one of the of the listed witnesses was unable to attend. (Doc. 43, ¶ 235).  The unsworn written statements of Student 1, Student 4 and Roe 1 were included in the UDC packet which they could consider and on which they had been trained to rely. (Doc. 43, ¶¶ 241, 242).  Plaintiff and Roe 3 received packets that included a warning that "[t]here should be no references to prior cases or hearings or hearing outcomes in today's proceedings." (Doc. 43, ¶¶ 238, 239).  At the hearing Plaintiff was not permitted to ask Roe 3 about her alleged sexual assault of him. (Doc. 43, ¶ 240).

At the August 15, 2017 hearing, the panel unanimously found that Roe 3 "did not provide consent to engage in sexual activity with the respondent as defined in the University's Sexual Misconduct Policy & Complaint Resolution Procedures." (Doc. 43-4, p. 31; Doc. 41, p. 42).

As a result of the finding by the UDC panel, Plaintiff was suspended from the University effective August 16, 2017 until the summer 2018 term and was prohibited from visiting the campus for any reason without prior clearance by the Office of the Dean of Students. (Doc. 43-4, p. 30).  A mutual "No Contact Order"

between Roe 3 and Plaintiff was also put in place and it was reiterated that Plaintiff was on conduct probation for the remainder of his academic career at the University. (Doc. 43-4, p. 30).  Plaintiff appealed the decision. On August 28, 2017, Mitchell upheld the decision and sanctions. (Doc. 43-4, pp. 33-34).

## II. Dismissal Standard

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010).  To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted).  The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id.* at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* at

556.  "The Supreme Court's *Twombly* formulation of the pleading standard "does

not impose a probability requirement at the pleading stage, but instead simply calls

for enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2

(S.D. Ala. Oct. 15, 2009) (citations and internal quotations omitted).  "A district

court may properly dismiss a complaint if it rests only on 'conclusory allegations,

unwarranted factual deductions or legal conclusions masquerading as facts.' "

*Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016),

cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v.*

*Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

## III. Count I / Due Process Claims

Defendants contend that Plaintiff's due process claims asserted in Count I

against the University and the individual defendants in their official capacity are

due to be dismissed for failure to state a claim.  Plaintiff alleges in Count I that the

individual defendants, Mitchell, Agnew and Harrell, in their official capacity

violated Plaintiff's state and federal due process rights.

"The Due Process Clause guarantees fundamental fairness to state university

students facing long-term exclusion from the educational process." *Doe v. Univ. of*

*Cincinnati*, 872 F.3d 393, 396 (6th Cir. 2017).  "State universities must afford

students minimum due process protections before issuing significant disciplinary

decisions." *Id.* at 399 (citing *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 639 (6th Cir.

2005).  The "failure to provide any form of confrontation of the accuser" may make the proceeding fundamentally unfair. *Univ. of Cincinnati*, 872 F.3d at 396.

 "At a minimum, a student facing suspension is entitled to the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 399 (citations and internal quotations omitted).  "All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is 'sufficient notice of the charges ... and a meaningful opportunity to prepare for the hearing.' " *Flaim*, 418 F.3d at 639.  "Education is a university's first priority; adjudication of student disputes is, at best, a distant second." *Univ. of Cincinnati*, 872 F.3d at 400 (citing *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 88 (1978)).

> Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'

*Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) (citation omitted).  "A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim*, 418 F.3d at 635 n.1 (citation omitted). "Instead, the root requirement of the Due Process Clause is that one be given notice and an opportunity to be heard." *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009) (citations and internal quotations omitted).

This Court is not here to decide whether Plaintiff committed the alleged infractions he was disciplined for or whether this Court would have imposed the same punishments. "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or

compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (citation omitted). The Court's focus must be on the due process provided to Plaintiff by the University, rather than on whether Plaintiff actually committed the offenses.

Defendants contend that none of the alleged improprieties arise to the level of a Constitutional violation and argue that Plaintiff was given notice and an opportunity to be heard in a meaningful time and a meaningful manner. Plaintiff, in opposition, maintains that he has sufficiently alleged a valid claim that Defendants: (1) failed to provide a fair and impartial hearing with a neutral arbiter, (2) denied Plaintiff the right to confront or cross-examine witnesses, (3) deprived the UDC the opportunity to question witnesses, (4) withheld critical information needed for his defense, and (5) violated its own rules in the disciplinary process. Plaintiff argues that these individual failures when viewed cumulatively arise to the level of a constitutional due process violation.

### 1. Fair and Impartial Hearing with a Neutral Arbiter

Plaintiff contends that the flyers and banners hung by Title IX advocates, in the common area outside the hearing room created an atmosphere of sexual assault advocacy that operated to deprive Plaintiff of a fair and impartial hearing. The banners included statements such as "Using alcohol to get sex is sexual assault" and "My cup is not my consent."

Plaintiff also asserts that Agnew unduly influenced and prejudiced the UDC panel because she trained and supervised the UDC panel and she acted as an investigator and submitted her own findings and determinations of witness credibility in an investigative report that was read by the panel members.  Plaintiff also points to Agnew's disallowance during the first hearing of Plaintiff's question to Roe 1 and Roe 2 about the identity of a witness who had reportedly engaged in sexual relations with them earlier on the night in question.  Also during the first hearing Plaintiff complains that Agnew was unable to keep Roe 1 and Roe 2 from referencing Roe 3, even though Agnew escorted Roe 1 and Roe 2 out of the room and instructed them to refrain from doing so.  In the Roe 3 hearing Plaintiff complains that Agnew allowed UDC 6 to serve despite knowing that UDC 6 had served on the prior hearing.

Plaintiff claims that Mitchell was also biased and points to the personal relationships between Mitchell and at least three UDC panel members in the second Roe 3 hearing and his friendship with Student 10, who is Roe 3's boyfriend. Additionally, Plaintiff contends that UDC 3 and UDC 5 had personal friendships with Roe 3.

"An impartial decision-maker is an essential guarantee of due process." *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987).  To succeed on a due process claim based on an impartial decision-maker, "[t]he record must support actual partiality of the body or its individual members." *Megill v. Bd. of Regents of State of Fla.*, 541 F.2d 1073, 1079 (5th Cir. 1976).  The fact that a defendant had influence

over decision-makers or held additional roles, such as training the panel members and participating in the investigation, does not show bias. *See Nash v. Auburn Univ.*, 812 F.2d 655, 666 (11th Cir. 1987).  Banners hung outside the hearing by others also does not indicate actual bias of the Defendants. Nor does Agnew's disallowance of questions about the identity of a witness who had reportedly engaged in sexual relations with the complainants earlier on the night in question indicate actual bias. These allegations, if proved, do not indicate personal animosity, illegal prejudice, or a personal or financial state in the outcome. "In the absence of evidence to the contrary, we must assume therefore that the (administrative hearing body) acted independently and properly in these circumstances." *Megill*, 541 F.2d at 1079 (citation omitted).  However, we are not at the summary judgment or trial stage where the sufficiency of evidence could be a stumbling block. Although some discovery has been conducted and the Court heard evidence regarding Plaintiff's claims with regard to Plaintiff's motion for preliminary injunction, on this motion to dismiss the Court must generally accept the allegations of the complaint as true.  As explained above, on a motion to dismiss the Court can only assess whether Plaintiff is entitled to offer evidence to support his claims and Plaintiff may proceed even if it appears that actual proof of those claims is improbable or remote. Here, Plaintiff alleges that some of the decision-makers were biased and lists various reasons to attempt to demonstrate their bias. While some of the allegations are merely that the decision-maker ruled against Plaintiff or that the environment was unfavorable to Plaintiff, there are also

allegations that indicate there may be a personal relationship between individual defendants and accusers or interested parties. Mere allegations of Facebook relationships or that participants knew each other, without more, do not prove actual bias. However, Plaintiff contends Defendants were actually biased and Plaintiff should have the opportunity to present evidence that such relationships are more than just cordial connections. The Court does not believe it has heard evidence sufficient to support such a claim yet. However, Plaintiff's complaint has provided more than labels and conclusions and is not required to include detailed factual allegations to survive a motion to dismiss. Accordingly, the Court finds that Defendants' motion to dismiss should be denied as to Plaintiff's due process claim based on the allegation that Defendants were biased.

## 2. Plaintiff's Right to Confront or Cross-examine Witnesses

Plaintiff asserts that the UDC panel considered written statements from witnesses that did not appear at the hearings. Plaintiff contends he was denied due process because he was not able to cross-examine these witnesses. The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings. *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) (citation omitted).

> Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'

*Id.* (citation omitted). "All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is 'sufficient notice of the

charges ... and a meaningful opportunity to prepare for the hearing.' " *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 639 (6th Cir. 2005).

In *Flaim,* the Sixth Circuit noted that "[s]ome circumstances may require the opportunity to cross-examine witnesses, though this right might exist only in the most serious of cases." *Id.* at 636.  Plaintiff argues that a recent case, *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), further expounded on the Sixth Circuit's holding in *Flaim*. In *Univ. of Cincinnati* the accuser, Jane Roe, failed to appear at the disciplinary hearing and John Doe was found responsible for sexually assaulting Roe based upon her previous hearsay statements to investigators. *Univ. of Cincinnati*, 872 F.3d at 396.  The District Court granted Doe a preliminary injunction and the Sixth Circuit, reviewing the district court's legal conclusion *de novo*, but deferring "to the district court's overall balancing of the four preliminary-injunction factors" affirmed the decision. *Id.* at 399, 407.  The Court noted that education is a university's first priority and that even in the case of a sexual assault accusation due process does not require the same formalities of a criminal trial. *Id.* at 400.  However, if a case presents a problem of credibility, the Court stated that cross-examination of witnesses might be essential to a fair hearing and "[t]he ability to cross-examine is most critical when the issue is the credibility of the accuser." *Id.* at 401 (citation omitted).  The committee's finding of responsibility in *Doe v. Univ. of Cincinnati* was based solely on the accuser's hearsay statements. *Id.*  The Court found that due process was denied because the case presented the committee with "a choice between believing an accuser and an accused" and they were unable to

16

assess the accuser's credibility. *Id.* at 402.  The Court noted that "[c]ross-examination may be unnecessary where the University's case 'd[oes] not rely on testimonial evidence' from the complainant." *Id.* at 405 (citation omitted).  The Court made clear that the university may still admit hearsay statements and "may still open the hearing with a Title IX report summary that includes the parties' 'out-of-court' statements, and the [ ] panel may still rely on those statements in deciding whether Doe is responsible for violating the Code of Conduct" *Id.*

In the instant case, unlike in *Doe v. Univ. of Cincinnati*, the accusers appeared at the disciplinary hearings and Plaintiff has not alleged that he was not permitted to cross-examine the accusers. The panel was able to listen to and observe the complainants' testimony and could judge by their demeanor and the manner in which they gave testimony whether they were credible. In these he-said/she-said disputes the panel had both "he" and "she" before them to evaluate their credibility. Plaintiff was given ample notice of the charges and the evidence contained in the investigation report and was given the opportunity to present witnesses or other evidence to address any discrepancies in the statements. Although due process may require the ability to cross-examine *the complainant* in school disciplinary hearings where credibility is at issue, that has not been alleged here. Plaintiff's complaint is merely that he was not given the opportunity to cross-examine persons who did not appear at the hearings to testify and are not the complainants. The Amended Complaint specifically notes that the University's rules allow limited cross-examination of witnesses who appear at the UDC Hearing.

Plaintiff claims that a case from the Southern District of Ohio, *Nokes v. Miami Univ.*, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017), is directly on point and supports his contention that providing the witness statements to the panel violated Plaintiff's due process rights.  In *Nokes*, the accuser provided three statements from friends who allegedly observed her behavior before or after her encounter with the plaintiff and stated that "Jane Roe came home that night 'sobbing uncontrollably and slurring her words' and 'unable to walk in a straight line.' " *Id.* at *6.  According to the statements, Jane Roe told her roommate that John Nokes "took her to his dorm, took her into the bathroom, and even though she resisted, he held her head down and forced her to give him oral sex." *Id.*  The plaintiff in *Nokes* claimed he was afforded inadequate notice of the nature of the allegations against him because he had not been made aware that the hearing would focus on the accuser's alcohol consumption and inability to consent. *Id.*  The plaintiff also objected to not being provided with an opportunity to cross-examine the three witnesses who supplied written statements. *Id.*  The *Nokes* court found that the plaintiff did not have a meaningful opportunity to prepare a defense because the notice of violation specifically referred to a narrow section pertaining to the use of force and failed to mention Jane Roe's alleged intoxication and the plaintiff did not receive any notice that intoxication might be the basis of the charge until, at most, a week before the hearing and after he had been required to submit a statement and other evidence. *Id.* at *11.  The *Nokes* court also found that the plaintiff had sufficiently raised a claim that the use of the witness statements denied him due process. *Id.* at *13.

The *Nokes* court noted that the plaintiff was never able to test the memory or credibility of the witnesses and that the defendant who presided over the hearing stated at the hearing "if we can't ask questions, I have to take this as fact." *Id.* at *12.  In the instant case, Plaintiff has not alleged that the presiding panel member stated that all statements have to be taken as fact. Additionally, in this case Plaintiff had ample opportunity to prepare his defense. In *Nokes*, the plaintiff was not aware until his hearing of the substance of the statements or that the allegations in them supported a new basis for his charge. The Plaintiff here knew the basis of his charge and has not alleged that he had insufficient time to investigate or to procure witnesses or other information to counter the information alleged in the statements. As mentioned above, a recent decision by the Sixth Circuit has stated that a University does not violate due process by admitting hearsay statements or including a report summary that includes the parties' out-of-court statements. *Cincinnati*, 872 F.3d at 405.  The panel may rely on such statements in determining responsibility for a conduct violation without violating due process. *Id.*  This is consistent with the well-established law in this Circuit that cross-examination of witnesses and a full adversary proceeding are not required. *Nash v. Auburn Univ.*, 812 F.2d 655, 666 (11th Cir. 1987).  This Court finds that the use of such statements during a disciplinary hearing under the circumstances alleged here does not violate due Process.

### 3. The UDC's Opportunity to Question Witnesses

Plaintiff asserts that the UDC panel also had a right to question witnesses. However, the panel members are not parties in this case and have not asserted any claims in this matter. Moreover, there has been no allegation that the panel members were deprived life, liberty or property that would require them to receive due process of law. While Plaintiff is correct that allowing panel members to question witnesses may aid in the search for truth, not permitting such measures does not render the hearing unfair to Plaintiff. Proof that the UDC panel was deprived of the right to question witnesses does not support a claim that Plaintiff did not receive due process.

### 4. Withholding of Information Critical to Plaintiff's Defense

Plaintiff asserts that Defendants failed to disclose what accommodations, services, and benefits they afforded each of the accusers after filing their Title IX complaints. Plaintiff, citing *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645 (S.D. Ohio 2016), contends that his due process rights were violated by the Defendants' refusal to disclose this information. However, the plaintiff in *Ohio State Univ.* alleged that the evidence could be used to impeach the accuser's testimony because she had misrepresented to the hearing panel her motivation for bringing the allegations and the timing of her accusation. *Id.* at 661. Specifically, the accuser in *Ohio State Univ.* reported the incident shortly after she was notified that she was going to be expelled from school and after she reported the incident she was permitted to remain in school. But the accuser in *Ohio State Univ.* testified at the hearing that

the university's decision to allow her to continue in school was decided before she decided to report the assault. *Id.* The Southern District of Ohio found that "the right to mandatory disclosure of any impeachment evidence is not a clearly established constitutional right in the student disciplinary context," but "[i]f the Administrators knew that Jane Roe lied about the timing of her accommodation at the hearing and permitted her testimony to stand unrebutted, that plausibly violated John Does right to a fundamentally fair hearing." *Id.* at 663.

In the instant case, Plaintiff alleges that the information "was probative and material to establish bias on the part of the complainant." (Doc. 43, ¶ 175). However, unlike in *Doe v. Ohio State Univ.,* Plaintiff has not alleged that Defendants knew that any of the accusers lied during their testimony and has not pointed to any specific potentially misleading or false testimony of the accusers that could relate to accommodations they were provided. Additionally, a more recent Sixth Circuit case, *Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016), rejected a claim that the defendants in that case failed to provide information regarding alleged academic accommodations that were provided to the complainants and that may have affected their credibility. The *Cummins* Court stated that such accommodations were required by federal regulations and therefore, complying with these regulations is not improper and cannot constitute evidence of bias.[1] *Id.* at 452.

---

[1] 34 C.F.R. § 668.46 requires an institution of higher education to provide "[a] statement of policy regarding the institution's programs to prevent dating violence, domestic violence, sexual assault, and stalking … and of procedures that the institutional will follow when one of these crimes is reported." The statement must include:

### 5. Violation of University Rules by the Defendants

Plaintiff asserts that the Defendants violated their own rules in the disciplinary process and claims the cumulative impact of these rule violations favor a plausible inference that Defendants deprived Plaintiff of due process. Specifically, Plaintiff asserts that Defendant's breached their own rules in the following five ways:

(1) by allowing unsworn witness statements without a showing that the witnesses were unable to attend;

(2) by not providing a fair and impartial investigation that provides the parties an equal opportunity to present information and equivalent procedural safeguards;

(3) by Agnew removing witness statements from the UDC packet and participated in the deliberations of the UDC;

(4) by failing to timely submit Agnew's investigation report and any appended information to UDC members; and

(5) by Agnew participating and facilitating in the UDC deliberations.

(Doc. 55, pp. 10-11).

As to the first claimed rule violation, the Student Code of Conduct states that the complainant and respondent have "[t]he right to present evidence by witness, or by affidavit if a witness is unable to attend the hearing." (Doc. 43-2, p. 60). The Student Code of Conduct states that "[i]t is the responsibility of the respondent and

---

A statement that the institution will provide written notification to victims about options for, available assistance in, and how to request changes to academic, living, transportation, and working situations or protective measures. *The institution must make such accommodations or provide such protective measures if the victim requests them and if they are reasonably available, regardless of whether the victim chooses to report the crime to campus police or local law enforcement*;

34 C.F.R. § 668.46(b)(11)(v) (emphasis added).

the complainant/victim to notify their witnesses of the date, time and place of the hearing" and warns that "[i]f witnesses fail to appear, the hearing shall be held in their absence." (Doc. 43-2, p. 60). However, the statements in question were not submitted pursuant to the complainants' right to present witnesses. The statements were contained in the investigation materials submitted to the UDC. The University's Sexual Misconduct Policy and Complaint Resolution Procedures require the Investigating Officer to conduct an investigation and gather information and statements from witnesses and other sources and they require the Investigating Officer to transmit the investigation report and any appended information to the UDC before the hearing. (Doc. 43-2, pp. 28, 29). Thus, the use of the statements did not violate Plaintiff's or the complainants' stated right to present evidence by affidavit if a witness is unable to attend. The statements were permitted by the rules and required to be transmitted to the UDC.

As to the second claimed rule violation, the stated rule simply requires that the parties receive a fair and unbiased investigation and an equal opportunity to present or defend their case. This rule generally provides the same safeguards as Plaintiff is entitled to under his right to due process.

As to Plaintiff's claims that Agnew inappropriately removed statements from the UDC packet and participated in the deliberations, Defendants contend that the information was removed to oblige Plaintiff and that Agnew did not participate in, but only facilitated the deliberations. These are factual issues that the Court cannot resolve here. Plaintiff's claim that Agnew failed to timely submit her investigation

report and any appended information to the UDC members appears to be related to his claim that Agnew inappropriately removed information from the packet. Plaintiff's last rule violation claim is also a restatement of his prior rule violation claim that Agnew participated in the deliberations.  Again, these are factual issues that the Court cannot resolve on a motion to dismiss.

Thus, while the Court finds that at least one of the claimed rule violations is not a valid claim, Plaintiff has alleged factual circumstances that if proved could show that the Defendants violated the University's stated rules. However, violating an express rule does not necessarily result in a due process violation.  As the Eleventh Circuit has explained:

> Even if the Board had violated its own regulation, it would not follow that it had violated due process. The district court's belief that "an agency must follow its own rules in order to avoid infringing due process rights," ACLU, 439 F.Supp.2d at 1292 n. 45, cannot be grounded in the law of this circuit. Under that belief, every procedural regulation an agency adopts effectively amends the Constitution so that violating the regulation violates the Constitution. That is not the law.

*Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009).  The Court finds that except for the alleged violation of the guarantee of a fair and unbiased proceeding, the alleged violations, even when considered together do not rise to the level of a due process violation. If the alleged violations were not the University's standard practice, such that Plaintiff was treated differently, then proof of such violations may be relevant to support Plaintiff's claim that Defendants were biased. But proof of the violations by themselves do not show that Plaintiff was not provided constitutional due process.

### 6. Cumulative Effect

Plaintiff claims that the cumulative impact of the Defendants' alleged inappropriate conduct should be considered as a whole. The Court found above that Plaintiff is entitled to proceed on his claim that Defendants were biased, which could potentially be supported, in part, by evidence that Defendants violated their own rules. To the extent other circumstances corroborate or support Plaintiff's claim, they may be considered. However, the Court has found above that Plaintiff was not entitled to cross-examine the written statements, Plaintiff has no basis to object to the UDC not being allowed to question witnesses, and Plaintiff was not entitled to information regarding accommodations provided to the complainants. Where "the case law shows that Plaintiff[ ] [was] not entitled to various procedural protections on an individual basis-and it does-then it follows that Plaintiff[ ] [was] not denied due process because UC did not utilize some vague admixture of the missing procedures during their hearings." *Univ. of Cincinnati*, 173 F. Supp.3d at 600.

### IV. Count II / Section 1983 Individual Capacity Due Process Claims

Defendants assert that Plaintiff's § 1983 individual capacity due process claims asserted in Count II should be dismissed on the basis of qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted).

Plaintiff contends that Defendants are not entitled to qualified immunity because they acted outside of their discretionary authority by disciplining Plaintiff for an incident that occurred off campus and was not a University related or sponsored activity. However, the University's handbook which is attached to the Amended Complaint, states that University jurisdiction attaches to off campus conduct "that adversely affects or is detrimental to the University community and the pursuit of the objectives of the University." (Doc. 43-2, p. 52, ¶ 7).  The handbook further states that:

> A student will be subject to the Code of Student Conduct for any action in violation of this Code that either occurs on University premises, or that *in the University's sole discretion*, occurs off campus and has an effect on or is detrimental to the University community and/or pursuit of University objectives.

(Doc. 43-2, p. 52, ¶ 7) (emphasis added).  Thus, it was in the University's sole discretion to determine whether the alleged off campus assault of a student by Plaintiff, who was enrolled at the University, was detrimental to the University community and/or pursuit of University objectives.

Plaintiff also contends that he has sufficiently alleged that the Defendants violated his constitutional rights and that at the time of the violation, those rights were clearly established or obvious.  Defendants disagree, arguing that Plaintiff received the clearly established due process by receiving notice of the charges, an explanation of the evidence against him and an opportunity to present his side of the story before an unbiased decision-maker.  However, the Court found above that Plaintiff has sufficiently alleged a claim that the decision-makers were biased.  "An

impartial decision-maker is an essential guarantee of due process. *Nash*, 812 F.2d at 665 (citing *Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975)).  Because this principle is clearly established, the Defendants are not entitled to qualified immunity if Plaintiff can demonstrate that they were biased.

### V. Counts III & V / Breach of Contract and Negligence Claims

Defendants assert that the University is immune from Plaintiff's breach of contract and negligence claims on the basis of Eleventh Amendment and state sovereign immunities. Plaintiff concedes that the University is immune from the breach of contract and negligence claims, but asserts that the individual defendants are not immune in their individual capacity. Defendants deny that the Amended Complaint could be fairly construed to assert a breach of contract and negligence claim against the individual Defendants, but asserts that even if they are asserted, they should be dismissed.

The contract covenants Plaintiff alleges were breached are contained in the student handbook, "The Lowdown", and in the University Sexual Misconduct Policy and Complaint Resolutions Procedures. (Doc. 43, ¶¶ 339-340).  However, the individual defendants are not parties to these alleged contracts.  Alabama law clearly provides that "[a]n agent cannot be held liable for his principal's breach of contract." *Miller v. Dobbs Mobile Bay, Inc.*, 661 So.2d 203, 205 (Ala. 1995) (citing *Smith v. Equifax Services, Inc.*, 537 So.2d 463, 469 (Ala. 1988)).  There have been no specific allegations that the individual Defendants entered into a contract or agreed

to the alleged covenants in an individual capacity. Thus, the individual Defendants cannot be held liable on such contracts.

As to the negligence claims, Plaintiff alleges in the Amended Complaint that the University owed Plaintiff a duty of care (Doc. 43, ¶ 422), but does not allege that the individual Defendants owed Plaintiff a duty of care.  Plaintiff alleges in the complaint that "USA breached its duties owed to [Plaintiff]", but does not make the same allegation against the individual Defendants. (Doc. 43, ¶ 436).  Accordingly, the Court finds Plaintiff has not asserted a negligence claim against the individual Defendants.

Plaintiff also asserts that he has alleged a claim against the individual Defendants their individual capacity for violating the due process clause of the Alabama Constitution that is not defeated by immunity. However, the due process claim asserted by Count I of the Amended Complaint clearly states that it "is brought against the Individual Defendants in their official capacity." (Doc. 43, ¶ 272).  Count II of the Amended Complaint states that it is brought against the individual Defendants in their official capacity for injunctive relief and in their individual capacity for damages, but it is titled "42 U.S.C. §1983 – VIOLATION OF DUE PROCESS PROVISIONS OF UNITED STATES CONSTITUTION." (Doc. 43, p. 55).  The allegations under Count II mention the Alabama and United States Constitutions (Doc. 43, ¶¶ 287. 289), but § 1983 does not establish a right of action under a state constitution. *Baker v. City of Alexander City*, 973 F.Supp. 1370, 1376 (M.D. Ala. 1997).  Thus, the claim must be dismissed because Plaintiff cannot bring

a § 1983 claim based on a violation of state law. Even if Plaintiff's claim could be construed to rely solely on state law, the claim still must be dismissed. "There is no mechanism in Alabama law similar to 42 U.S.C. § 1983 by which a state actor can be held liable for damages for violation of the Alabama Constitution." *Chantilly Store All, LLC v. Spear*, 2010 WL 4269131, at *7 (M.D. Ala. Oct. 22, 2010) (citing *Ross v. Alabama*, 893 F.Supp. 1545 (M.D. Ala. 1995). Moreover, the claim would be barred by State immunity or State-agent immunity. *See Ex parte Moulton*, 116 So. 3d 1119, 1142-43 (Ala. 2013).

## VI. Count IV / Title IX Claims

There are four general categories of Title IX challenges to university disciplinary proceedings that have been recognized by Courts. The first two were identified by the Second Circuit in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994): (1) where "the student's gender affected the penalty imposed, the decision to initiate the proceeding, or both—these are selective enforcement challenges" and (2) where "gender bias played a role in the wrongful conviction of an innocent student—these are erroneous outcome challenges." *Doe v. Lynn Univ.*, Inc., 224 F. Supp.3d 1288, 1291 (S.D. Fla. 2016) (citing *Yusuf*). The third type recognized is the "deliberate indifference" challenge, under which "a plaintiff must 'demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.' " *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (quoting *Mallory v. Ohio Univ.*, 76 Fed.Appx. 634, 638 (6th Cir. 2003)). The last type is the "archaic assumptions"

standard, under which a plaintiff seeking equal opportunities must demonstrate that a university's discriminatory actions resulted " 'from classifications based upon archaic assumptions.' " *Id.* (quoting *Mallory supra*).

Here, Plaintiff alleges the first three: selective enforcement, erroneous outcome, and deliberate indifference. To support a selective enforcement claim that gender affected the penalty imposed or the decision to initiate the proceeding, the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably" by the defendant. *Mallory*, 76 Fed.Appx. at 641 (citation omitted).  Plaintiff has not alleged that a similarly situated female student, accused of sexual misconduct, received a more lenient punishment or that his punishment was disproportionate for a charge of sexual assault. Accordingly, he has not stated a claim for selective enforcement with regard to the penalty imposed. See *Doe v. Regents of the Univ. of Ca.*, 2016 WL 5515711, at *5 (dismissing claim).

Plaintiff alleges that he was treated differently with regard to the initiation of the proceeding against him because charges were not brought against Roe 1 and Roe 2 who admitted to having sexual relations with each other while incapacitated. However, Roe 1 and Roe 2 are not similarly situated because neither made a complaint against the other. The charges against Plaintiff were initiated after complaints were made against Plaintiff by Roe 1, Roe 2 and Roe 3. Additionally, unlike Plaintiff, both Roe 1 and Roe 2 were allegedly incapacitated when they engaged in the conduct in question. Plaintiff argues that the University does not have a rule that makes incapacitation a defense to the charge, but the difference is

still a factor that could affect a University's decision to initiate charges. Because the Amended Complaint includes no reference to the necessary similarly situated comparator, Plaintiff has not alleged facts sufficient to state a plausible Selective Enforcement claim.

"[A] plaintiff bringing an erroneous outcome challenge must plead two elements: (1) facts sufficient to cast doubt on the accuracy of the proceeding and (2) a causal connection between the flawed outcome and gender bias. *Lynn Univ., Inc.*, 224 F.Supp.3d at 1291 (citing *Yusuf supra*). The Court finds that Plaintiff has adequately pled facts to cast doubt on the accuracy of the proceeding. However, the Court finds he has not sufficiently alleged a causal connection between the outcome and his gender. Conclusory assertions concerning bias and discriminatory intent are insufficient to establish gender bias at the pleading stage. *See Yusuf*, 35 F.3d at 715 –16. Rather, plaintiffs must allege facts that support a plausible inference of bias and causation—such as: (1) gender-based comments or animus attributable to the defendants; or (2) a "pattern of decision-making" that show "the influence of gender." *See Doe v. Miami Univ.*, 2017 WL 1154086, at *5 (S.D. Ohio Mar. 28, 2017) (quoting *Doe v. Cummins*, 662 Fed.Appx. 437, 451–52 (6th Cir. 2016)). Thus, Plaintiff's general allegations that he was treated differently because he was male or that he was denied similar benefits and services are not sufficient to maintain a Title IX claim.

"[N]umerous courts have held that [e]ven if [a] [u]niversity treated [a] female student more favorably than the [p]laintiff, during the disciplinary process, the

mere fact that [p]laintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of [p]laintiff's sex." *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017) (citations and internal quotations omitted).  " '[D]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students.' " *Id.* (quoting *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778 (S.D. Ohio 2015)); *see also Cummins*, 662 Fed.Appx. at 453 (finding that a system biased in favor of "alleged victims and against those accused of misconduct ... does not equate to gender bias because sexual assault victims can be both male and female"); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1226–27 (D. Or. 2016) (noting that allegations concerning "a university's aggressive response to allegations of sexual misconduct" does not permit a plausible inference of gender discrimination).

Plaintiff's allegations regarding the Dear Colleague letter do not show a gender bias. Absent university-specific allegations of community pressure, allegations of a national bias against males based on the letter have been found insufficient to support an inference of gender bias. *See Cummins*, 662 Fed.Appx. at 452–53.  General allegations "that the Department of Education's 'Dear Colleague Letter' induced [the University] to discriminate against males in sexual-assault investigations in order to preserve federal funding," "without more, is insufficient to create a plausible claim of gender bias under Title IX." *Id.* at 453.

Plaintiff's training allegations also fail to support an inference of gender bias by Defendants "because there is no logical connection between an inadequately trained investigator and gender bias." *Mancini v. Rollins Coll.*, 2017 WL 3088102, at \*6 (M.D. Fla. July 20, 2017). "Logically, an untrained investigator would pose similar problems and risks to both parties—regardless of sex." *Id.*

As to Plaintiff's Title IX claim of deliberate indifference, Plaintiff alleges that Defendants were deliberately indifferent to his reports of threats against his safety and physical well-being after he was charged by the University. Plaintiff alleges he was the subject of several threats from friends of Roe 1 and Roe 2 who showed up at his dorm room and who threatened him on Facebook after Plaintiff was accused of sexual misconduct. Roe 1 also allegedly violated the University's no-contact order by coming into his private dorm room. Plaintiff states that he reported the threats to Defendants but they failed to take any meaningful action to protect Plaintiff. Plaintiff argues that he had a right to have the no-contact protective order enforced. Plaintiff also argues that because of Roe 1 and Roe 2's flagrant disregard of the University's own rules during the hearing on their complaints[2], Doe was especially vulnerable to threats and harm especially after defendants were indifferent after Doe complained to Defendants. Plaintiff also asserts that he had a right to have a Title IX advocate assist him and that, although the University appointed him one, the advocate never reached out to Plaintiff and did not even appear at his hearing.

---

[2] Plaintiff cites to paragraphs 119-121 of his Amended Complaint which details Roe 1 and Roe 2 repeatedly mentioning Roe 3 during their hearing after they had been instructed not to mention her.

A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove four elements:

(1) "the defendant must be a Title IX funding recipient";
(2) "an 'appropriate person' must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred";
(3) the funding recipient must have acted "with deliberate indifference to known acts of harassment in its programs or activities"; and
(4) "the discrimination must be so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007) (citations and internal quotations omitted). For deliberate indifference to be actionable under Title IX the defendant must "exercise[ ] substantial control over both the harasser and the context in which the known harassment occurs." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644 (1999). The University "is not required to 'remedy' sexual harassment nor ensure that students conform their conduct to certain rules, but rather, '[the University] must merely respond to known peer harassment in a manner that is not clearly unreasonable.' " *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (quoting *Davis*, 526 U.S. at 642). For the University to be liable, its deliberate indifference must have actually caused Plaintiff to undergo harassment or made him "liable or vulnerable to it." *Williams*, 477 F.3d at 1295–96. To maintain a Title IX claim, Plaintiff must allege that the deliberate indifference subjected him to further discrimination. *Id.* at 1296. Moreover, to be actionable under Title IX, the harassment or discrimination complained of must be gender based. *See Davis*, 526 U.S. at 644, ("both the 'deliberate indifference' standard and the language of Title

34

IX narrowly circumscribe the set of parties whose known acts of sexual harassment can trigger some duty to respond on the part of funding recipients")[3]; *see also Doe v. Columbia Coll. Chicago*, 2017 WL 4804982, at *6 (N.D. Ill. Oct. 25, 2017) ("The peer harassment forming the basis for a Title IX claim must also, of course, be 'gender-oriented.' " (citing *Davis supra*)); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 757–58 (E.D. Tenn. 2009) ("The facts pled by Plaintiffs, however, do not contain the critical component of any Title IX claim necessary to make a finding under the deliberate indifference standard, namely that the University's alleged actions constituted sexual harassment."). Here, Plaintiff does not allege that the Defendant's deliberate indifference was gender based or that the harassment from Roe 1 and Roe 2's friends was sexual or gender based. It is unclear how Roe 1 and Roe 2's alleged flagrant disregard of certain instructions during the hearing or the University's failure to provide a Title IX advocate to assist Plaintiff could fall under a deliberate indifference theory as they do not appear to involve harassment or discrimination by others. Plaintiff has not alleged that any of the claimed wrongful conduct was gender based. Accordingly, the Court finds that Plaintiff has not sufficiently stated a Title IX claim of deliberate indifference.

---

[3] Though *Davis* and other Courts often speak of the requirement that "harassment" be shown without specifying that the harassment be sexual or gender based, the language of Title IX clearly confines the scope of prohibited conduct to discrimination "on the basis of sex." 20 U.S.C.A. § 1681. "If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment. That is, the deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Davis*, 526 U.S. at 644–45. But under either theory, the harassment must be based on sex.

## VII. Count VI / Conspiracy Claims

Plaintiff alleges that Defendants Agnew and Mitchell conspired with each other: (1) to deprive Plaintiff of his constitutional and contractual rights in the UDC hearings, (2) to deprive Plaintiff of due process of law, (3) to deprive Plaintiff of his right to fair and impartial UDC members and panels, and (4) to conceal facts and evidence so as to deprive Plaintiff of fair and impartial UDC panel members, hearings and appeals. (Doc. 43, ¶ 440).  Defendants respond that the claims are barred by the intracorporate-conspiracy doctrine.

"[T]he intracorporate-conspiracy doctrine holds that a corporation may not be held liable for any alleged conspiracy with its own employees or agents ...." *White v. City of Athens*, 169 F. Supp.3d 1254, 1269 (N.D. Ala. 2016) (quoting *M & F Bank v. First Am. Title Ins. Co.*, 144 So.3d 222, 234 (Ala. 2013)).  "The intracorporate conspiracy doctrine also dictates that the employees of a corporation, 'when acting in the scope of their employment, cannot conspire among themselves.' " *Id.* (quoting *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010)).  The doctrine applies whether the conspiracy is asserted under federal or Alabama law. *Id.*  "This doctrine has been applied not only to private corporations but also to public, government entities." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) (citing multiple authorities, including: *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977), aff'g, 421 F. Supp. 12, 15 (E.D. La. 1976) (applying the intracorporate conspiracy doctrine to bar a conspiracy claim against a public university and its officials)).  The doctrine, which applies only to civil causes of

action, "developed out of basic agency principles that attribute the actions of a corporation's agents to the corporation itself, which negates 'the multiplicity of actors necessary for the formation of a conspiracy.' " *White*, 169 F. Supp.3d at 1269 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)).  This Court and other recent cases in this Circuit and in Alabama have continued to apply the doctrine. *See e.g. Smith v. City of Greensboro*, 2015 WL 1120059, at *5 (S.D. Ala. Mar. 12, 2015), aff'd, 647 F. App'x 976 (11th Cir. 2016); *Nassar v. Fla. Dep't of Agric.*, 2018 WL 548974, at *5 (N.D. Fla. Jan. 10, 2018), *report and recommendation adopted sub nom. Nassar v. Fla. Dep't of Agriculture*, 2018 WL 547643 (N.D. Fla. Jan. 24, 2018); *Jones v. Scott Davis Chip Mill*, 2017 WL 5127717, at *26 (N.D. Ala. Nov. 6, 2017); *Morrison v. Jones*, 2017 WL 4077044, at *5 (M.D. Fla. Sept. 14, 2017); *Clark v. Noe*, 2017 WL 4707897, at *3 (N.D. Ala. Oct. 20, 2017); *Bowe v. City of Hallandale Beach*, 2016 WL 10587945, at *2 (S.D. Fla. Dec. 12, 2016); *Acre v. Chambers*, 2014 WL 2885631, at *1 (M.D. Ala. June 25, 2014); *M & F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013); *Tippins v. City of Dadeville*, 2014 WL 1092920, at *4 (M.D. Ala. Mar. 19, 2014).

However, some courts have found that exceptions apply to the intracorporate conspiracy doctrine. As mentioned above, the agents must be acting within the scope of their employment and the conspiracy must be civil, rather than criminal. This Court previously held that even when a civil conspiracy has been alleged, where the underlying conspiratorial conduct would also give rise to a criminal conspiracy "there is no reason to differentiate" and the intracorporate conspiracy

doctrine will not bar the claim. *United States ex rel. Gacek v. Premier Med. Mgmt., Inc.*, 2017 WL 2838179, at *12 (S.D. Ala. June 30, 2017).  However, these Defendants were clearly acting within the scope of their employment[4] and Plaintiff has not alleged or argued that the conduct underlying the conspiracy claims would also give rise to a criminal conspiracy claim. Instead, Plaintiff, citing *Dickerson v. Alachua County Comm'n*, 200 F.3d 761 (11th Cir. 2000), argues that his claim falls under another exception that applies when the agents engaged in a "series of discriminatory acts as opposed to a single action" over a significant period of time. In *Dickerson*, the Eleventh Circuit reviewed cases in other circuits that have applied exceptions to the intracorporate conspiracy doctrine, specifically listing three exceptions that included the "series of discriminatory acts" exception, but concluded that because none of the potential exceptions would apply based on the facts before it, it did not need to "reach the issue of whether to adopt them in this circuit." *Dickerson*, 200 F.3d at 770.  This Court has similarly noted before that such exceptions existed in other circuits, but did not apply to the case before it. *See e.g. Smith*, 2015 WL 1120059, at *5 n.5 (citing *Grider*, 618 F.3d at 1263 which cited *Dickerson*).

The case which *Dickerson* referenced that applied the "series of discriminatory acts" exception was *Stathos v. Bowden*, 728 F.2d 15 (1st Cir. 1984).

---

[4] As noted earlier, Plaintiff alleged in the Amended Complaint that the University "acted through its administrators, supervisors and employees who were agents of the [University] and were acting within the course and scope of their employment in their official capacity." (Doc. 43, ¶¶ 4-5).

In *Stathos*, the First Circuit concluded that the intracorporate conspiracy doctrine should not apply because:

> Their conduct involved a series of acts over time going well beyond simple ratification of a managerial decision by directors. It consisted of joint discretionary activity—with many words and several deeds—engaged in by each of the Commissioners.

*Id.* at 21.  Some courts have declined to apply the "series of discriminatory acts" exception, finding that it does not fall in line with the language or objectives of the conspiracy claim which "depends on multiple actors, not on multiple acts of discrimination or retaliation." *E.g. Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 724 (S.D.N.Y. 1997) (quoting *Travis v. Gary Community Mental Health Ctr., Inc.*, 921 F.2d 108, 111 (7th Cir.1990)).  While courts in this circuit have noted the exceptions listed in *Dickerson*, this Court is not aware of any case in this circuit which has applied the "series of discriminatory acts" exception. *See e.g. Tippins v. City of Dadeville*, 2014 WL 1092920, at *4 (M.D. Ala. Mar. 19, 2014) ("Even if the Eleventh Circuit did adopt the exception upon which Plaintiffs rely, Plaintiffs allege no facts to support its application.").  Some courts in this Circuit have found that the three exceptions listed in *Dickerson* do not apply in this Circuit. *See Harris v. City of Boynton Beach*, 2016 WL 3971409, at *9 (S.D. Fla. July 25, 2016) ("while the Eleventh Circuit subsequently 'recognized [in the § 1985(2) context] an exception to the doctrine for criminal conspiracies where the conduct violates the federal criminal code,' it has yet to adopt any other exception. In the absence of any applicable exception recognized and adopted by the Eleventh Circuit, [the conspiracy count] is barred by the intracorporate conspiracy doctrine." (internal

citation omitted)); *Bryant v. Jones*, 464 F. Supp. 2d 1273, 1289 (N.D. Ga. 2006), *aff'd in part, rev'd in part on other grounds*, 575 F.3d 1281 (11th Cir. 2009), *and on reconsideration*, 696 F. Supp. 2d 1313 (N.D. Ga. 2010) (declining application of the "series of discriminatory acts" exception stating the following: "The *Dickerson* court expressly declined to hold the exceptions were applicable to this circuit. Plaintiffs rely on *Dickerson* as their only authority that the exceptions apply, and they have not cited any Eleventh Circuit decisions after *Dickerson* to persuade this Court that the exceptions should be applied in this case.").

After reviewing the above cases, the Court finds that the "series of discretionary acts" exception does not apply in this circuit. In the instant case, the Defendants named in Plaintiff's conspiracy claim are both employees of the University, acting within the scope of their employment. No outsiders are alleged to have been involved in the alleged civil conspiracy. Thus, the Court finds that the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (Doc. 49), is **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiff's breach of contract, Title IX, negligence and conspiracy claims (Counts III, IV, V and VI) are **DISMISSED**;

2. the motion is **DENIED** as to Plaintiff's due process claim (Count I) only to the extent it is based on the allegation that Defendants were biased and **GRANTED** as to the other grounds raised; and

3.   the motion is **DENIED** as to Plaintiff's § 1983 claims against the individual Defendants only to the extent they are based on bias of the decision makers. (Count II).

**DONE** and **ORDERED** this 14th day of February, 2020.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE