IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 17-0394-CG-C |
| | ) |
| | ) |
| THE UNIVERSITY OF SOUTH | ) |
| ALABAMA; *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on Plaintiff's motion for Preliminary Injunction (Doc. 6), Defendants' opposition thereto (Doc. 16), evidence provided at a hearing before this Court on October 3, 2017, Plaintiff's brief in support (Doc. 46), Defendants' brief in opposition (Doc. 48), and Plaintiff's reply (Doc. 51). The Court finds that Plaintiff has not met his burden of showing a substantial likelihood of success on the merits. Therefore, Plaintiff's motion for preliminary injunction will be denied.

**I. FACTS**

This case arises from disciplinary actions that were initiated against Plaintiff John Doe, at The University of South Alabama ("South Alabama"). Plaintiff was enrolled as a student at South Alabama for the fall semester of 2016 and the spring semester of 2017 and he enrolled for the fall semester of 2017. (Doc. 43, ¶ 3(a)). Plaintiff is the recipient of an Army ROTC scholarship through which he received

1

full tuition scholarship and fees, as well as a monthly subsistence check and money for books. (Doc. 1, ¶ 3(a)).

In October 2016, Plaintiff was notified that he had "been listed as the responsible person in a violation of the Code of Student Conduct," for engaging in sexual violence towards two individuals (hereafter referred to as Roe 1 and Roe 2). (Doc. 43-2, p. 89). The "sexual violence" he allegedly engaged in was defined or listed in the notice as "[a]ny physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent." (Doc. 43-2, p. 89). After a hearing, Plaintiff was notified that the University Disciplinary Committee ("UDC") had found Plaintiff "responsible" for the violation and as a result there was a mutual "No Contact Order" between Plaintiff and Roe 1 and Roe 2. Additionally, Plaintiff was on conduct probation for the remainder of his academic career, Plaintiff was to complete 100 hours of community service, Plaintiff's housing contract was terminated, and Plaintiff was to complete an educational module on prevention of sexual violence. (Doc. 43-4, p. 4). Plaintiff appealed the decision and Defendant Michael A. Mitchell, who is the Vice President for Student Affairs and Dean of Students and Deputy Title IX Coordinator for Students, upheld the decision but modified the sanction imposed and allowed Plaintiff to maintain campus residence. (Doc. 43-4, pp. 7-8).

By letter dated November 16, 2016, Plaintiff was notified that a third female student (hereafter referred to as Roe 3) had reported to the Title IX Office that Plaintiff had engaged in sexual misconduct off campus, alleging that she was too

2

incapacitated to provide consent for sex. (Doc. 43-4, p. 10-11). The notice stated that an impartial investigation of the allegation would be conducted. (Doc. 43-4, p. 10). Plaintiff then filed a sexual assault Title IX complaint against Roe 3 alleging that Roe 3 had transmitted a sexually transmitted disease to him. (Doc. 43, ¶ 159). Plaintiff requested that the Assistant Dean of Students, Defendant Andrea C. Agnew, recuse herself because Plaintiff asserted that he may call her as a witness, that she had exhibited animus and malice against Plaintiff in the prior hearing, and that she had personally participated in the investigation. (Doc. 43-4, p. 17). In response, Defendant Mitchell stated that though he "did not find any prior conduct by Dr. Agnew merits her removal from this proceeding Dr. Agnew has recused herself from today's proceeding." (Doc. 43-4, p. 16). The two cross-complaints were heard by the same UDC panel. (Doc. 43, ¶ 173).

After the hearing, Plaintiff was found "responsible" by the UDC of violating the Code of Student Conduct for engaging in "sexual violence." (Doc. 43-4, pp. 19-20). Roe 3 was found "not responsible." (Doc. 43-4, pp. 23-24). Plaintiff appealed the decisions. Defendant Mitchell upheld the finding that Roe 3 was "not responsible" but found that the charge against Plaintiff should be heard again during a new proceeding with a different committee. (Doc. 43-4, pp. 27-28). Defendant Mitchell stated that "the introduction of prior allegations against you was significant enough to warrant that this charge be heard again." (Doc. 43-4, p. 27). Defendant Mitchell stated that Defendant Agnew would preside over the new hearing because her "level of experience presiding over Title IX hearings will provide additional assurance that

3

all required policies and procedures will be followed" and that he had "not found any indication that [Agnew] has any conflict of interest in such participation, as her role throughout these proceedings has been as a neutral investigator and facilitator." *Id.*

A new UDC panel heard the case on August 15, 2017, and concluded that Plaintiff was "responsible." (Doc. 43-4, pp. 30-31). The UDC panel consisted of two University of South Alabama employees and four University of South Alabama students (identified hereinafter as UDC 3, UDC 4, UDC 5, and UDC 6).

At the preliminary injunction hearing UDC 6 testified that she also served on the panel that found Plaintiff responsible for sexual misconduct towards Roe 1 and Roe 2. UDC 6 was the SGA chief justice and one of her obligations as chief justice is serving on the UDC. (Doc. 41, p. 10). During the August 15 hearing and deliberations, UDC 6 did not tell anyone that she had been on the prior panel and she did not mention that Plaintiff had prior charges. Plaintiff acknowledges that he recognized and knew UDC 6 had been involved in a prior hearing (Doc. 51, p. 2), and he did not object to her involvement in the August 15 hearing at the time of the hearing or in his appeal of the decision. UDC 6 was also involved in procuring the additional three student panel members, but testified that she merely contacted student members with the dates to determine availability and the three students that served on the panel were the only ones available. (Doc. 41, p. 66, 86). Although UDC 6 reviewed the investigation report immediately prior to the hearing, she did not recognize Plaintiff's name as being the prior respondent until she saw him at the hearing. She testified that she just focused on the case at hand, which is what she

4

had learned from her training. She also testified that she was fair and open-minded and did not prejudge. Mitchell testified that he knew UDC 6 to be fair and impartial and that he did not think it was improper for UDC 6 to serve on the August 15 panel. Ms. Agnew testified that is was customary for the chief justice to participate in all student conduct hearings and that UDC 6 was very dedicated and had been elected by her peers to a second term in that role. (Doc. 41, p. 144).  Ms. Agnew believed UDC 6 would fairly evaluate the case and she trusted UDC 6's judgment. (Doc. 41, p. 145).  The Court notes that UDC 6 presented herself very well in court and appeared to be very intelligent, sincere and credible.

UDC 6 also testified that she had been trained to take everything into account before making a decision, which would include the witness statements. (Doc. 41, p. 17). The UDC members are taught to rely on the things contained in the investigation packet. (Doc. 41, p. 17). The UDC panel gets the packet an hour before the hearing and they review it on their own before the hearing begins. (Doc. 41, pp. 18, 20).  UDC 6 says they talked about the witness statements during their deliberations and they believed the statements were sincere, but that "[t]hey didn't really give any new information." (Doc. 41, pp. 31, 32).  UDC 6 conceded that there was information contained in one of the statements about text messages between the Plaintiff and others on the night of the incident that was important. (Doc. 41, p. 35).

Ms. Agnew decided not to permit a police officer to participate in the August 15 hearing because he had participated in the first hearing regarding Roe 3's allegations against Plaintiff. She felt that it was conflict for the police officer because

the August 15 hearing was a re-hearing of the same charges. (Doc. 41, pp. 123-124). Agnew also removed the statement of Student 2 from the investigation file because the statement referenced the prior hearing. (Doc. 41, pp. 118-119).

Other student members of the August 15, 2017 panel testified at the preliminary injunction hearing. Although some admitted to being Facebook friends or having previously known of or crossed paths with one of the complainants or with Dean Mitchell, all of them testified that they did not personally know the complainants or other parties. For instance, UDC 6 had seen Roe 3 at SGA meetings multiple times, but she did not know her personally and had never spoken to her or worked on any community projects with her. (Doc. 41, pp. 25-26, 60). UDC 6 knew Dean Mitchell as an advisor with the university and a mentor, but it was strictly based on her experience as a student and a student leader. (Doc. 41, p. 53). Dean Mitchell acted as an advisor or mentor to many students and had almost 5,000 Facebook friends. The other student UDC members also testified that they considered and relied on the written statements. For instance, UDC 3 indicated that it was not just a he-said/she-said case, that the witness statements were important, but said the case was so long ago that "there's not really one thing that sticks out" in his mind as the deciding factor. (Doc. 41, p. 268-269). UDC 5 testified that they considered the statements and found them helpful. (Doc. 41, pp. 274-275).

According to Agnew if Plaintiff wanted to contact Roe 1, Roe 2, or Roe 3, he could not do so directly because of the no contact order, but he could have done so through the office. Witnesses do not take an oath before testifying at their hearings.

6

Agnew testified that she acted only as a facilitator during the hearing and deliberations to help ensure that it was a fair and equitable process. (Doc. 41, pp. 89-90). She was to guide the deliberation process but not deliberate herself. UDC 6 testified that Agnew did not participate in the deliberations, but only facilitated by asking questions and allowing all the panel members to speak. (Doc. 41, p. 36). During the deliberations Agnew did not express any personal opinion as to whether or not Plaintiff should be found responsible and the panel members did not feel that Agnew tried to influence them. (Doc. 41, p. 64). As the chair, Agnew serves as a non-voting member of the disciplinary committee. (Doc. 41, pp 116-117).

The panel unanimously found that Roe 3 "did not provide consent to engage in sexual activity with the respondent as defined in the University of South Alabama Sexual Misconduct Policy & Complaint Resolution Procedures." (Doc. 43-4, p. 31; Doc. 41, p. 42). Once that determination had been made, the panel began discussing sanctions. (Doc. 41, p. 42). A UDC member asked what sanctions have been given in the past and Dr. Agnew gave some examples. (Doc. 41, pp. 42-43). The UDC members discussed the sanctions and Dr. Agnew wrote down the sanctions that the UDC members decided on. (Doc. 41, pp. 43-45). The panel's recommendation included probation but they did not think expulsion was appropriate. (Doc. 41, p. 46). After the panel made its recommendation, Agnew asked the panel what their recommendation would be if this same individual were to be charged again with a similar code of conduct violation and the panel mentioned suspension. (Doc. 41, pp. 93, 103-104). As the chair of the UDC Agnew is a non-voting member of the UDC

7

and it is her role to decide what the sanction would be. (Doc. 41, p. 107). Agnew discussed the sanctions with Mitchell before determining that Plaintiff would be suspended. (Doc. 41, pp. 101, 104-106). Although Mitchell conferred with Agnew about the sanction to be given, Mitchell testified that he did not make the decision. The student's conduct record is relevant, even required, to determining the sanction to be imposed.

Plaintiff testified that he had received the investigative case file long before the hearing because it had been provided before the prior hearing. Plaintiff does not recall offering any affidavits, witness statements or anything new that was not already in the file. Plaintiff made an opening statement at the hearing. Plaintiff would have liked to have cross-examined everyone who gave a statement. Plaintiff admits that Agnew asked all of the questions he submitted for Roe 3. Plaintiff did not know what sanctions the panel had recommended or that Agnew had conferred with Mitchell prior to determining the sanctions.

As a result of the finding by the UDC panel, Plaintiff was suspended from South Alabama effective August 16, 2017 until the summer 2018 term and was prohibited from visiting the campus for any reason without prior clearance by the Office of the Dean of Students. (Doc. 43-4, p. 30). A mutual "No Contact Order" between Roe 3 and Plaintiff was also put in place and it was reiterated that Plaintiff was on conduct probation for the remainder of his academic career at South Alabama. (Doc. 43-4, p. 30). Plaintiff appealed the decision. Mitchell contacted Plaintiff and asked if he wished to meet with him in person to review the appeal, but

8

Plaintiff responded that there was no need to meet. On August 28, 2017, Mitchell upheld the decision and sanctions. (Doc. 43-4, pp. 33-34). Although Agnew participated in the investigation, Plaintiff does not recall Agnew ever being an advocate. Agnew did not offer testimony of her own.

Plaintiff requests that this Court order South Alabama to 1) reinstate him immediately, 2) order South Alabama to place him immediately back into the ROTC program, 3) declare that Defendants' rules and policies and actions as applied were unconstitutional or in violation of the contractual equivalent of due process, good faith and fair dealing and fundamental fairness, and 4) enjoin the Defendants from releasing Plaintiff's identity and the results of the decisions made the basis of this action. This Court previously denied Plaintiff's motion for TRO, finding that Plaintiff had not shown a likelihood of success on the merits. (Doc. 19). Plaintiff was granted limited expedited discovery and an evidentiary hearing was held on Plaintiff's motion for preliminary injunction. Plaintiff's was also granted leave to proceed anonymously and the parties were ordered to refer to Plaintiff, the student complainants and all student witnesses by aliases.

## II.   LEGAL STANDARD

This Court previously noted the applicable standard for preliminary injunctive relief in Hammock ex rel. Hammock v. Key, 93 F.Supp.2d 1222 (S.D. Ala. 2000):

A party seeking a preliminary injunction must establish the following

9

> four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury; (3) that its own injury would outweigh the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir.1999); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). The Court should be mindful that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly satisfied the burden of persuasion as to the four requisites. McDonald's, 147 F.3d at 1306; *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990).

*Id.* at 1226-27. The same standard applies to a request for a temporary restraining order as to a request for a preliminary injunction. *Morgan Stanley DW Inc., v. Frisby*, 163 F.Supp.2d 1371, 1374 (N.D. Ga. 2001) (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995)). Upon consideration of the evidence presented, the Court concludes that plaintiff has not met this burden.

### III.   ANALYSIS

Plaintiff claims he will be irreparably injured if he is not allowed to continue in his classes this semester as an ROTC scholarship student. He was prohibited from doing so by South Alabama as a sanction after being found "responsible" for sexual misconduct towards Roe 3 in the August 15, 2017 discipline hearing. The decision was upheld on appeal by Defendant Mitchell on August 28, 2017. Plaintiff also claims he would be irreparably harmed if Defendants were to release his identity and the results from any or all of the disciplinary hearings. As previously discussed in the Order denying Plaintiff's motion for TRO, Defendants state that they have no present intention of publicly displaying Plaintiff's identity. The parties

10

have been ordered to protect Plaintiff's identity within these proceedings by referring to Plaintiff as John Doe and the Court presumes that Defendants still have no intention of publicly displaying Plaintiff's identity outside of these proceedings while this lawsuit remains pending. **Defendants are hereby ORDERED to notify the Court if their intention to not publicly disclose Plaintiff's identity changes.**

The first factor Plaintiff must establish to succeed on his motion for preliminary injunction is a substantial likelihood of success on the merits. Defendants contend that Plaintiff has not established this factor. Plaintiff's basis for claiming that the Defendants should be ordered to reinstate him is that the discipline hearing violated his due process rights. Plaintiff claims the hearing was unfair because: 1) unsworn witness statements, rather than affidavits were presented at the hearing and Plaintiff could not cross-examine those witnesses because they did not appear at the hearing, 2) South Alabama refused to disclose what accommodations Roe 3 was afforded and Plaintiff was not permitted to cross-examine Roe 3 on this point, 3) Plaintiff was not permitted to cross-examine Roe 3 regarding the transmission to him of a sexually transmitted disease, and 4) the decision makers were biased.

Plaintiff objects to the unsworn witness statements having been used at the hearing on the basis that they violate South Alabama's own rules and because they resulted in Plaintiff not being able to cross-examine the witnesses. The Student Code of Conduct expressly states that the complainant and respondent have "[t]he

11

right to present evidence by witness, or by affidavit if a witness is unable to attend the hearing." (Doc. 43-2, p. 60). The Student Code of Conduct states that "[i]t is the responsibility of the respondent and the complainant/victim to notify their witnesses of the date, time and place of the hearing" and warns that "[i]f witnesses fail to appear, the hearing shall be held in their absence." (Doc. 43-2, p. 60). The witness statements in question were not affidavits and it was not shown that all of the witnesses were unable to attend. However, the statements in question were not submitted by Roe 3 pursuant to her right to present witnesses. The statements were contained in the investigation materials submitted to the UDC. South Alabama's Sexual Misconduct Policy and Complaint Resolution Procedures require the Investigating Officer to conduct an investigation and gather information and statements from witnesses and other sources and they require the Investigating Officer to transmit the investigation report and any appended information to the UDC before the hearing. (Doc. 43-2, pp. 28, 29). The parties were reportedly provided the opportunity to review the investigation materials before the hearing and could have notified a potential witness and requested that they appear.

Plaintiff relies on a case from the Southern District of Ohio, *Nokes v. Miami Univ.*, 2017 WL 3674910 (S.D. Ohio Aug. 25, 2017), in support of his contention that including the witness statements in the investigation materials and providing them to the panel violated Plaintiff's due process rights. In *Nokes*, the accuser provided three statements from friends who allegedly observed her behavior before or after her encounter with the plaintiff and stated that "Jane Roe came home that night

12

'sobbing uncontrollably and slurring her words' and 'unable to walk in a straight line.'" *Id.* at *6. According to the statements, Jane Roe told her roommate that John Nokes "took her to his dorm, took her into the bathroom, and even though she resisted, he held her head down and forced her to give him oral sex." *Id.* The plaintiff in *Nokes* claimed he was afforded inadequate notice of the nature of the allegations against him because he had not been made aware that the hearing would focus on the accuser's alcohol consumption and inability to consent. *Id.* The plaintiff also objected to not being provided with an opportunity to cross-examine the three witnesses who supplied written statements. *Id.* The *Nokes* court found that the plaintiff did not have a meaningful opportunity to prepare a defense because the notice of violation specifically referred to a narrow section pertaining to the use of force and failed to mention Jane Roe's alleged intoxication and the plaintiff did not receive any notice that intoxication might be the basis of the charge until, at most, a week before the hearing and after he had been required to submit a statement and other evidence. *Id.* at *11. The *Nokes* court also found that the plaintiff had sufficiently raised a claim that the use of the witness statements denied him due process. *Id.* at *13. The *Nokes* court noted that the plaintiff was never able to test the memory or credibility of the witnesses and that the defendant who presided over the hearing stated at the hearing "if we can't ask questions, I have to take this as fact." *Id.* at *12. In the instant case, the presiding panel member did not state that all statements have to be taken as fact. Moreover, in the instant case Plaintiff clearly had more opportunity to prepare his defense. In *Nokes*, the plaintiff was not aware until his hearing of the substance of the statements or that the allegations in

13

them supported a new basis for his charge. The Plaintiff here received the investigation file and knew the statements and their content long before the hearing in question and could have attempted to procure the attendance at the hearing of the people who made the statements or to procure other witness statements or witnesses to testify to counter the information alleged in the statements. The Court notes that neither Plaintiff nor the Defendants could require the witnesses to attend the hearing, and advance notice and time to procure counter evidence is not the same as cross-examination. However, the Plaintiff in this case was clearly provided more process than the plaintiff in *Nokes*.

Plaintiff asserts that he has the right to confront adverse witnesses when the information supplied by those witnesses is the reason for the adverse action and there is a question of credibility to be resolved by the finder of facts. The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary proceedings. *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) (citation omitted).

> Due process does not invariably require the procedural safeguards accorded in a criminal proceeding. Rather, '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'

*Id.* (citation omitted). "All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is 'sufficient notice of the charges ... and a meaningful opportunity to prepare for the hearing.'" *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 639 (6th Cir. 2005). In *Flaim,* the Sixth Circuit noted that "[s]ome circumstances may require the opportunity to cross-examine witnesses,

14

though this right might exist only in the most serious of cases." *Id.* at 636.  Plaintiff argues that a recent case, *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), further expounded on the Sixth Circuit's holding in *Flaim*. In *Univ. of Cincinnati* the accuser, Jane Roe, failed to appear at the disciplinary hearing and John Doe was found responsible for sexually assaulting Roe based upon her previous hearsay statements to investigators. *Univ. of Cincinnati*, 872 F.3d at 396.  The District Court granted Doe a preliminary injunction and the Sixth Circuit, reviewing the district court's legal conclusion *de novo*, but deferring "to the district court's overall balancing of the four preliminary-injunction factors" affirmed the decision. *Id.* at 399, 407.  The Court noted that education is a university's first priority and that even in the case of a sexual assault accusation due process does not require the same formalities of a criminal trial. *Id.* at 400.  However, if a case presents a problem of credibility, the Court stated that cross-examination of witnesses might be essential to a fair hearing and "[t]he ability to cross-examine is most critical when the issue is the credibility of the accuser." *Id.* at 401 (citation omitted).  The committee's finding of responsibility in *Doe v. Univ. of Cincinnati* was based solely on the accuser's hearsay statements. *Id.*  The Court found that due process was denied because the case presented the committee with "a choice between believing an accuser and an accused" and they were unable to assess the accuser's credibility. *Id.* at 402.  The Court noted that "[c]ross-examination may be unnecessary where the University's case 'd[oes] not rely on testimonial evidence' from the complainant." *Id.* at 405 (citation omitted). The Court made clear that the University may still admit hearsay statements and "may still open the hearing with a Title IX report summary that

15

includes the parties' 'out-of-court' statements, and the [ ] panel may still rely on those statements in deciding whether Doe is responsible for violating the Code of Conduct" *Id.*

In the instant case, unlike in *Doe v. Univ. of Cincinnati,* the accuser appeared at the disciplinary hearing and Plaintiff was permitted to cross-examine her. The panel was able to listen to and observe the complainant's testimony and could judge by her demeanor and the manner in which she gave her testimony whether she was credible. In this he-said/she-said dispute the panel had the opportunity to see and hear both "he" and "she" in order to evaluate their credibility. Plaintiff was given ample notice of the charges and the evidence contained in the investigation report and was given the opportunity to present an opening statement and to present witnesses or other evidence to address any discrepancies in the statements. Although due process may require a limited ability to cross-examine witnesses in school disciplinary hearings where credibility is at issue, *Doe v. Cummins*, 662 F. App'x 437, 448 (6th Cir. 2016), Plaintiff was permitted to orally pose questions to the presiding officer who then posed the questions to Roe 3. Thus, he was permitted to cross-examine the complainant during the hearing in a meaningful way and the panel was able to assess her credibility. As discussed above, the witness statements were merely part of the investigative report and the credibility of the declarants was less critical than that of the accuser. The witnesses did not testify against Plaintiff at the hearing and the statements were not read during the hearing. After review of the case law and arguments submitted by the parties, the Court finds that Plaintiff

16

has not met his burden of showing a substantial likelihood of success on the basis of the use of the unsworn statements or Plaintiff's claimed inability to cross-examine witnesses.

The Court also finds Plaintiff has not met his burden of showing that he was denied due process based on Defendants' non-disclosure of the accommodations that were afforded to Roe 3 or because he was not permitted to cross-examine Roe 3 regarding the transmission to him of a sexually transmitted disease. Plaintiff has not shown that such evidence was relevant to the charges addressed at the August 15, 2017 hearing.

As to Plaintiff's contention that Defendants Agnew and Mitchell or the UDC panel were biased, the Court finds that Plaintiff has not met his burden of showing bias. Plaintiff asserts that a due process violation may be shown by showing actual bias on the part of the adjudicator or showing that the adjudicator had a pecuniary or personal interest in the outcome of the proceedings. Plaintiff has not pointed to any evidence that Agnew, Mitchell or the members of the UDC panel were overtly biased. Any alleged prejudice "must be evident from the record and cannot be based in speculation or inference." *Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987). A decision maker is not deemed biased solely because they participated in the initial investigation of the incident and initiation of the cause under consideration. *Id.* at 666 (quoting *Duke v. North Texas State University*, 469 F.2d 829, 834 (5th Cir.1972)). "The record must support actual partiality of the body or its individual members." *Id.* The fact that Agnew was involved in the investigation of the incident

or that Agnew and UDC 6 participated in the prior proceeding does not show that they were biased or had any pecuniary or personal interest in the outcome. Although Agnew and Mitchell tried to keep evidence of Plaintiff's prior charges out of the August 15 hearing, UDC 6's knowledge of the prior charges does not per se show that she was biased. UDC 6 had nothing to gain from finding Plaintiff responsible at the August 15 hearing and has not been shown to be biased. Plaintiff complains that we should not find UDC 6 unbiased simply because she says she was, but it is Plaintiff's burden to present convincing evidence of bias or pecuniary interest and he has not done so. Plaintiff has not shown that Agnew, Mitchell or any members of the UDC panel was biased or had a pecuniary or personal interest in the outcome of the proceeding.

Plaintiff asserts that the fact that Defendants concealed UDC 6's prior involvement from Plaintiff indicates bias.  But Plaintiff has not shown that any of the Defendants attempted to conceal that fact.  In fact, Plaintiff knew when he saw UDC 6 at the August 15 hearing that she had been involved in his prior hearing. Plaintiff could have objected at the time of the hearing to UDC 6's involvement in the August 15 hearing, but did not. The fact that Plaintiff did not find it important to point that fact out to his counsel (who was acting as Plaintiff's adviser) or that Plaintiff's counsel did not remember UDC 6 from the prior hearing does not show bias on the part of the Defendants.

Plaintiff also suggests that Agnew and Mitchell concealed the fact that the UDC panel recommended a sanction of probation. However, there has been no

evidence that Agnew or Mitchell made any effort to hide that fact. It was Agnew's decision to determine the sanction and Mitchell's decision to review the decision on appeal. Given that Plaintiff was on probation when he was found responsible for the charges against Roe 3, the Court finds it was reasonable for Defendants to decide that something more than probation was appropriate. The fact that Agnew discussed the sanction issue with Mitchell prior to making her decision does not somehow invalidate her decision or Mitchell's authority to overrule her decision. Plaintiff had the opportunity to appeal the sanction imposed and has not shown that he was entitled to know the extent to which Agnew debated the issue before concluding that suspension was appropriate. The panel's determination that Plaintiff was responsible for the charges against Roe 3 coupled with the fact that he was already on conduct probation constituted a reasonable basis for Agnew's determination that he should be suspended. The evidence indicates that Agnew considered the panel's sanction recommendation along with Plaintiff's conduct history and arrived at a reasonable conclusion.

     The Court, after reviewing the circumstances of the disciplinary hearing and the Defendants' decisions, finds that Plaintiff has not met his burden of showing a substantial likelihood of success. The Defendants arguably followed all of South Alabama's policies and procedures, they provided Plaintiff with ample notice of the charges and the evidence gathered in their investigation, and they afforded Plaintiff a hearing with an opportunity to present a statement and present witnesses and other evidence in his defense. The Court finds that Plaintiff has not shown a

19

substantial likelihood of establishing a violation of his due process rights regarding the hearing and the decisions that led to Plaintiff receiving the sanction of suspension for two semesters.

Because the failure to show any of the four factors is fatal to Plaintiff's motion for preliminary injunction, the Court declines to discuss the remaining factors and finds Plaintiff's motion for preliminary injunction is due be denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for Preliminary Injunction (Doc. 6), is **DENIED**.

**DONE** and **ORDERED** this 3rd day of April, 2020.

                              /s/ Callie V. S. Granade
                              SENIOR UNITED STATES DISTRICT JUDGE