## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 17-0394-CG-C** |
| | ) | |
| | ) | |
| **THE UNIVERSITY OF SOUTH** | ) | |
| **ALABAMA;** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendants' motion for summary judgment (Doc. 105), Plaintiff's opposition thereto (Doc. 111), and Defendants' reply (Doc. 116). For the reasons explained below, the Court finds that Defendants' motion for summary judgment should be granted.

## FACTS

This case arises from disciplinary actions that were initiated against Plaintiff John Doe at The University of South Alabama ("the University"). The Defendants named in the Amended Complaint are the University, Michael A. Mitchell, Vice President for Student Affairs, Dean of Students and Deputy Title IX Coordinator for Students; Andrea C. Agnew, Assistant Dean of Students; and Krista Harrell, Associate Dean of Students and Title IX Coordinator. (Doc. 43, ¶¶ 4-8, PageID.1710-12). The Amended Complaint asserts claims for due process violations, breach of

1

contract, gender discrimination, negligence, and civil conspiracy. Upon Defendants'

motion, the Court dismissed part of Plaintiff's due process claims and all of

Plaintiff's other claims. (Doc. 62). The Court dismissed Plaintiff's due process

claims to the extent they were based on Plaintiff's right to confront or cross-examine

witnesses, the UDC's ability to question witnesses, the Defendants' withholding of

information, and Defendants' violation of University rules. The Court allowed

Plaintiff's due process claims to continue to the extent they are based on the

allegation that Defendants were biased.

Defendants' motion for summary judgment asserts that Plaintiff has failed to

present any evidence of bias by the Defendants. Plaintiff contends that the

Defendants were biased and that they deprived him of fair and impartial hearings

by neutral arbiters. In opposition to summary judgment Plaintiff states the

following facts to support his due process claim:

> Defendants disciplined John Doe, a ROTC undergraduate student, for
> non-academic sexual violence in cases involving female students Roe 1,
> Roe 2, and Roe 3. Prior to the Roe 1-2 incident, Roe 1 and Doe were in a
> dating relationship. (Doc. 103-4, p. 75) Roe 1 and Roe 2 had engaged in
> prior mutual consensual threesomes with Doe. (Doc. 103-4, p.47,75). The
> Roe 1-2 allegations stem from a subsequent threesome where Roe 1-2
> claimed they lacked the capacity to consent to sex with Doe on
> September 3-4, 2016 because of alcohol consumption. (Doc.43, p.16.) The
> Roe 3 allegation stems from an off campus sexual encounter with Doe
> before the fall semester of 2016, where Roe 3 alleges she lacked the
> capacity to consent to sex because of alcohol consumption. Defendant
> Harrell recommended sexual misconduct charges be forwarded on for
> investigation against Doe for all three Roes (Doc. 109-5, PageID.4173,
> 4174).
>     In the Roe 1-2 case, Harrell forwarded the case to Defendant
> Andrea Agnew, and Kim Ortiz to investigate. (Doc. 109-5, PageID.4174)

2

Ortiz served as the Student Conduct Code Administrator (SCA). (Doc.103-4.). This was Ortiz's first hearing as a SCA (Doc. 109-2, PageID.3931) UDC 6, the SGA Chief Justice, served on the Roe 1-2 UDC. (Doc. 109-4, PageID.4112] Agnew was an investigator in the Roe 1-Roe 2 case, interviewing both complainants and in compiling the UDC packet on the day of the hearing. (Doc. 109-2, PageID:3928, 3929). Before the Roe 1-2 hearing, Agnew authored a written report of "undisputed" "findings" including that "credible" witnesses supported complainants, that the evidence "support the complainants' statement of events and timeline" and "do not support the respondent's statement of events and timeline." (Doc.109-1; Doc. 109-3, PageID.4003) This exhibit was placed in the UDC packet before the hearing.(Doc. 109-2, PageID.3930) Doe and his advocate objected before the hearing, but Agnew overruled the objection and allowed the exhibit to be included in the UDC packet.(Doc. 109-2, PageID.3930; Doc. 109-3, PageID.4003) UDC panel members were trained and instructed to follow and accept Agnew's undisputed findings in arriving at their decision.(Doc. 109-4, PageID.4113)

During course of the Roe 1-2 investigation, another female Roe 3 (identified as Jane Doe) came forward with allegations of sexual violence against Doe. [FN 1: References to Jane Doe in the Roe 1-2 UDC hearing transcript is Roe 3. (Doc. 109-3, PageID.4018)] Prior to and during the hearing, Roe1 and Roe 2 were specifically instructed not to mention Jane Doe, as it was an improper reference to unrelated sexual misconduct allegations. (Doc. 109-3, PageID.4014, 4017). [FN 2: Defendants take issue that Doe referenced Student 11 in the Roe1-2 hearing. However, Agnew specifically authorized Student 11's statement introduction as probative of Roe 1's lack of credibility. (Doc. 109-3, PageID.4018; PageID.1901) According to Student 11, Roe 1 had falsely accused him of sexual violence as well. Student 11 was ultimately found not responsible by a UDC panel.] Still, Roe 1 or Roe 2 referenced Jane Doe four times during the UDC hearing at times over the repeated admonitions and rulings from both Ortiz and Agnew. (Doc.103-4, Ex. 6 audio of hearing) After this, the UDC retired for deliberations. Both Agnew and Ortiz sat in on the deliberations of the UDC panel. (Doc.103-4,) UDC deliberations are private and are not recorded or transcribed. [FN 3: After the Roe1-2 hearing and Agnew's conduct, Doe requested defendants record the UDC deliberations in Roe 3. Defendants denied that request. (PageID.1861, 1912, 1915).] The respondent and the complainants were then dismissed and excluded from the deliberations. Agnew admitted, "I was there for the deliberations and I also submitted notes of my deliberations." (Doc. 109-3, PageID.4007) later, the UDC found Doe

3

Responsible for sexual violence and recommended a host of sanctions. (Doc.43-4 PageID.1903). Doe appealed the finding to Defendant Mitchell who ruled that Agnew's undisputed findings and assessment of witness credibility "*could have had some impact on the committee*" and that the "*severity of your sanction may have been impacted by the introduction of Jane Doe into your proceedings, thus potentially portraying you as a threat to the campus community...Lastly, I find that the information presented during this process does support the complainants' claims they were intoxicated beyond the point of being able to consent to sex...Therefore I am upholding the board's finding of responsible in this case.*" (Doc.43-4, PageID.1906, 1907) (*Emphasis added*) A review of Mitchell's original draft version reveals: "I find the severity of your sanction may have been **impartial** [sic] by the introduction of Jane Doe into your proceedings, thus potentially portraying you as a threat to the campus community." (emphasis added) (Doc. 108-7, PageID.3861)

Then, the Roe 3 case proceeded. Before the first Roe 3 hearing, John Doe requested Agnew recuse from the hearing because of her conduct in pre-judging the Roe 1-2 case. Agnew recused. (Doc.43-4 PageID.1915) before the hearing, John Doe and his advocate requested that the parties be instructed not to mention any prior Title IX cases of John Doe (Doc 43-4, PageID.1912) Defendant Mitchell concurred, and promised all witnesses would be instructed not to mention any prior Title IX hearings involving Doe. (PageID.1915) The first Roe 3 hearing began on March 27, 2017 with Ortiz again presiding as the SCA. During this hearing, Roe 3 violated the rule during the hearing by referencing Roe 1 and Roe 2 a single time.(Doc 103-5, p 17) The UDC found Doe responsible, and he appealed. On the appeal, Mitchell ordered a new hearing: "*In the charge filed against you, I find that the introduction of prior allegations against you was significant enough to warrant that this charge be heard again during a new proceeding with a different committee.*" (PageID.1926-1927)

On the Roe 3 re-hearing (second Roe 3 hearing), Mitchell appointed Agnew as SCA despite her prior recusal from this same case, involving the same parties, and the same charge. (Doc. 109-3, PageID.4014, 4046.) After two prior hearings where Roe 1, Roe 2, and Roe 3 all referenced impermissible alleged unrelated conduct of John Doe, Defendants Mitchell and Agnew both promised to shield the UDC from any other allegations of Roe 1-2. Still, Agnew later contacted UDC 6 to gather the necessary students to serve on the UDC, despite promising the new UDC panel in Roe 3 would be shielded from any reference to Roe 1-2. (Doc. 109-2, PageID.3929; Doc. 109-3, PageID.4004.) Doe's advocate, the undersigned, did not recognize UDC 6 from the Roe1-2 case. Agnew

4

served as the SCA in the second Roe 3 hearing and sat in on the UDC deliberations. "*I was part of the deliberations.*" (Doc. 109-3, PageID.4027 referring to the second Roe 3 hearing.) During the deliberations, Agnew took notes of the mental impressions of the UDC she felt were important. (Doc.41, pp.111-115) Agnew queried members of the UDC during the deliberations in a "gut check" asking each UDC panel member how they felt, the rationale for their decision, and that they consider among other things "the information that's part of the investigative report." (Doc. 41, pp. 29-30, 90) After finding Doe responsible, the UDC deliberated on the sanction to be imposed and recommended conduct probation. (Doc. 40-2, p. 231) After this recommendation and while the UDC was still in deliberations, Agnew posed hypotheticals to the UDC because of Doe's prior Roe 1-2 sanction. (Doc.41, p. 104,117) Still, the UDC did not alter their recommended sanction of conduct probation. (Doc.103-4, p 92.) Agnew took the UDC recommended sanction and met in private with Defendant Mitchell where both concurred in increasing the sanction to suspension. (Doc. 109-2, PageID.3947-3948). Neither Mitchell nor Agnew informed Doe or his advocate the UDC recommended sanction. (Doc. 109-2, PageID.3951). Doe appealed again to Mitchell who ruled "I find no wrongdoing by Dr. Andrea Agnew in her work with the University Disciplinary Committee, to including training of the UDC and <u>facilitation of the hearing and decision processes</u>." (PageID.1932) (*emphasis added*)

   After the October 3, 2017 preliminary injunction hearing held, the United States Department of the Army, USA ROTC Program, convened a board of officers on February 15, 2018 to determine whether Doe should be disenrolled from the ROTC program as a result of the defendants' Title IX adjudications of Doe. Besides the Board, a University of South Alabama representative was attended and observed the hearing. (Doc. 108-4, PageID.3675-3676). Each of the five members of the Board members took an oath, witnesses were sworn and subject cross-examination. (Doc. 108-4, PageID.3676-3777). Kim Ortiz testified, under oath, subject to cross-examination by the Board, that Doe did not receive a fair and impartial hearing. (Doc. 108-4, PageID.3684). In exonerating Doe of the allegations of sexual misconduct the army ROTC board ruled:

> Under careful consideration, despite being found responsible of Engaging in Sexual Violence by the USA's UDC…the board has determined that the **respondent's due process from the university was in question as supported by the evidence**, furthermore; no real or tangible evidence exists before the board that the respondent has ever engaged in any such misconduct, supporting his claim that he was no responsible for the alleged

5

violations and committed no misconduct…The complete lack of information about the hearings not available for board review was amplified by both documentary evidence and **compelling witness testimony introduced by the respondent that supported his claim that the UDC's due process was improper, biased, and overall unfair. The evidence presented by the respondent indicates violations of the university's self-imposed rules."** (Doc. 108-4, PageID.3670)…The respondents claim of a lack of due process under the university was assumed to be without merit in the absence of evidence. A critical witness to this claim was Kim Ortiz, as called by the respondent during the presentation of his evidence. **The testimony of Ms. Ortiz carried significant weight in the board's consideration and scrutiny of the respondent's due process under the university as well as the right to an impartial and unbiased hearing. The increased weight of her testimony was in light of her status as a university employee and duty position as a coordinator of student conduct. She stated under oath that no police reports were filed, that the respondent could have and was not provided a Title IX advocate, that she felt he did not receive a fair and impartial hearing. Ms. Ortiz confirmed that standard assembled UDCs' are comprised of both students and faculty staff members which suggested to the board that there was an increased potential for bias with students involved in the adjudication process, which was a component of the respondent's claim."** (Doc. 108-4, PageID.3672). (*emphasis added*)…

(Doc. 111, PageID.4193-97).

Within his "argument" Plaintiff submits additional factual details which the Court will address where relevant below.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." The trial court's
function is not "to weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the
non-moving party is not sufficient for denial of summary judgment; there must be
'sufficient evidence favoring the nonmoving party for a jury to return a verdict for
that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting
*Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted." *Anderson*, at 249-250.
(internal citations omitted).

The basic issue before the court on a motion for summary judgment is
"whether the evidence presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as a matter of law."
*See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving
that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d
1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the
court must view all evidence in the light most favorable to the non-moving party,
and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle
Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on
the inferences arising from undisputed facts, then a court should deny summary
judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th

7

Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal

quotation and citation omitted).

## B. Plaintiff's Due Process Claim

As mentioned above, Plaintiff's only remaining claims are his due process claims to the extent they are based on the allegation that Defendants were biased. In the order dismissing Plaintiff's other claims this Court stated the following with regard to Plaintiff's due process claims:

> To succeed on a due process claim based on an impartial decision-maker, "[t]he record must support actual partiality of the body or its individual members." *Megill v. Bd. of Regents of State of Fla.*, 541 F.2d 1073, 1079 (5th Cir. 1976). The fact that a defendant had influence over decision-makers or held additional roles, such as training the panel members and participating in the investigation, does not show bias. *See Nash v. Auburn Univ.*, 812 F.2d 655, 666(11th Cir. 1987). Banners hung outside the hearing by others also does not indicate actual bias of the Defendants. Nor does Agnew's disallowance of questions about the identity of a witness who had reportedly engaged in sexual relations with the complainants earlier on the night in question indicate actual bias. These allegations, if proved, do not indicate personal animosity, illegal prejudice, or a personal or financial state [*sic*] in the outcome. "In the absence of evidence to the contrary, we must assume therefore that the (administrative hearing body) acted independently and properly in these circumstances." *Megill*, 541 F.2d at 1079 (citation omitted).

> * * * *

> Here, Plaintiff alleges that some of the decision-makers were biased and lists various reasons to attempt to demonstrate their bias. While some of the allegations are merely that the decision-maker ruled against Plaintiff or that the environment was unfavorable to Plaintiff, there are also allegations that indicate there may be a personal relationship between individual defendants and accusers or interested parties. Mere allegations of Facebook relationships or that participants knew each other, without more, do not prove actual bias. However, Plaintiff contends Defendants were actually biased and Plaintiff should have the opportunity to present evidence that such relationships are more than just cordial connections. The Court does not believe it has heard evidence

9

sufficient to support such a claim yet.

(Doc. 62, PageID.2571-2573). This Court found that the evidence concerning Facebook relationships and other evidence provided at the preliminary injunction hearing did not show that defendants were personally biased, but that Plaintiff's complaint included sufficient allegations of personal bias to survive a motion to dismiss Plaintiff's due process claim.

Plaintiff states that Agnew's and Mitchell's bias is "evident from the record." (Doc. 111, PageID.4205). Plaintiff contends that Agnew pre-judged critical findings of fact and witness credibility and then participated in deliberations. According to Plaintiff, Agnew's participation in the deliberations was against university rules and offends due process. An action does not violate a university rule simply because the rules are silent on that issue and do not expressly authorize the action. Moreover, as the Court explained in the dismissal order, even if Defendants violated university rules it would not necessarily follow that they had violated due process. (Doc. 62, PageID.2582 citing *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009)). This Court found that "except for the alleged violation of the guarantee of a fair and unbiased proceeding, the alleged [rule] violations, even when considered together do not rise to the level of a due process violation." (Doc. 62, PageID.2582). None of the alleged rule violations show that the Defendants were biased. The Court dismissed Plaintiff's due process claims to the extent they were based on Plaintiff's allegation that Defendants'

10

violated University rules.  Agnew's participation in the deliberations and influence over the UDC does not violate Plaintiff's due process if she was not personally biased against Plaintiff.

Plaintiff points to Agnew's findings of fact and determinations of witness credibility being included in the UDC packet. Agnew stated in her "undisputed findings" included in the packet given to the UDC that "[a] credible witness who transported the complainants from campus to the off-campus party between the hours of 11pm and midnight and who also observed them at the party described the complainants as 'drunk'," (Doc. 109-1, PageID.3917), and that a "credible witness who transported the complainants from the party to campus at 3:00AM described the complainants as, 'they were gone' (meaning very drunk)."  (*Id*.)  The "findings" also stated that "[t]ext messages and phone logs support the complainants' statement of events and timeline" and "do not support the respondent's statement of events and timeline."[1] (*Id*.).  Agnew had never before included her own findings of fact and witness credibility statement in the materials submitted to the UDC. (Doc. 109-3, PageID.4002).  The findings were part of the investigatory report and Agnew reports that she had not included such findings before because there had not been a need. (Doc. 109-3, PageID.4002).  This was the most complex case Agnew had ever been involved with because "the reported incident occurred across multiple locations

---

[1] The other "findings" do not appear to be in dispute: that complainants consumed alcohol on and off campus and that sexual intercourse occurred between the respondent and each complainant.

across several days, [and] had about eight or nine people to be interviewed." (Doc. 109-3, PageID.4001). It [r]equired the need of two investigators and had to be put together within 60 days of report." (Doc. 109-3, Page ID. 4001). Plaintiff also points to the fact that Agnew never interviewed Doe or any of Doe's witnesses. (Doc. 109-3, PageID.3997, 4001-4002). Plaintiff contends that the fact that Agnew determined credibility without ever speaking to Doe herself "smacks of pre-judgment and bias" in a case that is essentially a he said/ she said. (Doc. 111, PageID.4199, n.4 citing *Doe v. Purdue Univ.*, 928 F.3ed 652, 664 (7th Cir. 2019)). Agnew testified that that "was something Ms. Ortiz would have handled" and Agnew stated that she read the statements of John Doe and the other witnesses and spoke with Ms. Ortiz, who had interviewed them. (Doc. 109-3, PageID3997-98, 4001-4002). Ortiz interviewed the witness that transported the complainants and provided Agnew information regarding the text messages and phone logs that evidenced the timeline (Doc. 101-6, PageID.3183-84). Even if Plaintiff is correct that Agnew had personally concluded after the investigation that the allegations had merit, that does not show that she had any personal bias. It merely indicates that she investigated the allegations with Ortiz and that the evidence obtained from the investigation was sufficient to persuade Agnew that they had merit. Nothing indicates that she was predisposed to believe the allegations against Plaintiff or that she had come to any conclusion prior to investigating the allegations.

Plaintiff's case is not like the *Purdue University* case cited by Plaintiff where

the decision makers evaluated the credibility of the accuser without having seen any statement or testimony from her. *Purdue University*, 928 F.3ed at 664.  Ortiz met with and took Doe's statement and also contributed to the "findings" sheet based on that interview.  Additionally, unlike *Purdue University*, the decision makers (the UDC) had the opportunity to hear live testimony from Doe, the complainants and witnesses and could evaluate credibility directly themselves.

Plaintiff makes much of the potential impact Agnew's statements had on the UDC panel. Agnew acknowledged that it was "possible" her submission of written findings of fact and determinations of witness credibility could have had some impact on the UDC's findings. (Doc. 109-3, PageID.4007).  However, as stated in a prior order and restated above, the fact that a defendant had influence over decision makers or held additional roles, such as training the panel members and participating in the investigation, does not show bias. Agnew's participation in the proceeding and influence over the decision makers does not show she had any personal animosity, illegal prejudice, or a personal or financial state in the outcome. Plaintiff asserts that a single biased member's participation necessarily imports a bias into the deliberative process, but Plaintiff has not shown that any of the Defendants were biased.

Plaintiff contends Mitchell is also guilty of prejudging because he discussed with Agnew the sanction that should be imposed and then later ruled on the appeal of that sanction.  But Mitchell did not decide the sanction to be imposed, Agnew had

13

that responsibility.  The fact that Mitchell and Agnew discussed the sanction does not show that either of them was biased. And though Plaintiff contends that he should have been informed of the sanction recommended by the UDC, the University rules did not specify that Plaintiff should be notified of the recommendation. This Court previously found that the evidence indicates that Agnew considered the panel's sanction recommendation along with Plaintiff's conduct history and arrived at a reasonable conclusion. Plaintiff has presented nothing to persuade the Court otherwise.

Plaintiff also points to Mitchell's statement that he found "that the information presented during this process does support the complainants" claims that they were intoxicated beyond the point of being able to consent to sex..." Plaintiff argues that the standard was whether the complainants were incapacitated, rather than intoxicated.  However, someone that is intoxicated beyond the point of being able to consent to sex is "incapacitated." The UDC was instructed to determine whether complainants were incapacitated and was provided with the policy regarding consent and incapacitation. Mitchell's statement does not show any personal bias.

Plaintiff points to Agnew's recusal from the first Roe 3 hearing and the fact that she then presided over the second Roe 3 hearing. However, Agnew was not removed from the first hearing because she had shown bias. Defendant Mitchel stated that he did not find any prior conduct by Agnew merited her removal, but

14

Agnew agreed to remove herself since Plaintiff wanted to be able to call her as a witness. (Doc. 101-1, PageID.2883-84; Doc. 191-4, PageID.3100).  It was Defendant Mitchell's decision for Agnew to participate in the later hearing. (Doc. 101-4, PafgeID.3102-03).  Mitchell informed Plaintiff by email on May 2, 2017, that Agnew would preside over the new hearing rather than Ortiz because "Agnew's level of experience presiding over Title IX hearings will provide additional assurance that all required policies and procedures will be followed" and because he had "not found any indication that she has any conflict of interest in such participation, as her role throughout these proceedings has been as a neutral investigator and facilitator." (Doc. 43-4, Page ID.1926).  The Court finds that the fact that Agnew was allowed to preside over the hearing is not evidence of any personal bias.

Plaintiff objects to the fact that Agnew and one of the UDC members participated in the prior proceeding. However, as this Court explained in a prior order, that fact does not show that Agnew or the UDC were biased. Agnew and Mitchell tried to keep evidence of Plaintiff's prior charges out of the August 15 hearing and UDC 6's knowledge of the prior charges does not per se show that she was biased. UDC 6 had nothing to gain from finding Plaintiff responsible at the August 15 hearing and has not been shown to be biased.

Plaintiff also points to emails in which he reports Agnew referred to Roe 1 and Roe 2 as "victims" and instructed Ortiz to remove their names from the notice of Title IX violation. (Doc. 111, PageID.4207; the Court notes that Plaintiff cites to

Doc. 103-4 USA 0644 but the Court does not find USA 0644 to be contained in Doc. 103-4).  The Court finds Agnew's reference to Roe 1 and Roe 2 as victims is not evidence of bias.  Roe 1 and Roe 2 alleged that they were victims of criminal sexual conduct and Plaintiff has not suggested any reason why their names should not have been shielded and removed from the notice in question.

Plaintiff argues that the Supreme Court has identified instances which, as an objective matter, require recusal where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable" (Doc. 111, PageID.4207 (citing *Withrow v. Larkin*, 421 U.S. 35, 47, as cited in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009))).  However, such instances involve court cases where a judge had a financial interest in the outcome of the case or where the judge has been the target of personal abuse or criticism from the party before him. *Withrow*, 421 U.S. 35, 47.   A conflict of interest has been found to have arisen at the trial stage where a judge earlier decided to charge the petitioner with perjury and contempt – "[h]aving been a part of the one-man grand jury process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." *Caperton*, 556 U.S. at 880 (alteration marks in original omitted).  Plaintiff has not shown that such indicia of bias were present in this case. The circumstances presented do not indicate that a person in any of the Defendants' positions would be likely to be biased. There is no evidence that any of the Defendants had a pecuniary interest in the outcome of the case or that they had

16

initiated charges against the Plaintiff. "There was no more evidence of bias or the risk of bias or prejudgment than inhered in the very fact that [Agnew] had investigated and would [later] adjudicate" or participate in Plaintiff's adjudication. *Withrow*, 421 U.S. at 54. "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing." *Id.* at 55. "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' " *Id.* (citation omitted).  Plaintiff has not shown that under the circumstances Defendants were likely to be biased. The circumstances do not pose "such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow*, 421 US. at 47. Nor has Plaintiff presented evidence that Defendants were actually biased.

Plaintiff makes much of the findings of the Army ROTC.  Defendants object to the Court even considering the ROTC hearing records arguing that they are hearsay, irrelevant, and contain inadmissible speculative, conclusory, or opinion testimony.  The Court agrees and finds them completely irrelevant. As Defendants point out, this was a separate proceeding that had no bearing on the University's discipline of Doe. The Defendants did not participate in the ROTC hearing and reportedly had no prior knowledge of the hearing.  Whether the ROTC found that the University hearing was fair or not has no bearing on the University's decision or

this Court's decision.

As explained in prior orders, this Court is not here to decide whether Plaintiff committed the alleged infractions he was disciplined for or whether this Court would have imposed the same punishments. "Due process does not invariably require the procedural safeguards accorded in a criminal proceeding." *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir. 1972) (citation omitted).   "A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005).  Because Plaintiff has not presented any evidence that Defendants were likely to be biased or that they were actually biased, summary judgment is due to be granted in favor of Defendants.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 105), is **GRANTED.**

**DONE** and **ORDERED** this 4th day of May, 2021.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE